FILED
CLERK, U.S. DISTRICT COURT

NOV  2 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _vdr_____ DEPUTY

1  Jonathan Palomo
   1512 SW 9th Ave
2  Fort Lauderdale, FL 33315
   323-365-1052
3  Email: john.palomo007@gmail.com

4  JONATHAN PALOMO, PRO SE

5

6

7                    UNITED STATES DISTRICT COURT

8           CENTRAL DISTRICT OF CALIFORNIA (WESTERN)

9

10                              )  CASE:  2:20-cv-08969-FMO-AGR
                                )  AMENDED VERIFIED COMPLAINT
11                              )  1)DEFAMATION PER SE (SLANDER
                                )  AND LIBEL)
12  JONATHAN PALOMO,            )  2)WRONGFUL TERMINATION IN
        Plaintiff, Pro Se       )  VIOLATION OF PUBLIC POLICY.
13                              )  TAMENY) (RETALIATION, SEX, RACE,
                                )  DISABILITY, CFRA, NATIONAL
14      v,                      )  ORIGIN, FILING WORKERS COMP
                                )  CLAIM,)
15  BEST BUY CO. INC, DAMIEN PADA, ) 3)DISCRIMINATION (SEX, DISABILITY,
    FADI AMMOURI, & DOES 1-10   )  RACE & DISABILITY),
16                              )  4) RACIAL DISCRIMINATION IN
        Defendants              )  VIOLATION OF 42 USC 1981
17                              )  5) INTENTIONAL INFLICTION OF
                                )  EMOTIONAL DISTRESS
18                              )  6)VIOLATIONS OF CALIFORNIA
                                )  LABOR CODES §§ 201 -206, §§ 226, 96k
19                              )  etc., 218.6, 1102.5
                                )  7) FMLA (INTERFERENCE &
20                                 RETALIATION)& CFRA VIOLATIONS
                                   8)VIOLATIONS OF TITLE VII (SEX,
21                                 RACE, DISABILITY, RETALIATION,
                                   HOSTILE WORK ENVIRONMENT )
22                                 9) BREACH OF EXPRESS ORAL
                                   CONTRACT NOT TO TERMINATE
23                                 WITHOUT  GOOD CAUSE
                                   10) BREACH OF IMPLIED IN FACT
24                                 CONTRACT NOT TO TERMINATE
                                   WITHOUT GOOD CAUSE
25

26

27

28

---

AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

11)**FAILURE TO INTERACT & REASONABLY ACCOMMODATE IN VIOLATION OF FEHA & ADA**

12)**Unfair Competition in Violation of California's Unfair Competition Law Cal. Bus.& Prof.Code§§17200, et seq**

13)**VIOLATION OFCivil Code section 52.1**
14)**AIDING AND ABETTING**

15)**RETALIATION( IN VIOLATION OF FEHA, TITLE VII, ADA, 42 USC 1981)**

16)**HARASSMENT (RACE)/  HOSTILE WORK ENVIRONMENT**

17)**FAILURE TO PREVENT DISCRIMINATION &HARASSMENT IN VIOLATION OF FEHA**

18)**HARASSMENT(SEX)/HOSTILE WORK ENVIRONMENT**

19)**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

20)**Violation of Labor Code § 226(b)**

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1 | **VERIFIED COMPLAINT FOR DAMAGES/ JURY TRAIL DEMANDED**

2 | "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint,
3 | however inartfully pleaded, must be held to less stringent standards than formal
4 | pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
5 | (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff's complaint may be
   | dismissed only when defendant's plausible alternative explanation is so convincing
6 | that plaintiff's explanation is implausible." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.
7 | 2011).Best Buy's race-neutral explanations for Plaintiffs termination lack credibility
8 | because approving price matching discounts to customers is a known Best Buy
   | policy that the customers and all employees are aware of. . See Desert Palace, Inc.
9 | v. Costa, 539 U.S. 90, 100 (2003) ("[E]vidence that a defendant's explanation for an
10 | employment practice is 'unworthy of credence' is 'one form of circumstantial
11 | evidence that is probative of intentional discrimination.'" (quoting Reeves v.
12 | Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)))This Verified Complaint
   | is "testimony to establish a prima facie workplace discrimination case… a reasonable
13 | jury could infer discrimination from the employees' testimony." Nigro v. Sears,
14 | Roebuck & Co. 784, F.3d 495, 498 (9th Cir. 2015). Because Plaintiff has "established
15 | a prima facie case there is a presumption that (Defendants) unlawfully discriminated
   | against" him. Reid 50 Cal.4th at 520 n.2. See Santillan v. USA Waste of California,
16 | Inc. 853 F.3d 1035(9th Cir 2017); Scott v. Harris, Roebuck & Co., 784, F.3d 495, 497
17 | (9th Cir 2015).Because this Verified Complaint is based on Plaintiff's personal
18 | knowledge, this  Verified complaint may be used as an opposing affidavit under Rule
   | 56. McElyea v. Babbitt, 833 F.2d 196, 197-98(9th Cir, 1987): Shoroeder v. McDonald,
19 | 55 F.3d 454, 460 (9th Cir, 1995):Jones v. Blanas, 393 F.3d 918, 923(9th Cir. 2004).
20 |
21 | **Exhaustion:**Plaintiff received DFEH/EEOC right to sue letter **on 09/26/2020.**
   | Plaintiff's first administrative complaint filed with the DFEH timely satisfied the
22 | exhaustion requirement because of the work sharing agreement between the DFEH
   | and the EEOC and because the complaint was filed within 300 days of Mr. Palomo's
23 | termination. .See 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42
24 | U.S.C. § 12117 (ADA). However, a civil suit asserting claims under the ADA, and
   | Title VII must be filed within 90 days of termination of administrative proceedings.
25 | See 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e-5(f)(1) (Title VII and ADA).
26 | Plaintiffs claims based on the Civil Rights Act of 1866 are not subject to
   | administrative exhaustion requirements and have a four-year statute of limitations.
27 | See 28 U.S.C. § 1658(a); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83
28 | (2004); Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1006 (9th Cir. 2011).

**TOLLING**: The employee may *voluntarily* opt to pursue the employer's internal remedy, however, it may support equitable tolling of the FEHA statute of limitations. (M*cDonald v. Antelope Valley Community College Dist.(*2008) 45 Cal.4th 88, 101, 111.) Factors that courts m*a*y consider include whether plaintiff: (1) diligently pursued his claim; (2) was misinformed or misled by the DFEH; (3) relied on those misrepresentations and failed to exhaust administrative remedies; and (4) was pro se at the time. (R*odriguez v. Airborne Express (*9th Cir. 2001) 265 F.3d 890, 901-902 (citing D*enney v. Universal City Studios, Inc.* (1992) 10 Cal.App.4th 1226, overruled on other grounds by C*ity of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156).)

**CONTINUAL VIOLATION of Sex Discrimination, Race Discrimination, Retaliation, Failure to Interact/Failure to Accommodate, IIED and Hostile Work Environment Claims**

In 2012, Def. Pada began sexually assaulting and sexually harassing Plaintiff (in conjunction with IIED, hostile work environment, retaliation) when Def. Prada was Plaintiff's direct manager;Def. Pada's illegal conduct only ended upon Plaintiff's termination from Def. Best Buy on 07/17/2020. In 2019, Def. Fadi's racial harassment, hostile work environment, harassment, IIED, retaliation, etc only ended upon Plaintiff's termination from Def. Best Buy on 07/17/2020. This case was filed on or around 09/29/2020..“[T]he continuing violation doctrine comes into play when......“when an employer engages in a continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment . . . the statute of limitations begins to run . . . either when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, or when the employee is on notice that further efforts to end the unlawful conduct will be in vain." Richards, 26 Cal. 4th at 823-24. " Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812 (2001). Plaintiff's retaliation claim is subject to the continuing violations doctrine. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1059 (2005). Plaintiff was sexually harassed and sexually assault by Def. Pada since 2012- 07/17/2020. Harassment, as the term is used in California Government Code § 12940(j), ***“focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."*** Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009).  Under the continuing violations doctrine, Plaintiff's claims accrue when the course of conduct ends or when plaintiffs was put on notice that further efforts to end the unlawful conduct would be in vain. See Richards, 26 Cal. 4th at 823- 24. Plaintiff's   claims for sex discrimination, harassment, hostile work environment, IIED, defamation(republication), retaliation, failure to provide reasonable accommodation are  not time-barred because the course of conduct alleged to support plaintiffs claim did not end until his employment was terminated in July 2020 & Def. Best Buy did not otherwise put plaintiff on notice that Defendant Best Buy would not consider any other requests for accommodation or that Defendant Best Buy would end Def. ___

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Pada's sexual harassment, retaliation, defamation, sexual assault, hostile work environment, IIED and/or Def. Fadi's racial discrimination, retaliation, defamation, harassment, hostile work environment, IIED, disability discrimination, failure to interact, and failure to reasonably accommodate Plaintiff's disability.

### SHORT & PLAIN STATEMENT (RULE 8)

This is a case for defamation by all Defendants and additionally  for sex, disability,  race discrimination and retaliation in violation of Title VII, FEHA,1981 and 42 USC 1981.

Defendants Pada and Fadi, as Managing agents of Def. Best Buy, published unprivileged statements of purported facts about Plaintiff to third parties that were 100% false.  After Plaintiff asked Def. Pada, Def. Fadi, and Def. Best Buy to Cease and Desist around January 2020, all Defendants refused to cease publishing unprivileged statements of purported facts about Plaintiff being a "child molester" who was "arrested" and "jailed" to third parties, including other Best Buy employees and customers. (Exhibit 1) Def. Best Buy refused to remove from their website their Best Buy customer's libelous per se 12/16/2019 republication of Def. Pada and Def. Fadi's unprivileged published defamatory per se statements about Plaintiff being arrested and jailed for sexual assault. On or around September 25, 2020, Plaintiff sent Def. Best Buy a FINAL Cease & Desist letter asking Def. Best Buy, once again, to remove these libelous per se statements about Plaintiff from their website, whereby Plaintiff **gave Def. Best Buy 7 days to confirm in writing t**o Plaintiff's email address that these false, defamatory per se statements that Def. Fadi & Def. Pada originally published about Plaintiff being arrested and jailed for sexual assault to third parties, including customers, were PERMANENTLY REMOVED.  On 10/01/2020, Def. Best Buy's agent called Plaintiff and spoke to Plaintiff about these defamatory per se statements. On 10/02/2020, Def. Best Buy refused and failed to remove these libelous per se statements about Plaintiff being arrested and jailed for sexual assault from their website and/or **confirm in writing** that these libelous per se statements about Plaintiff being arrested and jailed for sexual assault from their website. This infers malice. Plaintiff's claim for Intentional Interference with Prospective Economic Advantage is based on Plaintiff's Defamation claims. Plaintiff's claim under the UCL is based, in part, on his claim for waiting time penalties, sexual assault, sexual harassment, retaliation, defamation, intentional interference with prospective economic advantage, and wrongful termination in violation of public policy for opposing sexual assault and sex discrimination in the workplace. Def. Best Buy and/or its Managing Agents continued to defame Plaintiff after his 07/17/2020 to third parties, one of which was a prospective employer. Plaintiff's 1981 claim, FEHA, Title VII racial discrimination claims are based on Def. Fadi's racially discriminatory conduct during Plaintiff's employment, which Def. Best Buy ratified. Plaintiff's FEHA and Title VII sex discrimination claims are based on Def. Pada's CONTINUAL VIOLATION of Sex Discrimination, Race Discrimination, Retaliation, Failure to Interact/Failure to Accommodate, IIED and Hostile Work Environment Claims. Plaintiff's claim for Intentional Interference with Prospective Economic Advantage and Unfair Business Practices are  based on Plaintiff's Defamation claims. ———

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Plaintiff's sex discrimination claims under Title VII are for "gender stereotyping," hostile work environment, sexual harassment and sexual assault and disparate treatment based on Plaintiff's sexual orientation.  see Nicols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 874-75 (9th Cir, 2001): Once v. Sundowner Offshore Servs., Inc., 523 U.S.75 (1998)In 2012, Def. Pada began sexually assaulting and sexually harassing Plaintiff  (in conjunction with IIED, hostile work environment, retaliation) when Def. Prada was Plaintiff's direct manager;Def. Pada's illegal conduct only ended upon Plaintiff's termination from Def. Best Buy on 07/17/2020. Mogilefsky v. Superior Court(1993) 20 Cal. Appl.4th 1409, 26 Cal. Rptr2d.116; Lyle v. Warner Bros. Television Prods (2006)38 Cal.4th 264 277. In 2019, Def. Fadi's racial harassment, hostile work environment, harassment, IIED, retaliation, etc only ended upon Plaintiff's termination from Def. Best Buy on 07/17/2020. This case was filed on or around 09/29/2020.."[T]he continuing violation doctrine comes into play when……"when an employer engages in a continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment . . . the statute of limitations begins to run . . . either when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, or when the employee is on notice that further efforts to end the unlawful conduct will be in vain." Richards, 26 Cal. 4th at 823-24. " Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812 (2001).Plaintiff's retaliation claim is subject to the continuing violations doctrine. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1059 (2005). Plaintiff was sexually harassed and sexually assault by Def. Pada since 2012- 07/17/2020. Harassment, as the term is used in California Government Code § 12940(j), *"focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."* Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009).  Under the continuing violations doctrine, Plaintiff's claims accrue when the course of conduct ends or when plaintiffs was put on notice that further efforts to end the unlawful conduct would be in vain. See Richards, 26 Cal. 4th at 823- 24. Plaintiff's  claims for sex discrimination, harassment, hostile work environment, IIED, defamation(republication), retaliation, failure to provide reasonable accommodation are  not time-barred because the course of conduct alleged to support plaintiffs claim did not end until his employment was terminated in July 2020 & Def. Best Buy did not otherwise put plaintiff on notice that Defendant Best Buy would not consider any other requests for accommodation or that Defendant Best Buy would end Def. Pada's sexual harassment, retaliation, defamation, sexual assault, hostile work environment, IIED and/or Def. Fadi's racial discrimination, retaliation, defamation, harassment, hostile work environment, IIED, disability discrimination, failure to interact, and failure to reasonably accommodate Plaintiff's disability.

**Plaintiff Jonathan Palomo (herein referred to as "Mr. Palomo" or "Plaintiff" or "Palomo"), proceeding Pro Se, for his complaint testifies as follows in his AMENDED VERIFIED COMPLAINT:**

**THE PARTIES**

1. Plaintiff, Jonathan Palomo, an individual, (herein referred to as **"Plaintiff" or "Mr. Palomo" or "Palomo"**), is domiciled in the State of Florida.

2. **The Defendant BEST BUY CO., INC, (**herein referred to as **"BEST BUY" or "Defendant BEST BUY**), is and was at all relevant times a Minnesota corporation with its principal executive offices in Minnesota, who conducts business at 2909 Los Feliz Blvd, Los Angeles, CA, where Plaintiff was employed. Los Angeles is the city/ county where the events occurred which gave rise to this cause of action.

3. A)**Defendant Fadi Ammouri**, is an individual, a Def. Best Buy Managing Agent, and thus is an agent, Best Buy, Defendant Fadi's principal. Upon information and belief, Fadi resides in Los Angeles County. However, It is undisputed that Def. Fadi works in Los Angeles, CA is subject to the jurisdiction of this Court. B)**Defendant Damien Pada** is an individual, a Def. Best Buy Managing Agent, and thus is an agent of Best Buy, Defendant Pada's principal. Damien Pada lives in Los Angeles County.  Both Defendants, on behalf of Def. Best Buy and/or in their professional capacity, published false, unprivileged defamatory per se statements of purported facts about Plaintiff targeted at  uninterested third parties, who are all Los Angeles, CA residents, providing basis for jurisdiction and venue.

-                              **JURISDICTION AND VENUE**

4. Pursuant to 28 U.S.C § 1331 & 1332, this Court has original jurisdiction over Plaintiff's claims due to FEDERAL QUESTION and additionally based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000. All Defendants are 100% diverse to Plaintiff.

5. Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391 because this Court has personal jurisdiction over Defendants and by reason of the fact that, among other things, this is the judicial district more than 50% of Defendants work and/or reside. see **Jones v. Calder, 138 Cal. App. 3d.128, 134 (1982), afford, 465 U.S.783 (1984) (out of state residents defaming California residents and/or targeted at a California audience makes California proper venue)."By providing**

harassment of an employee by an employee other than an agent or supervisor shall be unlawful." Kelly-Zurian v. Wohl Shoe Co (1994)22 Cal. App 4th 397.Murilo v. Rite Stuff Foods Inc (1998)65 Cal App 4th 833, "the FEHA offers greater protection and relief to employees than does Title VII."

**SHORT & PLAIN STATEMENT (Rule 8)**This lawsuit is primarily based on sex, race, national origin, and disability, discrimination and retaliation in violation of Federal & California State laws (Title VII, FEHA, 42 USC 1981, ADA, etc) as well as a severe racially and sexually hostile work environment, and violations of FMLA/CFRA during Plaintiff's employment, & DEFAMATION PER SE by Defendants.

**Plaintiff's protected status and activity:**

6. Plaintiff is a Hispanic/Latino.

7.Plaintiff is a heterosexual male.

8.Plaintiff has a disability.

9.Plaintiff is Native American.

10.Plaintiff complained of unlawful actions by Defendants.

11. Beginning around late October /early November 2019, Plaintiff began opposing sex discrimination(constant sexual harassment and sexual assault) to Defendant Fadi Ammouri and Def. Best Buy, by making formal and informal complaints.

12. Around March 2020 through around the end of April 2020, Plaintiff went out on a FMLA/CFRA leave and/or was led to believe he took an FMLA/CFRA leave for his disabilities (umbilical hernia) and for mental health reasons  (PTSD symptoms related to Def. Damien Pada's sexual assault and sexual harassment and Def. Fadi Ammouri's racially hostile work environment).

13. In 2019, Plaintiff , sustained back and neck injuries, workplace violence, and further psychological trauma (in addition to the sexual harassment and sexual assault by Def. Pada and racially hostile work environment caused by Def. Fadi) when Plaintiff was physically assaulted by a customer (violence in the workplace), to which a police report was filed.. In February 2020, Plaintiff had another workplace injury, which caused one of his disabilities (umbilical hernia). Umbilical hernia and/or

AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

symptoms of umbilical hernia is a disability because Plaintiff's condition, of umbilical hernia, limits a major life activity (the ability for Plaintiff to squat, lift, and stand which is a long term disability because it is ongoing and long term disability. Plaintiff told Def. Fadi that he had this workplace injury (umbilical hernia)in February 2020 and that a nurse later told Plaintiff that Plaintiff had signs and/or symptoms of umbilical hernia. In June 2020, Plaintiff told Def. Fadi that because Def. Best Buy wasn't providing Plaintiff with any medical treatment for his workplace injury of umbilical hernia, Plaintiff was engaging with workers compensation lawyers to obtain medical treatment for his disability of umbilical hernia. In June 2020, Def. Fadi threatened Plaintiff with retaliation when Def. Fadi told Plaintiff, "I'd think twice about getting a lawyer to file  a workers compensation claim, Best Buy does not take kindly to that, so if you go get a lawyer to file a workers compensation claim then you should also get a new job because you will be fired." Because Def. Fadi in June 2020 threatened that Plaintiff would be retaliated against with termination if he exercised his rights under California's Workers Compensation laws, FEHA, ADA, FMLA/CFRA, Title VII, Plaintiff didn't file his Workers Compensation claim until after he was terminated.

**14.** Around January 2020, Plaintiff opposed racial harassment by Def. Fadi and the racially hostile work environment Def. Fadi subjected Plaintiff to when Plaintiff  made a formal and/or informal complaint via telephone to Def. Best Buy's HR Manager at Def. Best Buy's headquarters in Minnesota regarding Def. Fadi calling Plaintiff a **"child molester"** because of his race, **"Spic and Span,"**as well as calling Plaintiff a **"beaner," "Latino Michael Jackson," "MS 13 rapist," "MS 13 killer"** and that **"all you Latinos are child molesters and rapists because President Trump says its true."**  etc. Plaintiff also opposed Def. Damien Pada's pervasive sexually **hostile work environment (groping Plaintiff's penis since 2012, etc.) in this same January 2020 phone call to Def. Best Buy's HR Manager at Def. Best Buy's headquarters.**

### TOLLING DUE TO DISCOVERY OF CAUSE OF ACTION

15. "Vital information"or their "cause of action" is tolled until the earliest"accrual is delayed until the plaintiff has discovered his cause of action[,]" Gabelli v. SEC, , 1221 (2013)& "vital information" pertaining to "the existence of"claim that she tried, but failed, to obtain during the limitations period. Toussie v. United States, 397 U.S. 112, 115 (1970)Under federal law, a claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury. See Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). Here, Gregg may be

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

able to allege she was unaware of her injuries until sometime after she stopped participating in the therapy sessions. See Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986). .Gregg v. Hawaii. Department of Public Safety. 870 F.3d 883, 887 ( 9th Cir 2017) Bibeau v. Pac. Nw. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999) (as amended) ("[T]he discovery rule has been observed as a matter of federal law."). E.g..Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999) (finding the continuing violations doctrine applicable to a hostile work environment claim, provided that the plaintiff established "related discriminatory acts").

## DEFAMATION PER SE under CALIFORNIA STATE LAW

"Title VII ...does NOT supplant state remedies. Accordingly since monetary damages under Title VII are limited to recovery of back pay, alternate causes of action under state law may be particularly important where the discriminated might recover damages OTHER than back pay. Defamation and intentional infliction of emotional distress are specifically recognized as potentially available causes of actions under state law." The Defamation claims for Plaintiff is for "damages for harm DISTINCT from employment discrimination." quoted from Agarwal v. Johnson, (1979) 25 Cal. 3d.932, 954 n.11, 160 Cal. Rptr. 141 603 P.2d 58.The state of California defines defamation as a statement "which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Mattel v. Luce, No. B143260, 2001 WL 1589175 at *8(Cal. Ct. App. Dec. 13 2001).  A "crook" see Albertini v. Schaeefer, 97 Cal.App.3d 822, 829 (1979); a "call girl" was ruled to be defamation per se, see Montandon v. Triangle Publication, Inc., 45 Cal App.3d 938, 944-45 (1975). Canatella v. Van de Kamp 486 F.3d  see Dickinson v. Cosby, 37 Cal.App. 5th 1138 (2019) "liar"); Burrilll v. Air (2013)217 Cal.App 4th 357, 384-385. Defendants have BURDEN of proving TRUTH. See Smith v. Maldonado, s 72, Cal.App. 4th at p.645, 85, Cal.Rptr. 2d.397;

FACTS COMMON TO ALL CAUSES OF ACTION:

16. Plaintiff became employed with Def. Best Buy on November 27, 2007. Around 2012-2015, at one point during Plaintiff's employment with Def. Best Buy, Plaintiff worked in the "Geek Squad" Department at Def. Best Buy, where he held the position of  "Geek Squad Lead."Around 2014, Plaintiff was promoted from "Geek Squad lead" to "Lifestyle lead" (gaming, cameras, car stereos). Around 2017, Plaintiff was again promoted from "Lifestyle lead" (gaming, cameras, car stereos) to "Lifestyle Supervisor," with a salary increase. Around 2018, Plaintiff was again promoted from "Lifestyle Supervisor"(gaming, cameras, car stereos) to "Computer Supervisor." From 2018 until termination on 07/17/2020, Plaintiff was the Supervisor of the Computer Department.

17. From 2012-termination, because of his sex (male), Plaintiff was sexually harassed and sexually assaulted by Def. Best Buy's manager, Damien Pada.

18. During Plaintiff's employment with Def. Best Buy, from 2012-termination, because of Plaintiff's sex (male), Def. Damien Pada, constantly requested Plaintiff to show him Plaintiff's penis, asked Plaintiff to allow Def. Damien Prada to allow him to perform oral sex on me. Def. Damien Pada was also always feeling Plaintiff's muscles, grabbing Plaintiff's breasts, thighs, testicles, butt cheeks, spanking Plaintiff's buttocks and constantly groping, jerking, jiggling and fondling Plaintiff's penis every day in which Plaintiff worked with Def. Prada.

19. During Plaintiff's employment with Def. Best Buy, from the beginning, 2007-termination, because of their sex (males), Def. Damien Prada sexually harassed other males, in addition to Plaintiff, with sexual inappropriate gender comments and requests for anal and/oral sex during working hours at Def. Best Buy. Plaintiff openly witnessed Def. Damien Prada, since 2007, openly and publicly  sexually harassing and sexually objectifying other male Best Buy employees , Edgar____ (Best Buy Burbank store), Eduardo Quintana, Frankie Bravo, Dennis Richard, Devon Shepard, Edward Moncheme, Istvan Valencia, Ezekiel Tolle, Adolfo Sanchez, where he requested anal and oral sex from them, asking them to go out with him after work to a bar to get them drunk to turn them gay,  telling them that he "needs" their  "cocks" and wanted to be "doubly penetrated" by them and for them to do a "jerk off circle" to "cum all over him" and telling them he wanted them to  "creampie his tight boypussy ("bussy") hole."

20. During Plaintiff's employment with Def. Best Buy, from around 2012- July 2020 when Plaintiff was terminated, because of his sex (males), Def. Damien Prada sexually harassed Plaintiff, with sexually inappropriate gender comments and sexual requests for anal and/oral sex during working hours on Def. Best Buy property at the Best Buy Los Feliz store in Los Angeles, CA. From around 2012-July 17, 2020( when Plaintiff was terminated), Def. Damien Prada, openly and publicly sexually harassed and sexually objectified Plaintiff because of his gender, whereby Def. Pada requested Plaintiff anally penetrate Def. Pada, always begging Plaintiff to go out with Def. Pada after work to a bar, promising Plaintiff free drinks, as Def. Pada told Plaintiff, "If I get you drink, I can turn you gay and you'll want to fuck my boy pussy like its a fishy vagina." From around 2012-July 17, 2020(when Plaintiff was terminated), Def. Pada was always telling Plaintiff that Def. Pada "needs" Plaintiff's  "big thick uncut Latino chorizo"constantly telling Plaintiff that he, Def. Pada "is so horny and my hole is gaping for your big thick Latino cock because I ejaculate without touching myself when I have a big thick cock deep inside me, I need you to get me off." From around 2012-July 17, 2020(when Plaintiff was terminated), Def. Damien always told Plaintiff, at least on a weekly basis, "I need you to dig me out" & "I want to be doubly penetrated by you and another man's cock and I want an Eiffel Tower." From around 2012-July 17, 2020(when Plaintiff was terminated), Def. Pada constantly told Plaintiff about his sexual fantasies whereby having Plaintiff and other males perform a "jerk off circle" because Def. Pada wanted "multiple men's loads in all my holes." "I'm the biggest cum slut and I love taking all men's loads in all of my

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

holes. once I had one guy cumin in my ass and one guy cumin in my mouth and it was so hot. but I want it with you and at least 4 other guys and I want you all to cum inside my mouth, my boy pussy ("bussy"). all over my face and body. I want my whole body covered with cum and want multiple men's loads dripping out of my boy pussy ("bussy"). I'm hard right now talking about it," and telling Plaintiff that he, Def. Pada, wanted Plaintiff to "creampie his tight boypussy hole."

21. Around late October/early November 2019, Plaintiff began making formal and informal complaints opposing sex discrimination by Def. Pada to Def. Best Buy's General Manager Def. Fadi, where Plaintiff begged Def. Fadi to speak to Def. Pada to formally demand his subordinate Def. Pada stop demanding anal sex and other types of sex (oral, masturbatory sex, etc) from Plaintiff, to stop his subordinate Def. Pada from demanding that Plaintiff allow Def. Pada to perform oral sex on Plaintiff, to stop his subordinate Def. Pada from constantly and/or daily asking Plaintiff sexual questions regarding his penis, his sex life etc to stop his subordinate Def. Pada from asking Plaintiff the last time Plaintiff ejaculated, to stop his subordinate Def. Pada from asking Plaintiff the last time Plaintiff "jerked off" or masturbated, to stop his subordinate Def. Pada from asking Plaintiff the last time he "fucked pussy," to stop his subordinate Def. Pada from demanding Plaintiff come with him to the "SDR" room where there are no cameras, because Def. Pada wanted Plaintiff to perform an act of masturbation in front of Def. Pada. Def. Pada usually told Plaintiff on a weekly basis, "My biggest fantasy is to see you masturbating at work in the SDR room, with your balls hitting my face, while I'm fingering myself with all 4 of my fingers and then when you are ready to cum, you explode all of your milk all over my face and give me a facial and your cum is dripping down my face."

22. Istvan Valencia, former customer service associate at Best Buy, told Plaintiff on several occasions between 2012 and October 2020, that Istvan was sexually harassed and sexually assaulted by Supervisor Damien Pada from 2012-2014, where Def. Pada would always bend over in front of Istvan and rub Istvan's penis with Def. Damien Papa's buttocks by grinding and twerking(dancing in a sexual, gyrating manner) Def. Pada's buttocks directly on Istvan's penis, on a weekly and/or routine basis , on the sales floor at Def. Best Buy's Los Feliz store in Los Angeles, CA.

23. Istvan Valencia, former customer service associate at Def. Best Buy, told Plaintiff on several occasions between 2012 and October 2020, that Def. Damien Pada made sexually harassing comments to Istvan, asking Istvan to "let me touch it, let me have it, let me sit on it" ("it" referring to Istvan's penis).

24. From 2012-2014, during which time Def. Pada was Plaintiff's Manager, Def. Pada constantly threatened Plaintiff with termination if Plaintiff refused to show Def. Pada his "big thick uncut Latino cock." When Plaintiff opposed Def. Pada's sexually harassing and sexually abusive demands, Def. Prada on multiple occasions always told Plaintiff, "Don't forget I'm a manager, you have to do what I say, unless you want to start looking for another job."

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

25. From around 2012 and/or before 2012 through July 2020.  Def .Pada was a managing agent and/or employee of Def. Best Buy at the Los Feliz Best Buy store in Los Angeles, CA. Manager.

26. From 2014-2020, during which time Def. Pada was a Best Buy Manager, Def. Pada constantly threatened Plaintiff with termination if Plaintiff refused to show Def. Pada his "big thick uncut Latino cock." When Plaintiff opposed Def. Pada's harassing and sexually abusive demands, Def. Prada on multiple occasions always told Plaintiff,  "Don't forget I'm a manager, you have to do what I say, unless you want to start looking for another job."

27. From 2012-2014, Istvan Valencia, former customer service associate at Def. Best Buy Los Feliz store, witnessed Def. Pada constant sexually harassing Plaintiff by making comments about Plaintiff's penis, asking Plaintiff for anal and/or oral sex, asking Plaintiff sexual questions, and telling Best Buy male employees Def. Pada managed about his "bussy" and Pada's sex life, etc. In September 2020, Istvan told Plaintiff that he, Istvan will testify that he witnessed Def. Damien Pada sexually harassing Plaintiff for several years during Plaintiff's employment at the Best Buy Los Feliz Store in Los Angeles, CA, when Def. Pada was a Best Buy manager and/or supervisor.

28. Beginning around 2013, when Def. Pada was Plaintiff Jonathan Palomo's manager, Best Buy employee Karen Hernandez personally witnessed and/or heard Def. Pada making sexual harassing gender comments towards Plaintiff, where either Def. Prada  was asking Plaintiff for oral and/or anal sex and/or making sexual comments about Plaintiff's male body parts (penis, testicles, and buttocks), as Def. Pada specifically targeted Plaintiff and other male Best Buy employees, based on their gender, as Def. Pada, who is homosexual, sexually desired Plaintiff and the other Best Buy employees because of their male genitalia.

29. From around 2013 through Plaintiff's termination in July 2020, Best Buy employee Karen Hernandez personally witnessed  and/or heard Def. Pada's continual sexually harassing gender comments towards Plaintiff, where either Def. Pada was asking Plaintiff for oral and/or anal sex and/or making sexual comments about Plaintiff's body and/or penis and/or testicles and/or buttocks.

30. From 2012-2014, Best Buy employee Darrell Anderson, personally witnessed and/or heard Def. Pada's continual sexually harassing gender comments towards Plaintiff, where either Def. Pada was asking Plaintiff for oral and/or anal sex and/or making sexual comments about Plaintiff's body and/or penis and/or testicles and/or buttocks. (See Exhibit D- Declaration of Darrell Anderson).

31. Darrell Anderson, a former Best Buy employee, was employed at the Los Feliz Store in Los Angeles, CA from 2009 through 2014. (See Exhibit D).

32. Darrell Anderson's phone number is 323-445-9462.  (See Exhibit D).

33. On 10/19/2020, Darrell Anderson sent Plaintiff a text message from his cell phone where he typed, stated and/or published to Plaintiff: "My years 2009-2014  I've witness and heard Damian ask to give you sexual pleasure on multiple occasions Putting his mouth on your mouth  and mouth on your penis and being able to please

1  you more than any woman can  Anderson." (See Exhibit D- Declaration of Darrell
Anderson).

2  34. Between 2012 and 2014, Def. Pada, who was Plaintiff's manager at Def. Best

3  Buy's Los Feliz store in Los Angeles, would always say to Plaintiff, "let me touch it,
let me have it, let me sit on it" ("it" referring to Plaintiff's penis) and  Def. Pada would

4  always bend over in front of Plaintiff and rub Plaintiff's penis with Def. Damien Pada's

5  buttocks by grinding and twerking(dancing in a sexual, gyrating manner) Def. Pada's
buttocks directly on Plaintiff's penis, almost every day that Plaintiff worked with Def.

6  Pada on the sales floor at Def. Best Buy's Los Feliz store in Los Angeles, CA.

7  Plaintiff, as well as Best Buy employee Darrell Anderson, also witnessed Def. Pada
sexually harassing and sexually assaulting Istvan Valencia in the same exact manner

8  (described herein #34) between 2012 and 2014, when Def. Pada managed both

9  Istvan Valencia and Plaintiff. (See Exhibit D- Declaration of Darrell Anderson).

10  35. Around the beginning of March 2020, Def. Fadi Ammouri walked up to Plaintiff
on the sales floor to commend Plaintiff on his unprecedented sales figures, where

11  Def. Fadi told Plaintiff, "Its never been done before by anybody, including myself,  I
was never able to do this before when I was a Computer Department supervisor,"

12  while referring to this  Best Buy "Matrix" document that Def. Fadi personally handed

13  Plaintiff, which Def. Fadi stated to Plaintiff  "because of you, your department
generated $25, 982, 141.00 in Sales for Best Buy. Keep it up."  (See Exhibit M)

14  36. Def. Best Buy did not follow their own progressive discipline policy or what Def.
Best Buy calls their "formal corrective action process" which "is used when coaching

15  and feedback have not improved performance. (see page 17 of Exhibit G)

16  37. Plaintiff never received a Written Warning by Def. Fadi and/or Def. Best Buy, at
any time before he was terminated on 07/17/2020, referring to "taking an additional

17  $200 off customer transaction in exchange for them purchasing Total Tech Support.

18  (TTS)" on 07/17/2020.(see page 17 of Exhibit G)

38.  On 07/01/2020, Operations and/or Inventory Manager Eduardo, who manages
19  Plaintiff but who is also managed by Def. Fadi, ORDERED Plaintiff to do a price

20  matching discount immediately after Plaintiff hung up the phone with Jeremy at Def.
Best Buy's Corporate Office, who minutes earlier informed Plaintiff that he was under

21  investigation for approving cashiers' discretionary price matching discounts, based

22  on  Best Buy competitor's advertised prices of the same items.  Best Buy was unable
to specify and/or list and/or name the cashiers whose discounted price matching

23  transaction and/or transactions, which Plaintiff allegedly approved, were the basis of

24  Best Buy's decision to terminate Plaintiff on 07/17/2020. Because Best Buy's
corporate policy is to offer price matching discounts and because Best Buy failed to

25  specify which Best Buy cashiers price matching discount transactions allegedly
violated company policy causing Plaintiff's termination, Best Buy's stated reason for

26  terminating Plaintiff is bald and conclusory, as Best Buy has never stated in writing

27  and/or verbally to Plaintiff any concrete facts regarding how Plaintiff violated some
alleged Best Buy policy, as Best Buy cashier who give Best Buy customers these

28  price matching discounts are never terminated for violating Best Buy policy.Def. Best
Buy also told Plaintiff that Def. Best Buy does not have any documentation to prove

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1  that Plaintiff violated the alleged company policy that Def. Best Buy stated was the basis for Plaintiff's termination.(See Exhibit I & Termination letter.)

2  39.  On 07/01/2020, Operations and/or Inventory Manager Eduardo told Plaintiff that

3  he didn't understand why Plaintiff was under investigation for approving the cashiers' price matching discounts, as Best Buy's company policy encourages employees to

4  always approve the customer's price matching discounts when customers come to

5  Best Buy stores with it's competitor's advertisements, showing a lower retail price. (See Exhibit I) than Best Buy offers on the same and/or similar product.

6  40. Plaintiff never received a Final Warning by Def. Fadi and/or Def. Best Buy at any

7  time, before he was terminated on 07/17/2020, referring to "taking an additional $200 off customer transactions in exchange for them purchasing Total Tech Support.

8  (TTS)."on 07/17/2020. (See Exhibit I)

9  41. Plaintiff does not have any knowledge of how and/or what Best Buy cashier was involved when Plaintiff  allegedly was "taking an additional $200 off customer

10  transactions in exchange for them purchasing Total Tech Support (TTS)," on 07/17/2020.   (See Exhibit I)

11  42. Plaintiff NEVER admitted to Def. Best Buy and/or anyone that he took "an

12  additional $200 off customer transactions in exchange for them purchasing Total Tech Support. (TTS)." (See Exhibit I)

13  43. Because Def. Best Buy did not give Plaintiff any "written warning" or "final

14  warning"  (see page 17 of Exhibit G) prior to "involuntary termination,"  Def. Best Buy did not  follow their own progressive discipline policy when terminating Plaintiff on

15  07/17/2020. (See Exhibit I & G)

16  44.  Def. Best Buy stated that Plaintiff was terminated for being "in violation of Best Buy's Inappropriate Conduct Policy, which is consequently, grounds for

17  termination." (See Exhibit G)

18  45. Plaintiff was never informed and/or warned and/or notified by any Best Buy Manager, including Eduardo and/or Hakop Koushian and/or Def.  Fadi, that Plaintiff's

19  approval of the cashiers' discretionary price matching discounts is a violation of Best Buy policy.

20  46. Examples of "Inappropriate Conduct" according to Def. Best Buy's policy includes

21  "theft, falsification of company documents, safety violations, harassment, security violations, etc.(See Exhibit I & G)

22  47. A supervisor approving the cashiers' price matching discounts is not a violation of

23  Best Buy's company policy.

24  48. Def. Best Buy's company policy is to match the advertised prices of their competitors.

25  49.  During Plaintiff's employment at Def. Best Buy, Plaintiff never engaged in any type of conduct which violated any Best Buy policy, including "theft, falsification of

26  company documents, safety violations, harassment, security violations, etc, as Def. Best Buy falsely accused Plaintiff of on 07/17/2020.(See Exhibit I & G)

27  50. Plaintiff has always performed successfully in the job position he held at the time

28  of his termination, as evidenced in Exhibit P, where his direct managers, Hakop Koushian and Def. Fadi, collaboratively issued Plaintiff's 2019 "total appraisal score"

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

as "4.4" and Plaintiff's 2020 "total appraisal score" as "4.7. In 2019 and/or 2020, Plaintiff was given a raise because of his exemplary job performance, which Def. Fadi approved of. (See Exhibit P)

51. Around April 2019. Def. Best Buy considered Plaintiff's job performance above satisfactory. (See Exhibit P)

52. On September 26, 2020, Plaintiff emailed Amelia Hardy, April Wagner, Lynn Slone, and Cory Elhers, who are Def. Best Buy's directors/managing agents at Best Buy headquarters in Minnesota to appeal the 07/17/2020 wrongful termination of Plaintiff's employment, which was based on retaliation and discrimination.

53. On September 26, 2020, Plaintiff sent Def. Best Buy a Cease and Desist letter via email requesting Def. Best Buy remove the random customer's republication from Best Buy's website of Def. Fadi and/or Def. Pada's libelous per se statements about Plaintiff, publishing that Plaintiff had been "charged" for "sexual assault" and "gone to jail for sexual assault," where Plaintiff also requested Def Best Buy to cease and desist from Publishing and/or republishing unprivileged, defamatory per se statements about Plaintiff to third parties, that Plaintiff had been "charged" for "sexual assault" and "gone to jail for sexual assault."(See Exhibit 1)

54. On September 26, 2020, when Plaintiff sent Def. Best Buy. a Cease and Desist letter (See Exhibit C) demanding Def. Best Buy remove the random customer's republication from Best Buy's site of Def. Fadi and/or Def. Pada's libelous per se statements about Plaintiff, publishing that Plaintiff had been "charged" for "sexual assault" and "gone to jail for sexual assault," (See Exhibit 1) Plaintiff also requested that Def. Best Buy pay out all of Plaintiff's earned wage, personal paid time, unused vacation and all wage statements be sent to Plaintiff.

55. On October 1, 2020, Def. Best Buy's managing agent, Larissa Sipprell, who works in "HR Employee Relations,"called Plaintiff and told Plaintiff she would send Plaintiff all of Plaintiff's earned wage, personal paid time, unused vacation and all wage statements to Plaintiff. As of 10/26/2020, Def. Best Buy has failed to send Plaintiff all of Plaintiff's earned wage, personal paid time, unused vacation and all wage statements to Plaintiff at the time of his termination on 07/17/2020 through 10/26/2020.

Please call me to resolve this ASAP, as I AM asking for an apology letter for being defamed and sexually assaulted since 2012 by Manager Damien and confirmation letter that Best Buy removed these 100% false December 16, 2019 published defamatory libelous criminal statements about me by October 4, 2020. I am also seeking back pay, job reinstatement, and Best Buy's failure to paid earned wages and unused vacation and personal time pay upon termination.  I also never got my final wage statements. I'm requesting all my wage statements be mailed to me as well."

55. On 10/01/2020, Plaintiff had a phone interview with Best Buy's Sr. Manager, Larissa Sipprell who works in "HR Employee Relations" regarding Plaintiff's 09/26/2020 "Cease & Desist email" regarding the Defamatory per se statements of purported facts that Best Buy republished on December 16, 2019 on their site where third parties reasonably understood these defamatory per se statements to be about

AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

Plaintiff, which implied and/or stated as a matter of fact that Plaintiff was "arrested" and "went to jail for sexual assault." (See Exhibit L)

56. On 10/01/2020, Larissa Sipprell told Plaintiff she was beginning an investigation regarding Def. Pada's sexual harassment and sexual assault of male employees he supervised, including Plaintiff and regarding Def. Fadi's racial and gender comments that "Hispanic men are all child molesters" and Def. Fadi called Plaintiff a "cunt," "crybaby," and "a little pussy" when Plaintiff made formal complaints to Def. Fadi from November 2019- July 2020, opposing sexual assault and sexual harassment by his subordinate, Def. Pada.

57. After years of Def. Pada's sexual assault and sexual harassment, it severely affected Plaintiff's personal life causing him depression, anxiety, insomnia, mental anguish, stress, fear, humiliation, loss of self worth, eating disorder, loss of sleep and took a huge psychological toll on his mental, emotional, physical health , which was noticed by family members and friends.

58. Plaintiff formally complained to General Manager Fadi Ammouri in November 2019 of Def. Pada's sexual harassment and sexual assault in an attempt to end Def. Pada's traumatic constant sexual assault and/or rape and/or sexual harassment by Manager Damien Pada.

59. Def. Fadi Ammouri told Plaintiff to "man up and stop being a crybaby," "men can't be sexually harassed," and told me to "stop being such a cunt and little pussy and to get a sense of humor and stop being so emotional" as Plaintiff cried  on several occasions begging beginning in November 2019 asking Def. Fadi to please stop Def. Damien Pada's sexual harassment and assault upon Plaintiff's genitals, where Def. Pada constantly grabbed Plaintiff's buttocks and groped, jerked, jiggled, fondled and grabbed Plaintiff's penis several times a day and/or week in front of customers because he is a male.

60. Def. Fadi forced Plaintiff to accept Def. Pada's sexual assault and sexual harassment as a term and condition of employment or risk being terminated because of Plaintiff's gender.

61. After the first formal and/or informal November 2019 complaint to Def. Fadi where Plaintiff opposed sexual harassment and sexual assault by his subordinate Def. Pada, Plaintiff made subsequent complaints to Def. Fadi opposing sexual harassment and sexual assault by Def. Pada, where Plaintiff was threatened with termination each time he complained to Def. Fadi, as Def. Fadi, as the General Manager, always told Plaintiff to " you should just start looking for another job because if you make written complaints then you are going to be terminated." 62. From 2012- 07/17/2020, Plaintiff was sexually assaulted and sexually harassed on the sales floor, in the bathroom and SDR, and in the parking lot by Def. Pada, which Def. Fadi ratified by refusing to discipline Def. Pada. Def. Fadi told Plaintiff around early November 2019,"First of all, men cant be sexually harassed. You are not a woman and you don't have a vagina. Second of all, Damien is a flaming gay sissy and you are straight man with big muscles, nobody is going to believe that a fag like Damien Pada is sexually harassing a strong, straight man with huge muscles and touching you inappropriately. Even if Damien is or was touching you inappropriately,

its not sexual harassment between two men.  Plus you must flirted with Damien or gave him signals to make him think its okay for him to feel comfortable touching you. You've  allowed him to touch you inappropriately since 2012, so you cant complain 7 years later in 2019.  I don't know what to say.  If he wants to see you jerk off,  just let him watch you jerk off once or maybe let him suck your cock. I'm just giving you advice how to get Damien to back off. He only wants you because he cant have you or maybe your just playing hard to get.I don't get involved in employees sex lives and your sexual relationships.  You are being a little pussy and a crybaby and wasting my time with this nonsense. I'm not writing this up and starting an investigation or asking Damien anything because its a waste of everybody's time and Best Buy will see you as a troublemaker and as an employee who is not a team player and Best Buy wont want you working here anymore. If you make me write this up, I'm telling you now, you might as well start looking for a job. Be a team player and learn how to ignore it or laugh it off. If he grabs your penis, grab his back, if he spanks your ass, slap his ass harder and rougher. That'll put an end to it. Don't bother me again with this nonsense."

63. In November 2019, Def. Pada told Plaintiff that Def. Fadi told Def. Pada that Plaintiff made a complaint opposing Def. Pada's  sexual assault and sexual harassment, which began in 2012.

64.Def. Pada retaliated against Plaintiff for making complaints opposing Def. Pada's groping of his penis and buttocks by nicknaming Plaintiff "child molester" or "Michael Jackson" and would only call Plaintiff  "child molester" instead of using Plaintiff's name and would tell Best Buy customers in front of Plaintiff  at work that Plaintiff was "arrested and went to jail for sexually assaulting young children because he's just like Michael Jackson"  and then Def. Damien Prada would start singing Michael Jackson's song Billy Jean but changed the words to  "little children are his lovers" and would laugh. The customers would look at Plaintiff with disgust. This often made Plaintiff cry and caused Plaintiff severe emotional distress, where he was unable to eat, sleep, and caused him to feel nauseous and caused him to have constant diarrhea.  (See Exhibits **D**)

65.At one time in December 2019, a female customer came in the store and Damien told her that Plaintiff was a "child molester who was arrested for raping little children." Then this customer wrote a complaint about me to Best Buy on the employee site on 12/16/2019 that all Best Buy employees can read  That Damien "Proceeded to speak to another customer and brag about how he was charged or had gone to jail for sexual assault. That made me feel Really uncomfortable as well. Please look into this guy. His name is Joe or Joseph and he's the supervisor of the tech department at the Los Feliz location in Los Angeles California."

66. Def. Fadi made repeated threats of racial violence by constantly expressing his desire to have Hispanic people "wiped out" and telling Plaintiff on a regular basis that "all these Spics (referring to Hispanics) should be shot."

67.Beginning in 2012, Plaintiff believed he had disability of PTSD and/or depression and/or severe anxiety resulting from Def. Damien Pada's constant sexual assault,

sexual battery and sexual harassment which began in 2012.  (see Exhibits 1,  A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)

68. Plaintiff was qualified to do his job with or without a reasonable accommodation.Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 344-45 (2008)

69.In July 2020, Plaintiff was terminated after he informed Defendants in June 2020 that he needed a reasonable accommodation to take a medical leave for mental health treatment and/or physical therapy for his back.

70.Plaintiff had an economic relationship with Arthur Pimentel with the probability of future economic benefit to the plaintiff(see Exhibits 1,  A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz) (Exhibits E-K)

71. Defendant Damien Pada had knowledge of the relationship between Arthur Pimentel and Jonathan Palomo because Arthur Pimentel testified that he verified Plaintiff Jonathan Palomo's previous 14 years of employment at Def. Best Buy with Def. Best Buy's managing agent, Def. Damien Pada, as Arthur Pimentel was planning on hiring Jonathan Palomo and pay him for the work he performed for Arthur Pimentel.

72. Defendant Pada's unprivileged, false, defamatory per se statements of purported fact that he published to Arthur Pimentel were made with the specific intent to disrupt the economic relationship between Jonathan Palomo and Arthur Pimentel. Damien Pada's intentional defamatory per se statements he published to Arthur Pimentel in August 2020 were designed to disrupt the relationship between Jonathan Palomo and Arthur Pimentel. (see Exhibits 1,  A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz) (E, F, G, H, I, J, K)

73.Defendant Pada's unprivileged, published defamatory per se statements of purported facts about Plaintiff to Arthur Pimentel disrupted the economic relationship between Plaintiff and Arturo Pimentel.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  (Exhibits E-K)

74. Defendant Pada's defamatory per se statements caused Plaintiff to lose a freelance job, and/or income  and/or other type of compensation related to his work for Arthur Pimentel. (see Exhibits 1,  A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz) (Exhibits E-K)

75. The economic harm Plaintiff sustained was proximately caused the acts of Defendant Pada and/or Def. Fadi and/or Def. Best Buy.
 (see Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1153.)(see Exhibits 1,  A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)(Exs E-K)

76. Plaintiff sent a Cease and Desist Letter to Def. Best Buy on or around September 26, 2020.(See Exhibit C)

77. Def. Best Buy never responded to Plaintiff's 09/26/2020 Cease and Desist Letter.

78.In August 2020, Def. Pada republished Def. Fadi's unprivileged defamatory per se statements of purported facts about Plaintiff, where Def. Fadi published to Def. Pada that"Jonathan Palomo was terminated from Best Buy because Jonathan was caught stealing from Best Buy and the investigation showed that Jonathan was stealing from Best Buy for many years and was doing some type of price discounting scam and

committing fraud against Best Buy.(see Exhibit 1, A, B, C,D, I, & Declaration of Arthur Pimentel)  Ex A -1C

79. Plaintiff never "bragged" to any one about having been "charged" and/or having went to jail for sexual assault,as Def. Pada and/or Def. Fadi published these privileged statements of purported facts about Plaintiff to third parties in 2019 and 2020.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)

80.Plaintiff has never been arrested for any crime as Def. Pada and Def. Fadi published these unprivileged defamatory per se statements of purported facts about Plaintiff to third parties in 2019 and 2020.(see Exhibit 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Exs A-1C

81. Plaintiff has never been arrested for sexual assault.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Ex A-1C

82. Plaintiff has never went to jail.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Exs A-1C

83. Plaintiff has never went to jail for sexual assault.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Exs A-1C

84. Plaintiff has never been accused of sexual assault by any alleged victim.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)

85. Plaintiff has never had "little children as his lovers," as Def. Fadi and Def. Pada published this unprivileged statement of purported facts about Plaintiff to third parties, including Best Buy customers and prospective employers in 2019 and/or 2020.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)

86. Plaintiff is not a child molester.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Exs A-1L

87. Plaintiff has never had sex with any minors and/or any person under the age of 18 years old and Defendants have no admissible evidence and/or will never be able to produce any admissible evidence that Plaintiff has had sex with any minors or any person under the age of 18 years of age.(see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)  Ex A-1C

88. Plaintiff was never "having sex with little boys like Michael Jackson," as Def. Fadi and Def. Pada published about Plaintiff to third parties in 2019 and/or 2020. (see Exhibits 1, A, B, C, D, I, & Declarations of Arthur Pimentel & Albert Cruz)

89. Around February 2020- March 2020, Def. Fadi was aware that Plaintiff believed he had umbilical hernia and/or the symptoms of umbilical hernia, as Def. Fadi told Plaintiff to lay down in the back for a few months as Plaintiff was in excruciating pain.

90. Plaintiff sustained a workplace injury in February 2020, which he reported to Def. Fadi.  Exs A-1C

91. Plaintiff went out on a leave, which began around early March 2020 and returned to his work at Best Buy around mid to late April 2020.

92. Around late February/early March 2020, Plaintiff made a request to Def. Fadi that Plaintiff needed to take a FMLA/CFRA leave.

93. In February 2020, Plaintiff requested a reasonable accommodation, to Def. Fadi ,in the form of light duty, based on Plaintiff's disabilities and worker's comp injuries.

94. In February 2020 and/or by early March 2020, Def. Fadi, on behalf of Def. Best Buy, refused to interact in the interactive process after Plaintiff requested a reasonable accommodation for light duty in February 2020 to Def. Fadi.

95. Around late February 2020, in response to Plaintiff's request for a reasonable accommodation, Def. Fadi told Plaintiff, "Why are you always bitching like a little pussy? You are a straight man, so you have to do all the manual labor, thats what straight males are expected to do. Only females are given light duty by Best Buy. Because you are a man, you cant ask for that. Damien Pada is a sissy so he doesn't have to do manual labor because he's gay and fem. So don't compare yourself to Damien Pada, we don't make him do any manual labor because he's a QUEEN, who tells everyone he has a BUSSY(boy pussy) and is girl on the inside, as he believes he has a vagina, and Damien gets fucked like a women by different men every week. Normal men don't act like Damien, he's definitely a girl to me. But you are a straight man, so we expect you to be a gentleman and do all the lifting and manual labor for females and sissies like Damien. Otherwise, we can find another straight man who will be a man and do all the manual labor and lifting, without complaining that they have a disability and need light duty. Plus I need you to keep doing exactly what you are doing because your producing great results and your sales numbers are so high."

96. In June 2020, Plaintiff again requested another reasonable accommodation in the form of light duty, to Def. Fadi, based on Plaintiff's disabilities and the worker's comp injuries Plaintiff sustained in 2019 and 2020.

97. At all times during Plaintiff's employment, Plaintiff was able to perform all the essential functions of his job, with or without a reasonable accommodation.

98.  In June 2020, after Plaintiff again requested another reasonable accommodation in the form of light duty, to Def. Fadi, based on Plaintiff's disabilities and worker's comp injury. Def Fadi told Plaintiff, "we already went over this light duty issue a few months ago, and I told you its not possible because you are a straight male, we need you to be lifting and doing all the manual labor because the females and Damien (Def. Pada) cant do manual labor. Stop complaining and be a man! Its your job as a man to do the heavy lifting for women and sissies like Damien, so we cant put you on light duty, even though you claim you were injured from lifting those heavy boxes back in February. I let you go out on an FMLA leave in March and April, that should've been enough time to get yourself together. If you are claiming that you now have a disability or may have umbilical hernia from lifting boxes, then you cant work at Best Buy anymore."

99. In June 2020, Plaintiff requested another FMLA/CFRA leave from Def. Fadi since Plaintiff did not use the full 12 weeks, when he took his first FMLA/CFRA leave back in March 2020 and April 2020, which was not longer than 8 weeks.

100. Plaintiff met all the FMLA/CFRA requirements, entitling Plaintiff to FMLA/CFRA leave when Plaintiff requested to take FMLA leave in both March 2020 and in June 2020.

101. In June 2020, Plaintiff asked Def. Fadi for a reasonable accommodation in the form of a transfer to another Best Buy store since Def. Pada did not stop sexually

AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

harassing and sexually assaulting Plaintiff on a daily and/or weekly basis after Plaintiff reported and opposed Def. Pada's constant sexual harassment(demands for oral and anal sex, etc) and sexual assault (groping, grabbing, rubbing, fondling Plaintiff's penis and spanking and grabbing Plaintiff's buttocks) to Def. Fadi around late October/early November 2019.

102. Because Def. Fadi, as Def. Pada's manager, as early as October/early November 2019, would not take any action to prevent and stop Def. Pada's constant sexual harassment, constant sex discrimination, constant sexual assault  and pervasive sexually hostile work environment perpetrated upon Plaintiff Plaintiff's disability(PTSD symptoms, anxiety, depression, insomnia, IBS symptoms) exacerbated exponentially.

103. Because Plaintiff's PTSD symptoms had exacerbated since around late October/early November 2019 when Plaintiff formally and/or informally reported Def. Pada's illegal discrimination, based on Plaintiff's sex, to Def. Fadi, Plaintiff made another reasonable accommodation request in June 2020 to Def. Fadi for a transfer to another Best Buy store in Los Angeles, CA, so Plaintiff would no longer be sexually assaulted and sexually harassed every day by Def. Pada. Plaintiff's June 2020 reasonable accommodation request for a transfer request was directly related to Plaintiff's disability (PTSD symptoms, anxiety, depression, insomnia, IBS symptoms), as Plaintiff would no longer be subjected to Def. Fadi and Def. Pada's severely hostile work environment which exacerbated his disability, (PTSD symptoms, anxiety, depression, insomnia, IBS symptoms)which has been an ongoing, long term disability which began around 2012 when Def. Pada began sexually assaulting and sexual harassing Plaintiff. (See Exhibit D- Declaration of Darrell Anderson)

104. Although Def. Fadi had always made racially derogatory remarks about Hispanics and Latinos to Plaintiff since Def. Fadi became the "GM" or "General Manager" around early 2018, Def. Fadi became more racially hostile after Plaintiff opposed sex discrimination by Def. Pada, where instead of Plaintiff being called racially derogatory names such as "beaner," "spic and span" and/or "MS-13 killer" instead of his name, in November 2019,  Def. Fadi began calling Plaintiff, "MS-13 rapist," "illegal alien child molester," "Latino Michael Jackson," "Pervert Palomo" instead of Plaintiff's first name.

105. Def. Best Buy has not terminated any other Best Buy employee, who is similarly situated to Plaintiff in all material aspects, for approving the cashiers' discretionary price matching discounts when customers come into Best Buy Stores with its' competitors advertisements of their lower retail prices on the same and/or similar product that Best Buy also sells.

106.  Def. Best Buy does not terminate employees, who are similarly situated to Plaintiff in all material aspects, for approving the cashiers' discretionary price matching discounts when customers come into Best Buy Stores with its' competitors advertisements of their lower retail prices on the same and/or similar product that Best Buy also sells.

107. Def. Best Buy has a progressive discipline policy.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

108. Def. Best Buy did not apply their progressive discipline policy to Plaintiff and/or to Plaintiff's alleged violation of company policy, which caused Plaintiff's termination .

109.Def. Best Buy almost always applies their progressive discipline policy to Best Buy employees, including but not limited to Best Buy employees, who are/were similarly situated to Plaintiff in all material aspects.

110. Plaintiff was discriminated against by Defendants because of Plaintiff's sexual orientation (heterosexual).

111. Def. Pada's sexual harassment and sexual assault was only targeted at heterosexual male Best Buy employees, such as Istvan Valencia, Plaintiff and others.

112.Because of Plaintiff and Istvan's sexual orientation, which is heterosexual, Def. Pada on a weekly basis made stereotypical, discriminatory comments about Plaintiff and Istvan's sexual orientation, calling Plaintiff and Istvan "breeders," "beaver chasers," "straggots," and "carpet muchers."

113. Def. Damien Pada is a homosexual.

114.Because of Plaintiff and Istvan's sexual orientation, which is heterosexual, Def. Pada, besides constantly making stereotypical, discriminatory comments about Plaintiff and Istvan's sexual orientation, calling Plaintiff and Istvan "breeders," "beaver chasers," "straggots," and "carpet munchers," Def Pada targeted his sexual assault (groping their penises) against heterosexual male employees, such as Plaintiff and Istvan, because of their sexual orientation, as Def. Pada told Plaintiff that his "goal" was to "turn you all gay."

115. Plaintiff knows Def. Pada is a homosexual  because not only has Def. Pada has told Plaintiff,Istvan Valencia, Darrell Anderson, Def. Fadi and others, but Def. Pada showed Plaintiff a video of a male anally penetrating Def. Pada's rectum, where Plaintiff saw Def. Pada's face and heard his voice in the video while Def. Pada was being anally penetrated by another male's penis. Also, Def. Pada always expressed his passion and desire and love for "big thick cocks," while always GROPING PLAINTIFF'S PENIS AND TOUCHING PLAINTIFF'S PENIS WITH HIS BUTTCHEEKS.

116. Because of Plaintiff and Istvan's sexual orientation, which is heterosexual, Def. Pada, besides his constant stereotypical, discriminatory comments about Plaintiff and Istvan's sexual orientation(calling them "breeders," "beaver chasers," "straggots," and "carpet munchers" because of their heterosexual sexual orientation), Def. Pada told Plaintiff and other heterosexual males, including Istvan Valenica, that Pada's "goal" in showing them gay porn and taking them out to bars after to work was to get these heterosexual Best Buy male employees "drunk so I can turn you all gay."

117. Darrell Anderson testified in his Declaration and authenticated the text message he sent to Plaintiff in October 2020, that he , Darrell Anderson, also heard Def. Pada making stereotypical, discriminatory comments about Plaintiff's sexual orientation.

118. Because of Plaintiff's sexual orientation, Def. Fadi, in his managerial capacity, disparately treated Plaintiff because he is a "straight man", making Plaintiff do most, if not all, of the manual labor because Def. Fadi believed that female employees and

1  males who he believed are "sissies" like Def. Pada couldn't or shouldn't do any manual labor.

2  119.Plaintiff's PTSD symptoms had exacerbated since around early November 2019

3  when Plaintiff formally and/or informally reported Def. Pada's illegal discrimination(based on Plaintiff's sex) to Def. Fadi,

4  120. Plaintiff's June 2020 reasonable accommodation request to Def. Fadi for a

5  transfer to another store, was related to Plaintiff's disability (PTSD symptoms, anxiety, depression, insomnia, IBS symptoms), as Plaintiff's PTSD symptoms had

6  exacerbated since around early November 2019 after Plaintiff formally and/or

7  informally reported Def. Pada's illegal discrimination(based on Plaintiff's sex) to Def. Fadi, whereby Def. Fadi created a more hostile work environment, such as calling

8  Plaintiff  more racially and sexually harassing names because of Plaintiff's sex and

9  race, such as "MS-13 rapist," "Latino Michael Jackson," "Dirty John,"  and defaming Plaintiff by telling Best Buy's customers in a joking manner that Plaintiff "only fucks

10  little hairless Mexican girls' tacos" (implying and referring to prepubescent Mexican girls).

11
   121. Def. Fadi and/or Def. Best Buy refused and/or failed to interact and/or

12  reasonably accommodate Plaintiff's disabilities in June 2012 after Plaintiff made formal and/or informal requests for Def. Best Buy to reasonably accommodate his

13  disabilities by allowing Plaintiff to transfer to another store and/or for light duty at the

14  Los Feliz due to his workplace injuries.

15  122. In retaliation for  Plaintiff's June 2020 request or a reasonable accommodation and/or to go out on a FMLA leave and/or Plaintiff's engaging with lawyers to follow a

16  workers compensation claim for medical treatment, Def. Fadi and/or Def. Best Buy told Plaintiff  on or around July 1, 2020, that Plaintiff  was now under investigation for

17  an alleged company policy violation that allegedly happened in September 2019,

18  whereby Def. Best Buy HR Manager told Plaintiff that no documentation existed to substantial this alleged company policy violation, after Plaintiff requested to see the

19  transactions and receipts and documents that were basis of investigation and

20  subsequent termination.
   123. Upon information and belief, Because Def. Best Buy does not have

21  documentation relating to the exact transactions, identifying the specific cashiers

22  who were also involved in offering these alleged price matching discounts to the same customers, no Best Buy cashiers at the Los Feliz store were ever never

23  terminated for using their discretion to initially approve these alleged customers' price

24  matching discounts, when these cashier violated the same alleged Best Buy company policy.

25  124.On September 26, 2020, Plaintiff emailed Amelia Hardy, April Wagner, Lynn Slone, and Cory Elhers, who are Def. Best Buy's directors/managing agents at Best

26  Buy headquarters in Minnesota to appeal his 07/17/2020 illegal termination, which

27  was based on retaliation and discrimination.

28  125.On September 26, 2020, Plaintiff sent Def. Best Buy Co. Inc. a Cease and Desist letter requesting Def. Best Buy Co. Inc. cease and desist from Publishing and/

or republishing unprivileged, defamatory per se statements about Plaintiff to third parties, accusing Plaintiff of criminal activity.

126.On September 26, 2020, Plaintiff sent Def. Best Buy Co. Inc. a Cease and Desist letter demanding Def. Best Buy Co. Inc. cease and desist from republishing unprivileged, purported statements defamatory per se statements about Plaintiff to third parties, accusing Plaintiff of criminal activity, that Plaintiff was "charged" and/or "arrested" for "sexual assault," and demanding these defamatory per se publications about Plaintiff be removed from Best Buy's site.

127. On 10/01/2020, Plaintiff had a phone interview with Best Buy's Sr. Manager, Larissa Sipprell who works in "HR Employee Relations" regarding Plaintiff's 09/26/2020 "Cease & Desist email" regarding the Defamatory per se statements of purported facts that Best Buy republished on December 16, 2019 on their site, where third parties, including Best Buy employees such as Maria Verdugo, reasonably understood these defamatory per se statements to be about Plaintiff, which implied and/or stated as a matter of fact that Plaintiff was "charged" and/or "arrested" and "went to jail for sexual assault."

128. On 10/01/2020, Larissa Sipprell told Plaintiff she was beginning an investigation regarding Def. Pada's sexual harassment and sexual assault of male employees he supervised, including Plaintiff, Jonathan Palomo and Def. Fadi's racial and gender comments that "Hispanic men are all child molesters" and Def. Fadi called Plaintiff a "cunt," "crybaby," and "a little pussy" when Plaintiff made formal complaints to Def. Fadi from November 2019- July 2020, opposing sexual assault and sexual harassment by Def. Pada.


On or around late August/September 2020, because Plaintiff did not have a job and Plaintiff needed income, Plaintiff was looking for related work answered a job ad, where was looking for freelance

129.On 09/26/2020, Plaintiff asked Def. Best Buy for his wage statements to be mailed to him, as well as all "unpaid back pay" because of "Best Buy's failure to pay earned wages and unused vacation and personal time pay upon termination" and that Plaintiff "never got my final wage statements. I'm requesting all my wage statements be mailed to me as well."

130. At no time after 09/26/2020 and/or his 07/17/2020 termination, did Def. Best Buy ever mail Plaintiff his wage statements. _phone conversation with Larissa Sipprell,_

131.At no time after 09/26/2020 or after his 10/01/2020, did Def. Best Buy confirm in writing to Plaintiff that these defamation per se (criminal)statements about Plaintiff on Def. Best Buy's site were permanently removed, where the customer on 12/16/2019 republished Def. Pada and/or Def. Fadi's unprivileged statements of purported facts about Plaintiff having allegedly been "charged" with "sexual assault"

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1   and/or that Plaintiff "went to jail for sexual assault," to Def. Best Buy and/or Def. Best

2   Buy's internal employees and other third parties,  such as this specific unknown Best
    Buy customer, as well as Arthur Pimentel, and Albert Cruz. *later in 2020 (Ex. A & B)*   *(Ex. 1)*

3   132. After years of Def. Pada's sexual assault and sexual harassment, it severely

4   affected Plaintiff's personal life causing him depression, anxiety, insomnia, mental
    anguish, stress, fear, humiliation, loss of self worth, eating disorder, loss of sleep and

5   took a huge psychological toll on his mental, emotional, physical health , which was
    noticed by family members and friends.

6   133. Plaintiff formally complained to General Manager Fadi Ammouri in around late

7   October/ early November 2019 of Def. Pada's sexual harassment and sexual assault
    in an attempt to end Def. Pada's traumatic constant sexual assault and/or rape and/

8   or sexual harassment by Defendant Manager Damien Pada.

9   134.After Plaintiff formally complained to General Manager Fadi Ammouri about Def.
    Pada sexually harassing and sexually assaulting Plaintiff since 2012, Def. Fadi

10  Ammouri told Plaintiff to "man up and stop being a crybaby," "men can't be sexually
    harassed," and told Plaintiff to "stop being such a cunt and little pussy and to get a

11  sense of humor and stop being so emotional" as Plaintiff cried on several occasions

12  begging beginning in late October/early November 2019 asking Def. Fadi to please
    stop Def. Damien Pada's sexual harassment and assault upon Plaintiff's genitals,

13  where Def. Pada constantly grabbed Plaintiff's buttocks and groped, jerked, jiggled,

14  fondled and grabbed Plaintiff's penis several times a day and/or week in front of
    customers because he is a male.

15  135. Def. Fadi forced Plaintiff to accept Def. Pada's sexual assault and sexual

16  harassment as a term and condition of employment or risk being terminated because
    of Plaintiff's gender.

17  136.Plaintiff was threatened with termination each time he complained to Def. Fadi

18  about Def. Pada's sexual harassment and sexual assault, where GM Fadi always
    told Plaintiff to "start looking for another job because if you make written complaints

19  then Best Buy will terminate you."

20  137.Plaintiff was sexually assaulted and sexually harassed in the bathroom, SDR,
    and parking lot in 2020 by Def. Pada, which Def. Fadi ratified by refusing to discipline

21  Def. Pada, but instead skipped all steps in Def. Best Buy's progressive discipline

22  policy to retaliate against Plaintiff by terminating Plaintiff for a pre textual reason,
    which other similarly situated employees were never terminated for.

23  138.  GM Fadi told Manager Damien Prada that  Plaintiff opposed his sexual assault
    and harassment and made formal complaints to him in November 2019, as Def.

24  Pada informed Plaintiff in November 2019 that he was aware that Plaintiff made a

25  formal complaint opposing sexual assault and sexual harassment by Def. Pada
    going back to 2012.

26  139. Beginning around November 2019, .Def. Pada retaliated against Plaintiff for

27  making complaints opposing Def. Pada's groping of Plaintiff's penis and buttocks by
    nicknaming Plaintiff "child molester" or "Latino Michael Jackson" and/or "MS 13

28  rapist" or "Dirty John" and/or "Pervert Palomo" would only call Plaintiff  these names
    instead of using Plaintiff's first name and would tell Best Buy customers in front of .

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Plaintiff that Plaintiff was "arrested and went to jail for sexually assaulting young children because he's just like Michael Jackson," and/or that Plaintiff is  a "child molester who was arrested for raping little children and then Def. Damien Prada would start singing Michael Jackson's song Billy Jean but changed the words to "little children are his lovers" and would laugh. The customers would look at Plaintiff with disgust. This often made Plaintiff cry.

140. On 12/16/2019, one of these Best Buy customers, (who Def. Pada and/or Def. Fadi previously published that Plaintiff was a "child molester who was arrested for raping little children" to) wrote a complaint about Plaintiff to Def. Best Buy, (essentially republishing Def. Prada and/or Def. Fadi's defamatory per se statements about Plaintiff to third party, Best Buy), which Def. Best Buy then republished on 12/16/2019 to other third parties,( Karen Hernandez, Alan, & Nayelle) on their Best Buy internal portal site, that all and/or many Best Buy employees, such as Maria Verdugo, Karen Hernandez, Alan, & Nayelle, did and could read, and/or republished to other employees including Plaintiff, that  Def. Damien Prada "proceeded to speak to another customer and brag about how he(Plaintiff) was charged or had gone to jail for sexual assault. That made me(the customer) feel Really uncomfortable as well. Please look into this guy. His name is Joe or Joseph and he's the supervisor of the tech department at the Los Feliz location in Los Angeles California." (see Exhibit 1)

141. On 10/01/2020, Plaintiff was forced to self-publish and/or republish to Def. Fadi and/or Def. Pada's unprivileged, defamatory per se statements of purported facts about Plaintiff having being "charged or had gone to jail for sexual assault" and/or that Plaintiff was a "child molester who was arrested for raping little children" and/or that Plaintiff was "arrested and went to jail for sexually assaulting young children because he's just like Michael Jackson," to Larissa Sipprell.

142. After 12/16/2019, other Best Buy employees,Maria Verdugo, Karen Hernandez, Alan, & Nayelle, reasonably understood that the Best Buy customer's republication on 12/16/2019 was explicitly referring to Plaintiff Jonathan Palomo because the Best Buy customer published, (which Def. Best Buy republished ), that Plaintiff's "name is Joe or Joseph and he's the supervisor of the tech department at the Los Feliz location in Los Angeles California." (see Exhibit 1)

143. Shortly after December 16, 2019,  Maria Verdugo, Karen Hernandez, Alan, & Nayelle republished the Best Buy customers 12/16/2019 republication of Def. Pada and/or  Def. Fadi's unprivileged, defamatory per se statements of purported facts about Plaintiff having being "charged or had gone to jail for sexual assault" to Plaintiff, notifying Plaintiff that Plaintiff was being defamed.

144.  Def.Damien Pada and/or Def. Fadi were the original defamers who  fabricated these criminal accusations against Plaintiff to retaliate against Plaintiff for opposing sexual assault and sexual harassment and discrimination  because of Plaintiff's sex. After Def. Pada discovered that Plaintiff  formally reported Def. Pada's constant groping of Plaintiff's penis and constant sexual harassing comments to Fadi around November 2019, Def. Pada threatened Plaintiff with retaliation, telling Plaintiff "Because you reported me to Fadi, now watch what I do to you."

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

144. Even after Plaintiff reported Def. Damien Pada's constant sexual assaulting and sexual harassing Plaintiff to Def. Fadi around November 2019,  Def. Pada still continued to constant sexually assault and sexually harass Plaintiff because of his sex until Plaintiff was terminated in July 2020.

145. Def. Pada retaliated against Plaintiff beginning around November 2019 by publishing unprivileged defamatory per se statements of purported facts about Plaintiff to third parties(Arthur Pimentel, Larissa Sipprell, Albert Cruz, Best Buy Customer, Maria Verdugo, Karen Hernandez, Alan, & Nayelle) because Plaintiff already rejected Def. Pada's demands for sex and/or sexual conversations and/or sexual comments and because Plaintiff wouldn't give Def. Prada  "cock" that Def. Pada said that Pada "needed" because Def. Pada would always tell Plaitniff that Pada was "always horny and needed to be fucked and breeded by a big cock at least once a day" and would tell  Plaintiff and other heterosexual males that Pada's "mangina is so tight that it feels better than a pussy and you will like it better than your girlfriends pussy."

146. Plaintiff's colleagues reasonably understood that the Best Buy customer on 12/16/2019 was referring to Plaintiff  when publishing that Plaintiff  "was charged or had gone to jail for sexual assault" because of Plaintiff's job title position, being the "supervisor of the tech department at the Los Feliz location in Los Angeles California." and that Plaintiff's nickname was  "Joe or Joseph" and/or "JP."

147. In January 2020, Def. Fadi and/or Def. Best Buy refused to remove the Best Buy customer's  12/16/2019 unprivileged published defamatory per se statements of purported facts about Plaintiff to third parties, Maria Verdugo, Karen Hernandez, Alan, & Nayelle, from Def. Best Buy's internal website after Plaintiff requested Def. Best Buy cease and desist defaming Plaintiff and/or that Def. Best Buy remove from its' website these 12/16/2019 defamatory per se comments implying Plaintiff was "was charged or had gone to jail for sexual assault."

148. Def. Best Buy negligently and/or intentionally and/or maliciously defamed Plaintiff by Def. Best Buy's ratification and approval of it's customer's and/or of Def. Fadi and/or of Def. Pada's unprivileged published defamatory per se statements of purported facts about Plaintiff to third parties, Maria Verdugo, Karen Hernandez, Alan, & Nayelle,etc. when in January 2020 and/or October 2, 2020 Def. Best Buy refused to remove from its' website these specific, libelous per se 12/16/2019 defamatory per se comments implying that Plaintiff was "was charged or had gone to jail for sexual assault," which is 100% false.

149. At no time after 10/02/2020, did Def. Best Buy agree and/or confirm that it permanently removed from its' internal website the libelous per se published unprivileged statements of purported facts that Plaintiff "was charged or had gone to jail for sexual assault," after Plaintiff requested Def. Best Buy cease and desist from defaming Plaintiff in his 09/26/2020 and/or after his 10/01/2020 conversation with Def. Best Buy's Employee Relations HR Managaer Larissa Sipprell.

150. Beginning around December 2019, after Plaintiff's colleagues read Def. Prada and/or Def. Fadi's defamatory per se statements about Plaintiff that the customer republished to Def. Best Buy  on 12/16/2019 about Plaintiff, Plaintiff was treated —

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

differently by his colleagues, ,where Plaintiff began getting death threats at work by other customers, Plaintiff was ostracized, shamed,  constantly yelled at by Def. Fadi, always treated like a criminal, was called a "child molester," a "pervert," customers and other employees would walk past Plaintiff coincidentally singing  "little children are his lovers."

151. After 12/16/2019 Plaintiff complained to GM Fadi about being these defamatory per se statements that were published about Plaintiff on Def. Best Buy's website to be removed immediately.  Def Fadi stated to Plaintiff "all of you Latinos are child molesters and rapists , even President Trump knows it and that's why he doesn't want anymore of your people in this country because you are all trash and you are all criminals. It's your culture to fuck little kids. Latina women are whores and pregnant at 12 years old by you child molesters." Then Def. Fadi started laughing . Plaintiff told Fadi that it was  not funny and that Plaintiff was offended by his constant racial Trump comments and that Def. Fadi was racially stereotyping Plaintiff    because of what Trump says about Hispanic men.  Def.Fadi then told Plaintiff to contact Best Buy's HR in Minnesota headquarters if Plaintiff wanted these published defamatory criminal statements removed from Def. Best Buys website, which Plaintiff did when on the phone in January 2020 and was promised by a Def. Best Buy HR guy that Best Buy would do an investigation and follow up with Plaintiff with a phone call. Plaintiff never received any follow up call or return correspondence from this HR guy regarding these defamatory per se statements of purported facts that Def. Best Buy published about Plaintiff on its' site. In January 2020, Plaintiff then went back to Def. Fadi, who told Plaintiff that he was told by Best Buy senior managers in Minnesota that Def. Best Buy approved of these defamatory per se statements published about Plaintiff on its website to third parties, Maria Verdugo, Karen Hernandez, Alan, & Nayelle, etc., because  according to Def. Fadi, Def. Best Buy believed these published defamatory per se statements of purported facts that Plaintiff "was charged or had gone to jail for sexual assault," were "freedom of speech." Def. Fadi  then told Plaintiff,  "these criminal false accusations we have to leave it up on Best Buy site so people can know we have a child molester in the workplace, who works here because it's the law.  Best Buy does not censor anybody's speech and we have to make sure our store is safe and employees have a right to know that you were arrested for sexually assaulting small kids and we need to monitor your pedophile behavior so you don't do it at work."

152. Plaintiff appealed his illegal discriminatory termination which was based on retaliation for opposing sexual assault, constant sexual harassment rape by Def. Damien Pada and/or as a result of the Def. Prada and/or Def. Fadi's defamatory per se statements of purported facts that Plaintiff was the "Latino Michael Jackson"a "MS-13 rapist," "a child molester" and/or that Plaintiff "was charged or had gone to jail for sexual assault,"  which turned Def. Best Buy managers, Best Buy customers and Best Buy employees and/or Best Buy colleagues against Plaintiff, ruining Plaintiff's career and reputation.

153.Before 09/26/2020, Plaintiff formally asked Def. Best Buy at least 4 times

1    to remove the 12/16/2020 libelous per se criminal statements about Plaintiff
2    published on their site, because  Best Buy employees, MaryLou, Alan and Nayelle
     told Plaintiff that these unprivileged, published defamatory per se statements that
3    Plaintiff "was charged or had gone to jail for sexual assault,"  were still posted on
     Def. Best Buy's website in the month of September 2020.
4    154. After Plaintiff's termination,  around August 2020, Def. Fadi and/or Def. Best
5    Buy published unprivileged, defamatory per se statements to third party, Arthur
     Pimentel,  that Plaintiff was/is a "thief" and  that Plaintiff "was terminated last month
6    for stealing and fraud" and that Plaintiff "was stealing from Best Buy for many years
7    and was doing some type of price discounting scam and committing fraud against
     Best Buy," when in August 2020, Def. Pada verified Plaintiff's previous employment
8    with Def. Best Buy to Arthur Pimentel, who was a prospective employer..
9    155. Def. Fadi and/or Def. Pada and/or Def. Best Buy published unprivileged,
     defamatory per se statements about Plaintiff to third party, Arthur Pimentel, when
10   Def. Best Buy and/or its managing agents published "I wouldn't hire him if I were you.
11   Besides that fact that he was arrested and went to jail for the sexual assault of
     minors, Jonathan is a known thief. I was actually on vacation the week that Jonathan
12   was fired from Best Buy, but my Manager Fadi told me that Jonathan Palomo was
13   terminated from Best Buy because Jonathan was caught stealing from Best Buy and
     the investigation showed that Jonathan was stealing from Best Buy for many years
14   and was doing some type of price discounting scam and committing fraud against
15   Best Buy.  So I can definitely verify that I know Jonathan very well, Jonathan did
     work here at Best Buy since 2007 and Jonathan was terminated last month for
16   stealing and fraud. If you do hire him, be very careful with him because he is a
17   convicted sex offender and loves stealing from his job, definitely don't allow him
     anywhere near children or near anything that you value that you want to keep," which
18   is ANOTHER republication of Def. Pada and/or Def. Fadi's  12/16/2019 published,
19   unprivileged defamatory per se statements of purported facts about Plaintiff to the
     third party, Best Buy customer, who then libeled Plaintiff by republishing these same
20   and/or mostly similar defamatory per se statements  of purported facts about Plaintiff
21   to Def. Best Buy, and other  Best Buy employees, such as MaryLou, Alan and
     Nayelle that Plaintiff "was charged or had gone to jail for sexual assault,"
22   156. Def. Fadi and/or Def. Pada and/or Def. Best Buy published unprivileged,
     defamatory per se statements about Plaintiff to third parties, Arthur Pimentel, Albert
23   Cruz, Best Buy customers, Best Buy employees, Karen Hernandez Maria Verdug,
     MaryLou, Alan and Nayelle, beginning in November 2019 , are all 100% false.
24   157. Def. Best Buy and/or Def. Fadi's published unprivileged, defamatory per se
25   statements about Plaintiff to Def. Pada and Arthur Pimentel that Plaintiff is "a known
     thief" and that "Jonathan Palomo was terminated from Best Buy because Jonathan
26   was caught stealing from Best Buy and the investigation showed that Jonathan was
27   stealing from Best Buy for many years and was doing some type of price discounting
     scam and committing fraud against Best Buy. " and that "Jonathan was terminated
28   last month for stealing and fraud." is 100% false and/or have absolutely NO BASIS
     IN FACT whatsoever.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

158.  Def. Fadi and/or Def. Pada and/or Def. Best Buy published unprivileged, defamatory per se statements about Plaintiff to third parties, Arthur Pimentel, Albert Cruz, Best Buy customers, Best Buy employees, Karen Hernandez Maria Verdugo, MaryLou, Alan and Nayelle, beginning in November 2019 , which are all 100% false have caused me irreparable reputational harm, emotional distress, personal reputational harm,  much stress and economic harm.

159. Best Buy, through its managing agents and HR Department, made oral assurances of continued employment to plaintiff by Defendant Best Buy's managers (including but not limited to previous Best Buy GM Art and Defendant Fadi Ammouri).

160. Best Buy, through its managing agents and HR Department, made oral assurances of continued employment to plaintiff by stating him that Best Buy only terminates employment for cause and/or for multiple violations of written company policy, after utilizing Best Buy progressive discipline policy which include either steps in that progressive discipline policy and/or written corrective action notices informing the employee of his or her violation of company policies with an opportunity for improvement of performance before termination.

161. Plaintiff and Defendant Best Buy and/or Def. Fadi shared the actual understanding that plaintiff's employment could and would be terminated only for cause, which would include a violation of written company policy.

162.Plaintiff and Defendant Best Buy and/or Def. Fadi shared the actual understanding which resulted in an implied contract requiring that Defendants Best Buy and Fadi have good cause to terminate plaintiff's employment.

163.Defendant Best Buy and/or Def. Fadi have never been able to specifically cite the exact written Best Buy policy violation that warranted termination.

164.Defendant Best Buy and/or Def. Fadi terminated Plaintiff based on an unwritten Best Buy policy.

165.Plaintiff does not know of any other similarly situated Best Buy employees who have been previously terminated by Def. Best Buy and/or Def. Fadi for the same, alleged unwritten policy violation that Def. Best Buy and/or Def. Fadi terminated Plaintiff for.

166.Def. Best Buy and/or Def. Fadi can not point to any written company policy that Plaintiff violated that proves that Plaintiff was terminated for good cause.

167.Because of Plaintiff's race, Def. Best Buy and/or Def. Fadi disparately disciplined Plaintiff by terminating him for an alleged violation of company policy, and by skipping all steps in Def. Best Buy's progressive discipline policy.

168.Because Plaintiff made formal and informal complaints to Defendants opposing constant sexual harassment and sexual assault and sex discrimination in the workplace, Def. Best Buy and/or Def. Fadi disparately disciplined Plaintiff by terminating Plaintiff for an alleged violation of company policy where Defendants bypassed all steps in Def. Best Buy's progressive discipline policy.

169.Because of Plaintiff's sex (male), Def. Best Buy and/or Def. Fadi disparately disciplined Plaintiff by terminating Plaintiff for an alleged violation of company policy where Defendants bypassed all steps in Def. Best Buy's progressive discipline policy.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

170. Upon information and belief, similarly situated female employees, who opposed sexual harassment and/or sexual assault by making formal complaint to Def. Best Buy and/or Def. Best Buy's managing agents, were not terminated.

171. Def. Fadi Ammouri is the GM and/or General Manager of the Los Feliz Best Buy Store, where Plaintiff was employed at the time of his termination on 07/17/2020.

172. Def. Fadi, in his professional capacity as the GM of the Los Feliz Best Buy store, had managerial power over both Plaintiff and Def. Pada. from October 2019 through Plaintiff's termination on 07/17/2020.

173. Before Def. Fadi Ammouri was the GM and/or General Manager of the Los Feliz Best Buy Store, where Plaintiff was employed at the time of his termination on 07/17/2020, Art Jamgochian was the GM and/or General Manager of the Los Feliz Best Buy Store.

174. Art Jamgochian , who was the GM and/or General Manager of the Los Feliz Best Buy Store, before Def. Fadi was the GM and/or General Manager of the Los Feliz Best Buy Store, told Plaintiff in September 2020 that he will testify that Plaintiff did not violate any Best Buy policy in approving price matching discounts, which was the basis of Plaintiff's termination.

175. After 07/17/2020,  Def. Best Buy's previous GM, Art Jamgochian, who was a managing agent of Def. Best Buy and/or was Plaintiff's Manager and/or superior, informed Plaintiff on multiple occasions that he, Art Jamgochian, has never personally terminated any similarly situated Best Buy employee for the same alleged unwritten company policy violation that Def. Best Buy terminated Plaintiff for.

176. After 07/17/2020,  Def. Best Buy's previous GM, Art Jamgochian, who was a managing agent of Def. Best Buy and/or was Plaintiff's Manager and/or superior, informed Plaintiff on multiple occasions that he, Art Jamgochian, has never HEARD of any previous, similarly situated Best Buy employee being terminated for the same alleged unwritten company policy violation that Def. Best Buy terminated Plaintiff for.

177. Because Def. Best Buy and/or Def Fadi has no admissible evidence to prove that Def. Best and/or Def. Fadi has ever terminated any employee that was similarly situated to Plaintiff for the same alleged unwritten company policy violation that Def. Best Buy terminated Plaintiff for, Def. Best Buy and/or Def Fadi

178. Many similarly situated employees to Plaintiff, who have not made formal complaints opposing retaliation, sex and race discrimination, have not been terminated for violating the same alleged unwritten Best Buy policy that Def. Best Buy used as its basis for terminating Plaintiff's employment.

179. Def. Best Buy does not find it has good cause to terminate other similarly situated employees to Plaintiff, who have also violate the same

by Defendant Best Buy's managers (including but not limited to previous GM Art and Defendant Fadi Ammouri).The length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared

understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

180. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

181. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

182. Plaintiff's actually and/or perceived disabilities of PTSD, anxiety, depression and/or umbilical hernia are disabilities covered by the FEHA.

183. Plaintiff is a qualified individual because Plaintiff was always able to perform the essential functions of the position without a reasonable accommodation.

184. Def. Best Buy failed to reasonably accommodate plaintiff's disabilities in February 2020.

185. Beginning in February 2019, Def. Best Buy failed to engage in the interactive process.

186. Plaintiff was subjected to an adverse employment action, the 07/17/2020 termination of his employment with Def. Best Buy, because of his perceived disability and/or perceived disabilities.

187. Plaintiff suffered from a disability and/or perceived disability and/or was otherwise regarded as disabled because of Plaintiff's PTSD, anxiety, depression, umbilical hernia resulting from February 2020 workplace injury by Def. Fadi and/or Def. Best Buy

188. In June 2020, Plaintiff was qualified to perform the essential functions of the job with or without reasonable accommodation.

189. Def. Best Buy and/or Def. Fadi never reasonably accommodated Plaintiff in June 2020 and/or July 2020.

190. Plaintiff was subjected to an adverse employment action, , the 07/17/2020 termination of his employment with Def. Best Buy, because of his disability of umbilical hernia and/or perceived disability of umbilical hernia and/or perceived disability of PTSD and/or anxiety and/or depression.

191. Since at least February 2020, Def. Fadi was aware of Plaintiff's umbilical hernia disability and/or perceived disability of umbilical hernia, as Plaintiff reported this workplace injury to Def. Fadi and Def. Fadi allowed Plaintiff to lay down in a breakroom, as Plaintiff complained to Def. Fadi that he was in excruciating pain because of his disability.

192. Plaintiff went out on a leave in or around early March 2020. to around mid to late April 2020.

193. Plaintiff requested an FMLA leave around early March 2020 for PTSD symptoms such as insominia, depression, anxiety due to Def. Pada's continual sexual assault, sexual harassment, and sex discrimination that Def. Fadi refused to prevent and/or intervene and/or stop after Plaintiff opposed Def. Pada's continual

sexual assault, sexual harassment, and sex discrimination that has been constant and ongoing since 2012.

194. Plaintiff returned from this leave in or around mid to late April 2020.

195.  In or around March 2020, when Plaintiff advised Def. Fadi that he was requesting to take a FMLA, Def. Fadi originally told Plaintiff, "You cant go out on a FMLA leave. FMLA leaves are only for pregnant women. You are a male, you don't qualify for FMLA."

196.  A few days later, in or around March 2020, Def. Fadi and/or Def. Best Buy told Plaintiff that Plaintiff  could go out on the FMLA leave for his mental health issues and/or umbilical hernia, but Def. Fadi told Plaintiff ,"First you have to use up all of your vacation time and/or paid personal time, otherwise you won't be getting paid while out you are out on FMLA. Def. Fadi and/or Def. Best Buy then gave Plaintiff forms to fill out. Plaintiff filled out these forms and returned them to Def. Best Buy. Def. Fadi then confirmed that Plaintiff was approved by Def. Best Buy to go out on this FMLA leave in March 2020.

197. In or around late February/ early March 2020, because Plaintiff advised Def. Fadi that Plaintiff was requesting an FMLA leave for medical treatment for his PTSD and/or umbilical hernia, Plaintiff gave notice that he needed to exercise his rights under FMLA leave for a qualifying condition.

198. Plaintiff learned while he was on the FMLA leave around April 2020 that usually for an FMLA leave to be approved by the employer, the employee's doctor has to fill out the paperwork.  However, Def. Best Buy never had Plaintiff's doctor fill out any paperwork for the FMLA leave that was approved and which Plaintiff requested from Def. Fadi and/or Def. Best Buy in or around early March 2020. However, in March 2020, because Def. Fadi told Plaintiff Def. Best Buy approved his FMLA leave, Plaintiff believed that he was on a FMLA leave because his manager, Def. Fadi told him so in or around early March 2020 before he went out on the FMLA leave.

199. Defendant Fadi and/or Def. Best Buy was informed in or around early March 2020 that Plaintiff had an actual and/or perceived disability, as they approved Plaintiff's leave in or around early March 2020.

200.  In or around mid April 2020, Def. Fadi and/or Def. Best Buy told Plaintiff that he was required to return to work immediately because Plaintiff had no more vacation and/or personal pay time available to use. In early April 2020, Plaintiff then told Def. Fadi and/or Def. Best Buy that Plaintiff believed he was on FMLA because that is what Def. Fadi led Plaintiff to believe when he went out on the leave in or around early March 2020 and Plaintiff doesn't need to be paid while on an FMLA.   Def. Fadi then asked Plaintiff around middle April 2020, "Do you have a vagina?  Are you another Damien Prada, who also believes he has a vagina and can get pregnant? Do you believe you are you a pregnant women if so you do maybe you will need to be out longer for serious mental problems? " Plaintiff then said, "No and no.  I don't have a vagina and I don't believe I have vagina and can get pregnant like Damien Prada believes he has a vagina and can get pregnant."  Def. Fadi then told Plaintiff, "Good because we already went over this together. You cant go out on a FMLA leave. FMLA leaves are ONLY for pregnant women. You are a male, you don't qualify

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

for FMLA. I only told you that you were going to be on the  FMLA leave after your vacation time exhausted. But now that your vacation time exhausted, we need you to come back to work or you will be terminated." Plaintiff told Def. Fadi that he was waiting on and needed Def Best Buy to send him to a workers compensation doctor because Plaintiff needed medical treatment for his umbilical hernia, which was a workplace injury, which was part of the reason Plaintiff requested a FMLA. leave. Plaintiff told Def. Fadi, "I am in excruciating pain and Def. Best Buy have not provided me with a workers compensation doctor for my umbilical hernia, so I might need to find a workers compensation lawyer to help me get medical treatment." Def. Fadi once again told Plaintiff, "There's nothing wrong with you, be a man, stop being a little pussy, and come back to work or I'm going to recommend you be terminated. I don't need any more lazy Latinos, we have enough of them around here, I can hardly get Damien Pada to do any work because he says he wants to be treated like a female because he says he has a bussy. He's gay so he has an excuse because he's mentally ill.  Now you told me you aren't gay, that you are a straight man, so therefore, I cant treat you the same way I treat Damien Pada, who refuses to do manual labor because he believes he's a woman."

201. Plaintiff was out of work from around early March 2020 until around mid to late April 2020.

202.  Plaintiff did not get paid for vacation pay for the entire time of the  leave that began around early March 2020 and ended around early to mid April 2020.

202. At some point during this 2020 leave, Plaintiff was not being paid vacation pay and/or his regular weekly salary and/or weekly wages.

203. Because Plaintiff's vacation exhausted during this early March 2020 through early to mid  April 2020 leave, Plaintiff was told by Def. Fadi that as soon as Plaintiff's vacation and/ or sick time exhausted that the FMLA leave would begin.

204. Under normal circumstances, and/or Generally, Best Buy does not allow employees to take more than 2 weeks of vacation and/or vacation pay at one time.Plaintiff was not using his vacation and/or sick time the entire time that he was on this FMLA leave between early March 2020 - early to mid  April 2020 .

205. Def. Fadi interfered with Plaintiff's FMLA rights by telling Plaintiff that Plaintiff could not take FMLA for his disability of umbilical hernia  and/or PTSD, and that Plaintiff would be terminated if Plaintiff did not return to work around early to mid April 2020.

206. In early March 2020, Plaintiff believed that he was on FMLA beginning in early March 2020, but that eventually the FMLA leave would be unpaid. This pay while out on FMLA leave was never clearly explained to Plaintiff and he doesn't recall receiving any wage statements to see how Def. Best Buy coded and /or documented and/or processed the pay during his FMLA leave. Because Plaintiff never used  FMLA before early March 2020, he relied on what his manager Def. Fadi told him at all times.

207. Because Plaintiff's earlier leave between early March 2020  through early to mid April 2020 was less than 2 months, In June 2020, Plaintiff believed he still had several weeks of FMLA leave available to use so that he could get medical treatment

1  for his umbilical hernia that he was unable to get in the earlier leave around March-
April 2020 because Def. Best Buy never sent him to a workers compensation doctor.
2  208. Def. Best Buy used Plaintiff's early March 2020- April 2020 FMLA covered
3  absences in conjunction with its awareness that Plaintiff's disability might require
more medical leave in the future as a negative factor in its decision to terminate him
4  in July 2020.
5  209. Plaintiff specifically asked Def. Fadi and/or Def. Best Buy to take more medical
leave for his disabilities of PTSD and/or umbilical hernia in late June 2020.
6  210. In late June 2020, Def. Fadi and/or Def. Best Buy refused to authorize Plaintiff's
7  FMLA leave after Plaintiff requested FMLA leave again in June 2020 for his
disabilities of PTSD and/or umbilical hernia in late June 2020, which would've been a
8  continuation of Plaintiff's earlier March 2020- April 2020 FMLA leave.
9  211. The proximity in time between Plaintiff's early March 2020-mid April 2020 FMLA
leave and Plaintiff's late June 2020 request for another FMLA qualifying leave
10  provides supporting evidence of a connection between the two FMLA events and
Plaintiffs July 2020 termination, which was based on a pre textual reason, as Plaintiff
11  and previous GM Art have no knowledge that Def. Best Buy  terminated other
12  similarly situated employees for this same alleged policy violation.
13  212.  Def. Fadi and/or Def. Best Buy never  even attempted to accommodate
Plaintiff's disabilities, that is, to sit down with Plaintiff and/or cooperatively figure out
14  ways to work around them and keep the employee working. (See Gov. Code §
12940(n); Prilliman v. United Air Lines, Inc., (1997) 62 Cal.Rptr.2d 142, 149-150) that
15  is, to sit down with the employee and discuss the matter, to work cooperatively to find
16  ways to keep the employee working.
213. Plaintiff believed a transfer to another Best Buy store would have made his
17  PTSD symptoms more manageable, as he would no longer be subjected to Def.
18  Pada constant sexual assault and sexual harassment, as well as Def. Fadi's racially
hostile work environment.
19  214. The FEHA recognizes that a transfer is considered a reasonable
20  accommodation.
215. An employee who is injured in a workers' compensation accident may in fact be
21  "disabled" for the purposes of FEHA. The definition of "disabled" under FEHA is
22  broad, and includes any physical or mental impairment or loss which "limits a major
life activity." (Gov. Code § 12926(i)(1).) FEHA expressly includes "working" as a
23  major life activity. (See Gov. Code §§ 12926(i)(1)(C); 12926(k)(1)(B)(iii).)
216. Under the FEHA, the burden is on defendant to establish that plaintiff is
24  incapable of performing his essential duties with reasonable accommodation of
25  either a transfer and/or of light duty.. ( Green v. State of California (2006) 33 Cal.Rptr.
3d 254, 262.)
26  217.   In early November 2019, Plaintiff engaged in a protected activity by formally
27  opposed sex discrimination (sexual harassment/sexual assault ) perpetrated upon
him by Def. Damien Prada when he made multiple complaints to Def. Fadi since late
28  October/early November 2019 until July 17, 2020.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

218. **Plaintiff** engaged in protected activity by notifying Def. Fadi and/or Def. Best Buy in or around early March 2020 and late June 2020 he was seeking a FMLA medical leave for psychological treatment (PTSD, mental health) and/or for his physical disability, of umbilical hernia.

219.  In early March 2020, **Plaintiff** engaged in protected activity by asking Defendant Fadi and/or Def. Best Buy for asking for a reasonable accommodation in the form of a request for light duty due to his workplace injury/disability of umbilical hernia.

220. In late June 2020, **Plaintiff** engaged in a protected activity by asking Defendant Fadi and/or Def. Best Buy for a reasonable accommodations in the form of a request for a transfer for another store due to his PTSD disability caused by the constant sexual assault and sexual harassment by Def. Damien Pada.

220. In mid April 2020,, **Plaintiff** engaged in protected activity by notifying Def. Fadi and/or Def. Best Buy that Plaintiff  wanted to exercise his rights under the FMLA by taking a FMLA leave beginning in April 2020, as Plaintiff had not yet treated by a medical professional for his workplace injury/disability of umbilical hernia in mid April 2020 that was the reason for the early March 2020-mid April 2020 leave that he was currently on. Instead, Plaintiff was threatened with termination if Plaintiff didn't return to work around mid-late April 2020.

221. In early March 2020, **Plaintiff** engaged in protected activity by telling Defendant Fadi and/or Def. Best Buy that Plaintiff was engaging with lawyers to file a workers compensation claim to assist Plaintiff in getting medical treatment for his workplace injury causing him umbilical hernia.

222.In late June 2020, **Plaintiff again** engaged in protected activity by telling Defendant Fadi and/or Def. Best Buy that Plaintiff was engaging with lawyers to file a workers compensation claim to assist Plaintiff in getting medical treatment for his workplace injury causing him umbilical hernia, since Def. Best Buy refused to provide Plaintiff with medical treatment and were refusing to authorize Plaintiff's FMLA leave for his umbilical hernia.

223. A causal link existed between all of this protected activity that Plaintiff engaged in and the adverse employment action of termination on 07/17/2020 because Plaintiff asked for both reasonable accommodations, FMLA/CFRA leave in late June/early July 2020 and Plaintiff complained of sexual assault/sexual harassment by Def. Pada around late June 2020 when asking for a reasonable accommodation for a transfer to alleviate his PTSD, and Plaintiff again opposed Def. Pada's sex discrimination on July 1, 2020.. Around two weeks after Plaintiff engaged in various forms of protected activity,  Plaintiff was terminated and the reasons stated by Def. Best Buy for Plaintiff's termination were/are implausible.See Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 353 (2008) ("Because the employee's burden of establishing a prima facie case . . . is fairly minimal, the temporal proximity between an employee's disclosure of his symptoms and a subsequent termination may satisfy the causation requirement at the first step of the burden-shifting process."; Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000) ("The causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1  time between the protected action and allegedly retaliatory employment
   decision." (internal quotations and citations omitted))."See Martinez v. OLD
2  DOMINION FREIGHT LINE INC., Dist. Court, CD California 2015.
3  224. Because Def. Fadi refused to intervene and/or prevent Def. Pada's sex
   discrimination, Def. Fadi aided and abetted Def. Pada's sex discrimination targeted
4  at Plaintiff and/or other heterosexual male Best Buy employees.
5  225. Because Def. Best Buy refused to intervene and/or prevent Def. Pada's sex
   discrimination, Def. Best Buy aided and abetted Def. Pada's sex discrimination
6  targeted at Plaintiff and/or other heterosexual male Best Buy employees.
7  226. Because Plaintiff engaged in protected activity, Defendants retaliated against
   Plaintiff.
8  227. Because Plaintiff engaged in protected activity, Defendants Fadi and Best Buy
   retaliated against Plaintiff by terminating his employment contract with Best Buy.
9  228. Plaintiff is a male.
10 229. Plaintiff was subjected to unwelcome sexual harassment and assault by Def.
   Pada since 2012.
11 230. The harassment and assault complaint of was based on Plaintiff's sex because
12 Plaintiff's penis and testicles were always groped, grabbed, pulled, jigged, bounced
   and stroked and or rubbed on by Def. Pada.
13 231. During his employment with Def. Best Buy, Plaintiff objectively and subjectively
14 perceived an abusive sexually hostile work environment and communicated that to
   Def. Pada, Def. Fadi, Istvan Valencia, Darrell Anderson, etc
15 232. Plaintiff asked for his wage statements in his Ceast and Desist email to Best
16 Buy in late September 2020. Larissa Sapprell on behalf of Best Buy called Plaintiff
   on 10/01/2020, but refused to mail Plaintiff his wage statements in violation of Labor
17 Code § 226(b), when Def. Best Buy failed and refused to mail Plaintiff's wage
18 statements to him after termination on 07/17/2020 and then again in September and
   October 2020, when Plaintiff made written and verbal requests to Def. Best Buy and/
19 or its managing agents.
20 233.As of October 2020, Best Buy has refused to provide a copy of employment
   records after plaintiff's 09/26/2020 reasonable request which Larissa , Best Buys
21 agent, acknowledged she received.
22 234. In early March 2020- July 17,2020, Plaintiff was eligible for the FMLA's
   protections.
23 235.Def. Best Buy was covered by the FMLA.
   236. Plaintiff was entitled to leave under the FMLA.
24 237.Plaintiff provided sufficient notice to Def. Fadi and/or Def. Best Buy of his intent
25 to take leave in March 2020.
   238.Plaintiff provided sufficient notice to Def. Fadi and/or Def. Best Buy of his intent
26 to extend the FMLA leave in mid April 2020, to which Def. Fadi and/or Def. Best Buy
27 refused to authorize and demanded Plaintiff return to work or be terminated.
   239.Def. Best Buy, who was Plaintiff's employer, denied him FMLA benefits in early
28 March 2020 and/or mid April 2020, to which Plaintiff was entitled.

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

240. Def. Best Buy, who was Plaintiff's employer, denied him FMLA benefits in June 2020, to which Plaintiff was entitled.

241. In July 2020 and in August 2020, Defendant Fadi published unprivileged statements of purported facts about Plaintiff to Arthur Pimentel and/or Def. Pada that Plaintiff was a "thief," "Jonathan Palomo was terminated from Best Buy because Jonathan was caught stealing from Best Buy and the investigation showed that Jonathan was stealing from Best Buy for many years and was doing some type of price discounting scam and committing fraud against Best Buy."

242. Def. Pada and/or Arthur Pimentel reasonably understood that Def. Fadi's statements were about Plaintiff.

243. Def. Pada and/or Arthur Pimentel reasonably understood that Def. Fadi's statements about Plaintiff meant that Plaintiff had engaged in questionable professional conduct

244. Def. Prada and/or Def. Fadi and/or Def. Best Buy failed to use reasonable care to determine the truth or falsity of these statements that Plaintiff was a "thief," "Jonathan Palomo was terminated from Best Buy because Jonathan was caught stealing from Best Buy and the investigation showed that Jonathan was stealing from Best Buy for many years and was doing some type of price discounting scam and committing fraud against Best Buy."

245. All of Defendant Fadi's statements that Plaintiff is a "thief," and that "Jonathan Palomo was terminated from Best Buy because Jonathan was caught stealing from Best Buy and the investigation showed that Jonathan was stealing from Best Buy for many years and was doing some type of price discounting scam and committing fraud against Best Buy." are all 100% false.

246. Def. Best Buy has employee handbooks but Plaintiff doesn't currently recall ever seeing in these Best Buy handbooks anything concerning all the employee's rights and obligations under the FMLA." 29 C.F.R. § 825.301(a)(2).

247. Def. Best Buy never provided written guidance to Plaintiff all of the his rights and obligations under the FMLA in violation of 29 C.F.R. § 825.301(a)(2).

248. Because of Plaintiffs race ,Defendants Fadi and Best Buy discriminated against Plaintiff on the basis of his Hispanic race.

249. Def Fadi, acting as an agent for Def.Best Buy, terminated and/or impaired the contractual employment relationship Plaintiff had with Best Buy because of Plaintiff's race. Other non- Hispanics contractual employment relationships were not terminated by Def Fadi for providing customers with price matching discounts. Also, Plaintiff's previous GM, Art , a Caucasian male , did not terminate and/or impair the contractual employment relationship Plaintiff had with Best Buy when he was the General Manager for the same alleged policy violation. This is a direct inference that Def Fadi terminated and/or impaired the contractual employment relationship Plaintiff had with Def. Best Buy .

250. Because of Plaintiff's race, the previous GM , Art, who was also Caucasian did not make the same racially discriminatory and racially hostile comments to Plaintiff , nor did GM Art, Def. Fadi's predecessor, ever reprimand or warn or terminate Plaintiff for approving price matching discounts for the customers. GM Art actually, on the

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1  other hand, encouraged Plaintiff to "never let the customer walk" and always told
   Plaintiff to always price match our competitors' prices.

2  251. Plaintiff, at all times, was qualified for the position he was in and was performing

3  competently in the position he held.

   252. Because of Plaintiff's race, Plaintiff suffered an adverse employment action by

4  Def. Fadi and/or Def. Best Buy when he was terminated on 07/17/2020.

5  253. Plaintiff opposed Def. Fadi's racial hostile work environment on 07/01/2020 to
   Def. Best Buy HR Manager Jeremy.

6  254. 16 days after Plaintiff opposed racial discrimination, racial harassment, racially

7  hostile work environment by Def Ammouri to HR Manager Jeremey, Def. Best Buy
   and/or Def Fadi retaliated against Plaintifff with termination of his oral and/or implied

8  in fact employment contract with Def.Best Buy in violation of 42 USC 1981.

9  255. Def Best Buy's reason for terminating Plaintiff is pretextual as Def Best Buy can
   not cite or point to any company policy violation that Plaintiff violated.

10 256. Plaintiff's previous General Manager Art will testify in support of Plaintiff being
   terminated for a pretextual reason

11 257. Plaintiff and Best Buy has an employer-employee relationship,

12 258. Best Buy, the employer, terminated plaintiff's employment on 07/17/2020

13 259. Plaintiff's termination was substantially motivated by a violation of public policy
   such as the FEHA , CFRA, Title VII, ADA, FMLA, 42 USC 1981, and advising Best

14 Buy on 07/01/2020 that Plaintiff had engaged with an attorney to file a worker's
   compensation claim since Def. Best Buy denied Plaintiff medical treatment for his

15 disability of umbilical hernia and denied his Reasonable Accommodation requests

16 for light duty and/or a transfer to another Best Buy store, and for exercising his rights
   under the FMLA/CFRA to take medical leave to seek medical treatment for his

17 workplace injuries and/or PTSD mental disabilities.

18 260. Best Buy HR Manager Jeremy told Plaintiff on 07/01/2020, "Your medical leave
   absences in March and April 2020 were a problem and are also a part of this

19 investigation as these absences put a burden on your stores staffing and then you

20 just again a week or so again, asked for another long term medical leave for your
   disability of PTSD and umbilical hernia. "See Santillan v. USA Waste of Cal., 853 F.

21 3d 1035 ( 9th Cir. 2017) because Plaintiff was terminated in retaliation for opposing

22 sexual assault and sexual harassment by Def Pada since 2012, the California
   Supreme Court ruled that sex is a violation of public policy. See  Rojo v. Kliger (1990)

23 - 276 Cal. Rptr. 130, 52 Cal. 3d 65, 801 P.2d 373.

24 260. The discharge by Best Buy caused plaintiff economic, reputational, physical and
   psychological harm, as Best Buy and/or its managing agents told prospective

25 employers, and/or third parties (see Declaration of Arthur Pimentel and Albert Cruz)
   that Plaintiff was terminated for "stealing" and is a "thief." Best Buy's failure to

26 prevent the sexual and racial and disability discrimination by Defs Fadi and Pada

27 caused plaintiff to suffer severe emotional physical mental and psychological
    distress, loss to his professional reputation, loss of income , loss of future

28 employment and irreparable harm to his personal reputation by branding Plaintiff a
   "child molester" who was "charged and "went to jail" for "sexual assault" and _____

   **AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

republishing these unprivileged statements of purported facts to third parties ( Albert Cruz),including to Best Buy customers (Exhibit 1), and prospective employers, such as Arthur Pimentel, during and after Plaintiff's termination. See Yau v. Santa Margarita Ford, Inc., 229 Cal. App. 4th 144, 154 (2014).

261. On April 11, 2020, Plaintiff was still out on his FMLA leave.

262. Around mid May 2020, after Plaintiff returned from his leave, he documented and saw on  Best Buy's website that his vacation hours went from 230-170 hours, which Def. Best Buy used to pay him during his FMLA leave, which means that only 60 hours of vacation pay were used for more than 1 month of a medical leave.

263. Plaintiff was a full time Best Buy employee in 2020, who usually got paid at least 40 hours a week, without overtime.

263. Def. Best Buy did not terminate Plaintiff  for giving customers a price matching discount as Best Buy used as this reason as it's pretextual, non-discriminatory reason for terminating Plaintiff, as Plaintiff and every other similarly situated employee is required by Best Buy to approve the price matching discounts after the cashier uses their discretion to authorize them when the customer provides the cashier with a competitor's advertised lower price on the same and/or similar item.

264. Plaintiff  engaged in activities protected by the FEHA from October 2019 through July 2020, such as asking for a Reasonable Accommodation, requesting to take FMLA/CFRA leave, telling Best Buy and Def. Fadi that Plaintiff  was getting a lawyer to file a workers compensation claim,  opposing sexual and racial discrimination by Defs. Pada and Ammouri to HR Manager Jeremy in July 2020.

265. Best Buy  subsequently took adverse employment action against Plaintiff by terminating him for a reason that other employees who didn't engage in the same protected activities as Plaintiff were never terminated for.

266.The causal connection between the protected activities and the adverse employment action of termination can be inferred by timing and other factors.( Miller v. Dep't of Corr., 36 Cal. 4th 446, 472 (2005))

266. Around early to mid March 2020 Plaintiff went out on a FMLA/CFRA leave and returned to work around mid to - end of April 2020 and less than 3 months later he was terminated in retaliation for exercising his rights under the FMLA/CFRA.

267.Later in June 2020, Plaintiff asked Def Fadi  for a Reasonable Accommodation of a  transfer to another Best Buy store so he didn't' have to be sexually assaulted and sexually harassed by Def. Pada anymore, which exacerbated his PTSD.

268. Less than 3 weeks after requesting this reasonable accommodation request  for a transfer to prevent Def. Pada's constant sexual assault and sexual harassment to Def. Fadi  Plaintiff was terminated from his employment with Def. Best Buy on 07/17/20202.

269. On or around  04/20/2020, Plaintiff returned from his FMLA and then was terminated in retaliation,  less than 3 months later on 07/17/2020 for exercising his rights under the FMLA.

270 Because of Def Pada's sexual assault and sexual harassment, Plaintiff is still having trouble sleeping, has constant IBS symptoms, used to vomit everyday  before coming to work, which has stopped after Plaintiff's termination, however the severe

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

anxiety, unable to eat or concentrate and severely depression is ongoing and has led to Plaintiff loss of enjoyment of life and loss of self-esteem.

271.Plaintiff was subjected to Def Pada 's sexually harassing comments and actions , including but not limited to Def Pada constant groping jiggling, grabbing , shaking , rubbing, dancing on Plaintiffs penis

272. Beginning in October 2019 through July 2020, Defendants Fadi and Best Buy failed to take all reasonable steps to prevent the sex and racial discrimination, sex and racial harassment and instead retaliated against Plaintiff by terminating him for a pretextual reason that other similarly situated employees are not terminated for , as approving price Matching discounts is Best Buy's policy that Plaintiff was followed ;

273. Def. Best Buy's failure to Prevent the sexual and racial and disability Discrimination by  Defs Fadi and Pada caused plaintiff to suffer severe emotional physical mental and psychological  distress, loss to his professional reputation,  , loss of income , loss of future employment and irreparable harm to his personal reputation by branding Plaintiff a "child molester" who was "charged" and "went to jail " for "sexual assault" and republishing these unprivileged statements of purported facts to Best Buy customers, and third parties such as Arthur Pimentel and  Albert Cruz. See Lelaind v. City & Cnty. of San Francisco, 576 F. Supp. 2d 1079, 1103

### FIRST CAUSE OF ACTION DEFAMATION PER SE(LIBEL & SLANDER)(Against ALL Defendants and Does 1 10, Inclusive )Slander Per Se  in Violation of Cal. Civil Code § 46; Libel Per Se in Violation of Civ. Code § 45a

Libel per se is defined by Civ. Code § 45a as a "libel which is defamatory of the plaintiff without the necessity of explanatory matter." A statement is libel per se if "the defamatory meaning of [the statement] would be immediately apparent to any reader without knowing any facts beyond the face of the [statements]." Walker v. Kiousis (2001) 93 Cal.App.4th 1432, 1442.False statements charging the commission of crime or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se. See Weinberg v. Feisel (2003) 110 Cal.App.4th 1122, 1127; Barnes-Hind, Inc. v. Superior Court (1986) 181 Cal.App.3d 377, 385.

Because Defendants published to third parties unprivileged statements of purported facts stating and/or implying  that Plaintiff was "charged" and/or arrested and/or "went to jail" for "sexual assault" and was a "thief" and did some "fraud" and/or was involved in some type of "scam", these are crimes(theft, sexual assault, and reprehensible personal characteristics and/or behavior (stealing and being a "child molester" "little children are his lovers"),  libel attaches in the context of employment, an employee of "criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior." (Jensen v. Hewlett-Packard Co. (1993) 14 Cal.App.4th 958, 965.)

Slander in Violation of Cal. Civil Code § 46 (including Slander Per Se) ──────────
**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Slander is defined by Civil Code section 46 as "a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which ... [t]ends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits[.]" Civ. Code § 46.Less particularity is required in a complaint alleging slander.

274    Plaintiff repeats, re-alleges, adopts, and incorporates herein each and every allegation contained in each of the preceding paragraphs as though fully set forth herein. Plaintiff is informed and believes Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause external statements of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statements that portrayed Plaintiff as a person who was a career criminal, a "child molester" who was "arrested" and "jailed" and/or "WENT TO JAIL" for "sexual assault," that "little children are his lovers," and that Plaintiff was "terminated for stealing from Best Buy Co. Inc.," and that Plaintiff is a "thief."

275 These statements were outrageous, negligent, reckless, intentional, and maliciously circulated and recirculated by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional statements by Defendants, and each of them, were and continue to be foreseeably circulated and recirculated by Defendants, their agents, employees, and recipients in the community. Plaintiff hereby seeks damages for these statements and all foreseeable statements or publications discovered up to the time of trial.

276. During the above-described time-frame, Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited dissemination of defamatory statements, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants disseminated this defamation are believed to include, but are not limited to, other agents and employees of Defendants (Maria Verdugo, Karen Hernandez, Alan, Nyell, Jonathan Palomo, Damien Pada, Fadi Ammouri)and each of them, and the community (DOE 1 (customer), Albert Cruz (Exhibit B), prospective employers), all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

277 The defamatory statements consisted of oral and written, knowingly false, and unprivileged communications, intending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These statements included the following false and defamatory statements with the meaning and/or substance as follows: that Plaintiff is a child molester, found guilty of the crime of pedophilia ("sexual assault"), arrested and jailed for this crime and/or the crime of theft, as Defendants published unprivileged statements of purported facts about Plaintiff  to third parties that Plaintiff was ""terminated for stealing from Best Buy Co. Inc."

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

278   Plaintiff is informed, believes, and fears that these false and defamatory per se statements will continue to be made by Defendants, and each of them, and will be foreseeably recirculated by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable statements, including his own compelled self-publication of these defamatory statements ( which he was compelled to do on 09/26/2020 to various Minnesota residents (Best Buy corporate executives) in a cease and desist letter, asking them to remove Defendants published unprivileged libel per se statements from Defendants Best Buy's site.

279   The defamatory meaning of all of the above-described false and defamatory statements, and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

280   None of Defendants' defamatory statements against Plaintiff referenced above are true.

281   The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' statements, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

282   Each of these false defamatory per se statements (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the statements, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation and assassinate his character, and to cause him to be shunned, ostracized, avoided and avoided by the community.

283   Each of these statements by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants published these statements knowing them to be false and unsubstantiated by any reasonable investigation. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

284   The above complained-of statements by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, professional reputation, and employability. Defendants, and each of them, published these statements, not with

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

an intent to protect any interest intended to be protected by any privilege but with negligence, recklessness, and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned statements. Furthermore, Defendants Fadi Ammouri & Damien Pada are/were agents of Def. Best Buy, ACTING IN THEIR PROFESSIONAL CAPACITY as employees of a principal and/or corporation when they published the original unprivileged defamatory per se statements of purported facts about Plaintiff being a "child molester" who was "arrested" for "Sexual assault" and "jailed" or "went to jail" for this crime of "sexual assault" to third parties, Albert Cruz and a prospective employer named Amir or Ai , who at all times, reasonably understood those statements to be about Plaintiff.

285 As a proximate result of the publications and republications of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business, and professional reputation including suffering mental anguish, embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, potential job opportunities and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

286 Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

287 Defendants defamatory statements, which are all UNTRUE, were a substantial factor in causing Plaintiff harm.

288 Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, over $75,000.00.

**SECOND CAUSE OF ACTION (Wrongful Termination of Employment in Violation of Public Policy (Against ALL Defendants and Does 1-10, Inclusive)**
(Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167)see Rojo v. Kliger (1990) - 276 Cal. Rptr. 130, 52 Cal. 3d 65, 801 P.2d 373.);); MEDICAL LEAVE, see Stevenson v. Huntington Memorial Hospital 941 P.2d 1157 (Cal.1997); for RACE, see Sistare-Meyer v. Young Men's Christian Assn. (1997) 58 Cal.App. 4th 10, 14, 16-17; DISABILITY, see Rope v. Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App, 4th 635, 660; (Workers Compensation retaliation- see Santillan v. USA Waste of California, Inc. 853 F.3d 1035(9th Cir 2017)(Against ALL Defendants and Does 1 10, Inclusive)

289 The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

290   Plaintiff was employed by Def. Best Buy and thus had an employer-employee relationship;

291   Plaintiff, a California resident, was terminated by Def. Best Buy, a corporation doing business in California, on 07/17/2020 in Los Angeles, California; (3) Plaintiff's termination was a violation of public policy because it was in retaliation for Plaintiff engaging in the protected activity of opposing sexual harassment/assault and/or sex discrimination by Defendant Damien Pada 4) the termination was the legal cause and harm whereby Plaintiff sustained damages; and (5) Plaintiff suffered economic, psychological, emotional, physical, and reputational damages. Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993)

292   Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (i.e., age, sex, and/or protected activity). These actions were in violation of FEHA, the California Constitution, and California Labor Code section 1102.5.

293   As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

294   As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

**THIRD CAUSE OF ACTION (Race, Sex, Sexual Orientation, National Origin, Disability Discrimination)(Violation of FEHA (Government § 12900, et seq.)—Against All Defendants and Does 1 to 10, Inclusive) (Alch v. Superior Court (2004) 122 Cal.App.4th 339, 382.)**

295   The allegations set forth in paragraphs above are re-alleged and incorporated herein by reference.

296   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, et seq., and defendants committed unlawful employment practices, including by the following bases for liability:

a. Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plain- tiff's disability, race, color, sexual orientation, gender, opposing sexual assault and sexual harassment, perceived sexual orientation, national origin, and/or color, in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's race, national origin, and/or color, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination and harassment based on plaintiff's disability and/or perceived disability, race, color, sexual orientation, gender, opposing sexual assault and sexual harassment, perceived sexual orientation, national origin, and/or color, in violation of Government Code section 12940(a); in violation of Government Code section 12940(k); 

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

d. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA/ FMLA/TITLE VII/42 USC 1981/ADA/WORKERS COMPENSATION/ CFRA and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h).

297 As a proximate result of defendants' willful, knowing, and intentional discrimi- nation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

298 As a proximate result of defendants' willful, knowing, and intentional discrimi- nation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

299 Plaintiff has incurred and continues to incur legal expenses and expects to incur future attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reason- able attorneys' fees and costs (including expert costs) in an amount according to proof.

300 Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

### FOURTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1981 (RETALIATION, HOSTILE WORK ENVIRNOMENT, DISCRIMINATION, INTERFERENCE WITH /TERMINATION OF EMPLOYMENT CONTRACT, DISPARATE TREATMENT)See   Domino's Pizza, 126 S.Ct. at 1249

301   Plaintiffs repeats and realleges and incorporates by this reference the allegations set forth in paragraphs above, inclusive, as though fully set forth herein.

302 Defendant's discrimination against Plaintiff , is in violation of the rights of plaintiff afforded him by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

303   By the conduct described above, Defendant Best Buy intentionally deprived Plaintiff  of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Best Buy, in violation of 42 U.S.C. §1981.

304 As a result of Defendant Best Buy's discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Def. Fadi and/or Def. Best Buy's  actions, thereby entitling him to compensatory damages.

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

305  In its discriminatory actions as alleged above, Best Buy has acted with malice or reckless indifference to the rights of Hispanic Plaintiff, thereby entitling him to an award of punitive damages.

306  To remedy the violations of Plaintiff's rights secured by Section1981, plaintiff requests that the Court award him the relief prayed for below.

**FIFTH CAUSE OF ACTION (Intentional Infliction of Emotional Distress— Against All Defendants and Does 1 to 10, Inclusive) "If properly pled, sexual harassment will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress... ." (Fisher, 214 Cal.App. 3d at 618.)(See Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 608.)**

307  The allegations set forth in paragraphs above are re-alleged and incorporated herein by reference.

308  Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

309  Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

310  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

311  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

312  Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling plaintiff to punitive damages.

**SIXTH CAUSE OF ACTION (Violations of Labor Code § 1102.5, et seq.—Against ALL Defendants  and Does 1 to 10, Inclusive)**

313  The allegations set forth in above paragraphs are re-alleged and incorporated herein by reference.

314  At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants. This statute prohibits defendants from retaliating against any employee, including plaintiff, for raising complaints of illegality.

315  Plaintiff raised complaints of illegality while he worked for defendants, and -26- defendants retaliated against him by discriminating against him, harassing him, and taking adverse employment actions, including employment termination, against him.

316  As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humili-

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

ation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

317 As a result of defendants' adverse employment actions against plaintiff, plain- tiff has suffered general and special damages in sums according to proof.

318 Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

**SEVENTH CAUSE OF ACTOIN- FMLA & CFRA INTERFERENCE & RETALIATION (see Sanders v. City of Newport (9th Cir. March 17, 2011))** **VIOLATION OF THE FAMILY MEDICAL LEAVE ACT/CFRA - RETALIATION)(As** Against Defendants Fadi & Def. Best Buy) The 9th Circuit "has previously concluded that identical standards apply to the FMLA and to the CFRA, which means that violation of (California) public policy."Xin Liu v. Amway Corp., 347 F.3d 1125, 1138 (9th Cir 2003); Cf. Bachelor v. Am.W. AirLines Inc, 259 F.3d 1112, 1130-31 (9th Cir 2001). The "employee need not expressly assert rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.302(c), but the employer "should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and to obtain the necessary details of the leave to be taken," id. (emphasis added). Cf. Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1130–31 (9th Cir. 2001) (holding that a company whose employee provided two doctor's notes regarding her absences "was therefore placed on notice that the leave might be covered by the FMLA, and could have inquired further to determine whether the absences were likely to qualify for FMLA protection").The "employee need not expressively assert rights under the FMLA or even mention the FMLA," 29 C.F

319 Plaintiff realleges and incorporates herein by reference paragraphs above inclusive, as if fully set forth herein.

320 The FMLA also makes it unlawful for an employer to discriminate against or retaliate against an employee who exercises her right to family care leave. 29 U.S.C. § 2615(a)(l) ("It shall be unlawful for any employer to interfere with. restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.") Plaintiff is an eligible employee under the FMLA.

321 Defendants retaliated against Plaintiff because he exercised his rights under the FMLA by, inter alia, terminating Plaintiff's employment less than or around 3 months after Plaintiff was on an approved FMLA leave after Plaintiff complained that Defendants were not allowing him to take the full 12 weeks of FMLA leave that Plaintiff was entitled to.

322 As a direct and proximate result of these Defendants' conduct, Plaintiff suffered special damages in an amount equal to 12 weeks of wages or salary under 29 U.S.C.§ 2617(a)(l)(A)(i). Plaintiff is also entitled to liquidated damages under 29 U.S .C.§ 26 l 7(a)(l )(A)(iii) as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Plaintiffis entitled

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1  to appropriate equitable relief, including employment, reinstatement and promotion
   under 29 U.S.C. § 2617(a)(I)(B).

2  323. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to
3  29 U.S.C. § 2617(a)(I)(A)(3).

4  **VIOLATION OF FAMILY MEDICAL LEAVE ACT - INTERFERENCE WITH**
5  **EXERCISE  OF FAMILY LEAVE RIGHTS (As Against Defendants Fadi &**
   **Def. Best Buy)**

6  324  Plaintiff realleges and incorporates herein by reference paragraphs above
7  inclusive, as if fully set forth herein.

   325  The FMLA provides that an employer must provide an eligible employee with
8  up to 12 workweeks of leave for medical treatment.

9  326  Def. Fadi and/or Def. Best Buy refused to authorize Plaintiff's FMLA leave in
   April 2020 and/or in June 2020 when Plaintiff notified these Defendants that Plaintiff
10  had a qualifying medical condition and/or disability that is covered under the FMLA,
11  umbilical hernia and/or PTSD, depression, anxiety, which was affecting the major life
   activity of working.

12  327 The FMLA also requires the employer to guarantee the eligible employee the
   same or a comparable position upon the termination of the leave. Plaintiff is an
13  eligible employee under the FMLA.

14  328 Defendants interfered with Plaintiffs rights under the FMLA by, inter alia,
   terminating Plaintiffs employment during INSTEAD OF AUTHORIZING FMLA leave
15  IN LATE JUNE 2020/EARLY JULY 2020.

16  329  As a direct and proximate result of these Defendants' conduct, Plaintiff has
   suffered special damages in an amount equal to 12 weeks of wages or salary under
17  29 U.S.C.§ 2617(a)(I)(A)(i). Plaintiff is also entitled to liquidated damages under 29
18  U.S.C.§ 2617(a)(I)(A)(iii) as Defendants did not act in good faith and had no
   reasonable grounds for believing they were not violating the FMLA. Plaintiff is
19  entitled to appropriate equitable relief, including employment, reinstatement and
   promotion under 29 U.S.C. § 26 I 7(a)(I)(B).

20  330  Finally, Plaintiffis entitled to costs and reasonable attorneys' fees pursuant to
21  29 U.S.C. § 26 I 7(a)(I )(A)(3).

22  **EIGHTH CAUSE OF ACTION (Title VII claims which mirror FEHA claims)**
23  **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 for SEX/RACE/**
   **DISABILITY/ RETALIATION/NATIONAL ORIGIN DISCRIMINATION**
24  (As Against All Defendants) (Castro-Ramirez v. Dependable Highway Express, Inc.
25  (2016) 2 Cal.App.5th 1028, 1046;

   331  Plaintiff realleges and incorporates herein by reference paragraphs above
26  inclusive, as if fully set forth herein.

27  332 Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination
   against an employee because of pregnancy which is a form of sex discrimination.
28  Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against
   employees for engaging in protected activity.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

333 Defendants discriminated against Plaintiff because of his sex, disability, race, national origin. Defendants then retaliated against Plaintiff by terminating his employment for opposing the illegal discrimination in violation of Title VII.

334 Plaintiff engaged in protected activity by opposing employment practices that Plaintiff reasonably and in good faith believed were unlawful.

335. Plaintiff's opposition included, but was not limited to, Plaintiff's complaints to Def. Fadi that he was being sexually harassed and sexually assaulted by Def. Pada which began on November 2019 through July 2020, in addition to Plaintiff's complaints to Def. Best Buy in early July 2020 that Plaintiff was being racially harassed by his manager Def. Fadi, who created a racially hostile work environment because of Plaintiff's race.

Defendants Fadi and/or Def. Best Buy terminated Plaintiff's employment less than 2 weeks after he engaged in this protected activity in late June 2020/early July 2020.

336 As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount according to proof at the time of trial.

337 As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

338 As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to his detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

339 In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently, and/or outrageously toward Plaintiff, with conscious disregard for her known rights and with the intention of cause, and/or willfully disregarding the probability of cause, unjust and cruel hardship to Plaintiff. In so acting, Defendants intended to and did vex, injury and annoy Plaintiff. Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future unlawful conduct.

66. Finally, Plaintiff is entitled to costs and potential reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

NINTH CAUSE OF ACTION(Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (Marvin v. Marvin (1976) 18 Cal.3d 660)—Against Defendant Best Buy and Does 1 to 10, Inclusive)

340 The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

341 Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of her under the agreement by performing her job in an exemplary manner.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

342 As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**TENTH CAUSE OF ACTION (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (Marketing West, Inc. v. Sanyo Fisher (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against Defendant Best Buy and Does 1 to 10, Inclusive)**

343 The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

344 On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

345 Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

346 As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

347 Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

**ELEVENTH CAUSE OF ACTION (FAILURE TO INTERACT AND FAILURE TO ACCOMMODATE Plaintiff's DISABILITY)Arteaga v. Brink's, Inc. (2008) 163 Cal.App.4th 327, 342–343, alteration in original (Arteaga )Third Cause of Action Deschene v. Pinole Steel Co.,76 Cal.App.4th 33, 40 (1999); Brundage v. Hahn, 57 Cal.App.4th 228, 236 (1997). (Failure to Accommodate)**

Jensen v. Wells Fargo Bank (2000) 85 Cal.App.4th 245, 256; see also Govt. Code § 12940(m)(1).;Soria v. Univision Radio Los Angeles, Inc. (2016) 5 Cal.App.5th 570, 598, 600.)(Gov. Code, § 12926.1, subd. A physical disability may be temporary or short term (Diaz v. Federal Express Corp. (C.D. Cal, 2005) 373 F.Supp.2d 1034, 1043) and includes not only physical impairments that are actually disabling, but also physical impairments that are potentially disabling or are perceived as disabling or potentially disabling.["It is the intent of the Legislature that the definitions of physical disability and mental disability be construed so that applicants and employees are

AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

1   protected from discrimination due to an actual or perceived physical or mental
2   impairment that is disabling, potentially disabling, or perceived as disabling or
    potentially disabling"].) A physical disability is perceived as potentially disabling when
3   an employer regards or treats an employee as having a physical impairment that has
4   no present disabling effect but may become a disabling in the future. (Cal. Code
    Regs., tit. 2, § 11065, subd. (d)(6); American National Ins. Co. v. Fair Employment &
5   Housing Com. (1982) 32 Cal.3d 603, 609–610.)

6   348  Plaintiff hereby incorporates by reference all preceding paragraphs as alleged
7   above as if fully set forth herein.
     349  California Government Code § 12945(a)(3)(A) prohibits an employer from
8   "refus[ing] to provide reasonable accommodation for an employee for a condition
9   related to pregnancy, childbirth, or a related medical condition, if she so requests,
    with the advice of her health care provider."
10  52. California Government Code § 12945(a)(3)(B) prohibits "an employer who has a
    policy, practice, or collective bargaining agreement requiring or authorizing the
11  transfer of temporarily disabled employees to less strenuous or hazardous positions
12  for the duration of the disability [from] refus[ing] to transfer a pregnant female
    employee who so requests."
13  350  California Government Code § 12945(a)(3)(C) further prohibits an employer
14  from "refus[ing] to temporarily transfer a pregnant female employee to a less
    strenuous or hazardous position for the duration of her pregnancy if she so requests,
15  with the advice of her physician, where that transfer can be reasonably
16  accommodated."
     351  Plaintiffs made timely requests to Def. Fadi and/or Def. Best Buy for
17  reasonable accommodations of his actual and/or perceived  disabilities,( umbilical
18  hernia and/or PTSD, depression, anxiety)
     352  Pursuant to its policy of providing light duty accommodations only to pregnant
19  women (but not males), Def. Best Buy refused to reasonably accommodate Plaintiffs'
20  workers compensation related disability and Plaintiff's PTSD which resulted from
    Def. Pada's sex discrimination. Def. Best Buy also did not engage in a good faith
21  interactive process with Plaintiff  to determine whether a reasonable accommodation
    of his his actual and/or perceived disabilities,( umbilical hernia and/or PTSD,
22  depression, anxiety)could be made. Instead, Def. Best Buy forced Plaintiffs to go on
23  a paid vacation leave and/or partial unpaid leave, also interfering with Plaintiff's
    FMLA/CFRA rights.
24  353  Def. Best Buy's policy of providing light duty accommodations only to pregnant
25  women and not to workers who have been injured on the job violates California
    Government Code § 12945(a)(3)(A)-(C).
26  354  As a direct and proximate result of Best Buy's unlawful actions, Plaintiff has
27  suffered lost wages, 401 k, bonuses, employment benefits, and other compensation
    and benefits in amounts to be proven at trial.
28

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

355 As a direct and proximate result of Best Buy's unlawful actions, Plaintiff has suffered injury, including but not limited to emotional distress, entitling him to compensatory damages in an amount to be proven at trial.

356 Defendants committed the unlawful actions herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is therefore entitled to recover punitive damages from Defendants in an amount to be proven at trial.

357 Plaintiff is entitled to declaratory relief declaring that Best Buy's policy of providing light duty accommodations only to pregnant women (but not males) and not to workers who have been injured on the job is unlawful and appropriate injunctive relief.

358 Plaintiffs is entitled to reasonable potential attorneys' fee and costs pursuant to California Government Code § 12965(b).

**TWELFTH CAUSE OF ACTION (Unfair Business Practices in Violation of Bus. & Prof. Code § 17200) -Against Defendant Best Buy, Defendant Fadi ,and Does 1 to 10, Inclusive)** See Korea Supply Co. v. Lockheed Martin Corp. (2002) 29 Cal.4th 1134, 1147. Therefore, to establish standing under the UCL, a plaintiff must (1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice that is the gravamen of the claim. See Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 337. Restitution is the only form of damages available under the UCL. See Korea Supply Co. v. Lockheed Martin Corp. (2002) 29 Cal.4th 1134, 1147.

359 This claim is based on the merits of Plaintiff's defamation claim  and Intentional Interference with Prospective Economic Advantage, where Plaintiff suffered monetary losses based on Defendants conduct.

360 Because Plaintiff has sufficiently alleged facts to state a cause of action for defamation and Intentional Interference with Prospective Economic Advantage,, this claim provides the independently wrongful conduct in support of Plaintiff's 17200 claim.

361 Because Plaintiff has lost income as a consequence of Defendants' alleged defamation and Intentional Interference with Prospective Economic Advantage, Plaintiff has alleged facts sufficient to state a cause of action for violation of Bus. & Prof. Code § 17200 et seq.

362 California's unfair competition law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., prohibits unfair competition, which is defined as any unlawful, unfair or fraudulent business act or practice. § 17200. A claim may be brought under the UCL by a person who has suffered injury in fact and has lost money or property as a result of unfair competition. Cal. Bus. & Prof. Code§ 17204.

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

363  Plaintiff hereby incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

364  Unfair practices prohibited by the UCL include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

365  Defendants committed unlawful and unfair business practices, including intentional interference with prospective economic advantage, wrongful termination in violation of public policy, sexual assault and sexual harassment, racial discrimination, FMLA/CFRA violations and failure to interact (disability discrimination) but not limited to failing to reasonably accommodate Plaintiff because of their disability in violation of the FEHA. Accordingly, Plaintiff  suffered injury in fact.

366  Defendants conduct alleged herein occurred during the four years preceding the filing of this complaint.

367  Defendants unfairly prevented Plaintiff from earning income as a direct and proximate result of its unlawful conduct alleged herein.

Defendants committed the unlawful actions herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.. Plaintiff is therefore entitled to recover punitive damages from Defendants in an amount according to proof.

368  Plaintiff is entitled to declaratory relief declaring that Defendants policies are unlawful and appropriate injunctive relief.

## THIRTEENTH CAUSE OF ACTION (Violation of Civil Code section 52.1)

Def. Best Buy is vicariously liable for Defendants Pada and Fadi and others for using threats and intimidation to retaliate against him and to stop Plaintiff's protected speech opposing illegal sex, disability and racial discrimination in violation of State and Federal laws, and requesting FMLA/CFRA leave and telling Def. Fadi and Def. Best Buy that Plaintiff was engaging with a lawyer to file a workers compensation claim for workplace injuries he sustained.

## FOURTEENTH CAUSE OF ACTION (Aiding-and-Abetting) (Fiol v. Doellsted (1996) 50 Cal.App.4th 1318,1327.)Against Defendant Best Buy, Defendant Fadi ,and Does 1 to 1 0, Inclusive) ESG Capital Partners, LP v. Stratos , 828, F.3d 1023(9th Cir. 2016)

369  A supervisor may be personally liable for aiding-and-abetting another's violation of Section 12940: "If the supervisor participates in the sexual harassment or substantially assists or encourages continued harassment, the supervisor is personally liable under the FEHA as an aider and abettor of the harasser." (Fiol v. Doellsted (1996) 50 Cal.App.4th 1318,1327.)

370  Def. Fadi and Def. Best Buy participated and encouraged Def. Pada's sexually harassing and sexually assaulting conduct upon Plaintiff, therefore Def.

371  Fadi and Def. Best Buy aided Def. Pada in sexually harassing and sexually assaulting Plaintiff in violation of FEHA, Title VII, common law, and Plaintiff's civil rights.

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

**FIFTEENTH CAUSE OF ACTION (RETALIATION for Engaging in Protected Activity)(Violation of FEHA (Government Code § 12900, et seq.)—Against ALL Defendants and Does 1 to 10, Inclusive);Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1059 (2005); Crawford v. Metropolitan Government of Nashville and Davidson Cty., 555 U.S. 271 (2009).**

372 The allegations set forth in above paragraphs are re-alleged and incorporated herein by reference.

373 Plaintiff's complaints to defendants about Def. Pada's sexual assault and sexual harassment and Def. Fadi's racial discrimination and racial harassment, as well as actual and/or perceived and/or actual sexual orientation, disability, CFRA/FMLA leave request, marital status, race, and/or other characteristics protected by FEHA, Government Code section 12900, et seq., were motivating factors in defendants' decision not to retain, hire, or otherwise employ plaintiff in any position and/or to take other adverse employment action, including employment termination, against plaintiff.

374 Defendant Best Buy's managing agents, Def. Fadi and Def. Pada frequently made either extremely inappropriate, sexually explicit comments and/or racially derogatory comments about Plaintiff and/or in front of plaintiff and/or about Plaintiff's race (Hispanic). Plaintiff complained to ALL defendants about the inappropriate comments, but nothing was done. On the basis of the above, plaintiff believes and alleges that defendants retaliated against him for his complaints of Def's illegal discriminatory conduct.

375 Plaintiff complained to ALL defendants of the sexual harassment and sexual assault he experienced. Thereafter, defendants retaliated against plaintiff by defaming, further humiliation, and harassing him more, while taking adverse employment actions against him, in major part because he reported the sexual assault and sexual harassment by Def. Pada.

376 Plaintiff's actual and/or perceived sexual orientation, disability, being an alleged convicted sex offender, requesting CFRA/FMLA leave, expressing his intent to engage with a lawyer to file a worker's compensation claim, race, ethnicity, national origin, and/or other characteristics protected by FEHA Government Code section 12900, et seq.,Title VII, 1981, ADA, FMLA, and CFRA were motivating factors in defendants' decision not to retain and/or hire and/or otherwise employ plaintiff in any position and/or to take other adverse employment action, including employment termination, against plaintiff.

377 Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, et seq.,Title VII, 1981, ADA, FMLA, and CFRA and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a. Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual and/or perceived sexual orientation, marital status, race, and/or other protected characteristics, in violation of Government Code section 12940(a); _____

b. Retaliating against plaintiff for his complaints to defendants about the sexu- al harassment he was experiencing by taking adverse employment actions against him, in violation of Government Code section 12940(f);

c. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's actual and/or perceived sexual orientation, marital status, race, and/or other protected characteristics, in violation of Government Code section 12940(j);

d. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation on the basis of actual and/or perceived sexual orientation, marital status, and race, in violation of Government Code section 12940(k);

e. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendant's failure to recognize such rights, including the right to be free of discrimination, in violation of Government Code section 12940(h).

378    As a proximate result of defendants' willful, knowing, and intentional discrimi- nation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

379    As a proximate result of defendants' willful, knowing, and intentional discrimi- nation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

380    Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

381    Plaintiff has incurred and continues to incur legal expenses and expects to incur future attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**SIXTEENTH CAUSE OF ACTION (Race & Sexual Harassment)(Violation of FEHA (Government § 12900, et seq.)—Against All Defendants and Does 1 to 10, Inclusive) (See also Reno v. Baird (1998) 18 Cal.4th 640, 645,**

382    The allegations set forth in paragraphs above are re-alleged and incorpo- rated herein by reference.

383    Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, et seq., and defendants committed unlawful employment practices, including by the following bases for liability:

a. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's sex, race, national origin, and/or color, in violation of Government Code section 12940(j);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on sex, race, national origin, and/or color, in violation of Government Code section 12940(k).

---

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

384 As a proximate result of defendants' willful, knowing, and intentional harass- ment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

385 As a proximate result of defendants' willful, knowing, and intentional harass- ment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

386 Plaintiff has incurred and continues to incur legal expenses and expects to incur future attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reason- able attorneys' fees and costs (including expert costs) in an amount according to proof.

387 Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

**SEVENTEENTH CAUSE OF ACTION (Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA (Government Code § 12940(k)Against All Defendants and Does 1 to 10, Inclusive) (See also Reno v. Baird (1998) 18 Cal.4th 640, 645,**

388 The allegations set forth in paragraphs above are re-alleged and incorpo- rated herein by reference.

389 At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Prior to filing the instant Complaint, plaintiff filed a timely administrative charge with the DFEH and received a right-to-sue letter.

390 During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's protected status (i.e., his race, national origin, color, sexual orientation, and/or marital status). During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes.

391 During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of race, national origin, color, sexual orientation, marital status, disability, gender, and/or other protected statuses or protected activities.

392 Plaintiff believes his sex, gender, perceived sexual orientation, disability race, national origin, color, sexual orientation, marital status, and/or other protected status and/or protected activity were substantial motivating factors in defendants' employees' discrimination against and harassment of him.

393 As a proximate result of defendants' willful, knowing, and intentional miscon- duct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

394   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

395   Plaintiff has incurred and continues to incur legal expenses and expects to incur future attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

396   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

**EIGHTEENTH CAUSE OF ACTION (Sexual Harassment) (Hostile Work Environment( (Violation of FEHA (Government Code § 12940(j)(Title VII)— Against All Defendants and Does 1 to 10, Inclusive) (Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 608.) (See also Reno v. Baird (1998) 18 Cal.4th 640, 645.**

397   The allegations set forth in paragraphs above are re-alleged and incorporated herein by reference.

398   At all times herein mentioned, FEHA, Government Code section 12940(j), Title VII was in full force and effect and was binding on defendants. This statute requires defendants to refrain from sexually harassing any employee on the basis of sex or gender. Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

399   During plaintiff's employment, defendants' agents and supervisors subjected plaintiff to unwelcome sexual advances, requests for sexual favors or other verbal, visual, or physical conduct of a sexual nature. Submission to this conduct was made explicitly and implicitly a term or condition of plaintiff's employment or provision of services. Plaintiff's submission to or rejection of the conduct was used as the basis for employment decisions affecting plaintiff. All of these actions were taken against plaintiff's will and desire and over his protests. Defendants' agents and supervisors knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action.

400   As a proximate result of defendants' willful, knowing, and intentional sexual harassment, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

401   As a proximate result of defendants' willful, knowing, and intentional sexual harassment, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

402   Defendants' sexual harassment was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling plaintiff to punitive damages.

403   Plaintiff has incurred and continues to incur legal expenses and expects to incur future attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

1  entitled to recover reasonable attorneys' fees and costs (including expert costs) in an
2  amount according to proof.

3  **NINETEENTH CAUSE OF ACTION (Intentional Interference with Prospective**
   **Economic Advantage -  (See Korea Supply Co. v. Lockheed Martin Corp. (2003)**
4  **29 Cal.4th 1134, 1153. )See also Settimo Associates v. Environ Systems, Inc.**
5  **(1993) 14 Cal.App.4th 842, 845** ("The tort of intentional or negligent interference
   with prospective economic advantage imposes liability for improper methods of
6  disrupting or diverting the business relationship of another which fall outside the
7  boundaries of fair competition") (see FIRST AND FOURTEENTH CAUSE OF
   ACTION)
8  Ɐ04  The allegations set forth in paragraphs above are re-alleged and incorporated
9  herein by reference.

10  **TWENTIETH CAUSE OF ACTION VIOLATION OF  California Labor Code §**
   **226(b)California Labor Code § 226(b),which imposes a duty on employers to**
11  **provide a copy of employment records upon reasonable request by an**
12  **employee.**
   Ɐ05  The allegations set forth in paragraphs above are re-alleged and incorporated
13  herein by reference.
                    **PRAYER FOR RELIEF**
14  WHEREFORE, Plaintiff prays for judgment as follows:
15  A. A declaratory judgment that the actions, conduct, and practices of Defendants
   complained of herein violated both Federal laws & the laws of the State of California
16  and that Defendants defamed Plaintiff  falsely accusing Plaintiff of committing crimes;
17  B. An injunction and order permanently restraining Defendants from engaging in
   future defamatory conduct by continuing to publish these false unprivileged
18  defamatory per se statements about Plaintiff being a "child molester" who was
19  "charged" and "went to jail" for "sexual assault" and that Plaintiff was "terminated for
   "stealing" from Defendant Best Buy Co. Inc. and that Plaintiff is a "thief."
20  C. Economic damages: As a consequence of defendants' conduct, plaintiff has
21  suffered and will suffer harm, including lost past and future income and employment
   benefits, damage to his career, and lost wages, overtime, unpaid expenses, and
22  penalties, as well as interest on unpaid wages at the legal rate from and after each
23  payday on which those wages should have been paid, in a sum to be proven at trial.
    An award of damages, in a sum in excess of the jurisdictional minimum of the
24  Federal Court, to be determined at trial, plus prejudgment interest, to compensate
25  Plaintiff for all monetary and/or economic harm, including, but not limited to, the loss
   of past and future income, wages, quarterly and/or yearly bonuses, 401k, health
26  benefits, and other benefits of employment;
27  D. Non-economic damages: As a consequence of defendants' conduct, plaintiff has
   suffered and will suffer psychological and emotional distress, humiliation, and mental
28  and physical pain and anguish, in a sum to be proven at trial. An award of damages,
   in a sum in excess of the jurisdictional minimum of the $75,000.00, to be determined
               **AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for his depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, harm to his personal and professional reputations and loss of career fulfillment;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F. An award of Punitive damages: Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. Malice: Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his race, national origin, color, sexual orientation, marital status, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, and wrongful employment termination.

b. Oppression: In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his race, national origin, color, sexual orientation, marital status, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, and wrongful employment termination.

c. Fraud: In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

G. An award of costs that Plaintiff incurred in this action, as well as Plaintiff's fees and costs of prosecuting this action to the fullest extent permitted by law;

H. FRONT PAY: Traxler v. Multnomah Cty., 596 F.3d 1007, 1012 (9th Cir. 2010)

I. RESTITUTION: Restitution is the only form of damages available under the UCL. See Korea Supply Co. v. Lockheed Martin Corp. (2002) 29 Cal.4th 1134, 1147.

J. For such other and further relief as the Court deems just and proper.

K. PLAINTIFF IS SUING BEST BUY for $100,000,000.00
****************************JURY DEMAND*******************************************

Plaintiff hereby demands a trial by jury on all issues of fact, liability and damages stated herein.
*********************************************************************************

DATE:10/26/2020

_____
JONATHAN PALOMO, PLAINTIFF, PRO SE_____
AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

1

2
## VERIFICATION OF COMPLAINT

3

4
Jonathan Palomo, being duly sworn, deposes and says that:

5
I am the Plaintiff in this action, representing myself Pro Se. I have read the annexed
amended verified complaint, knows the contents thereof and the same are true to my

6
personal knowledge, except these matters which are stated to be alleged "upon

7
information and belief, and as to those matter I believe them to be true or believed
them to be true at a previous time. I declare under penalty of perjury under the laws

8
of the State of California  & U.S. Code § 1746 that the foregoing is true and correct.

9
Date:10/27/2020

10

11
JONATHAN PALOMO, PLAINTIFF, PRO SE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AMENDED VERIFIED COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)**

Jonathan Palomo
1512 SW 9th Ave
Fort Lauderdale, FL 33315
323-365-1052
Email: john.palomo007@gmail.com

JONATHAN PALOMO, PRO SE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA (WESTERN)

|  |  |
|---|---|
| | ) **CASE: 2:20-cv-08969-FMO-AGR** |
| | ) **AMENDED VERIFIED COMPLAINT** |
| | ) |
| **JONATHAN PALOMO,** | ) |
| Plaintiff, Pro Se | ) **DECLARATION OF PLAINTIFF** |
| | ) **JONATHAN PALOMO IN SUPPORT OF** |
| | ) **Plaintiff's Amended Verified Complaint ,** |
| v. | ) **Plaintiff's RULE 56 MOTION FOR** |
| | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) **SERVED WITH AMENDED VERIFIED** |
| **BEST BUY CO. INC, DAMIEN PADA,** | ) **COMPLAINT (see FRCP Rule 56 & 2010** |
| **FADI AMMOURI, & DOES 1-10** | ) **Amendments to FRCP) and/or Plaintiff's** |
| | ) **OPPOSITION to Defendants' future Rule** |
| Defendants | ) **56 Motion for Summary Judgment.** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**

1

## AUTHENTICATION OF EXHIBITS

2

3  **DECLARATION OF PLAINTIFF JONATHAN PALOMO IN SUPPORT OF** Plaintiff's
Amended Verified Complaint , **Plaintiff's RULE 56 MOTION FOR PARTIAL**
4  **SUMMARY JUDGMENT SERVED WITH AMENDED VERIFIED COMPLAINT (see**
**FRCP Rule 56 2010 Amendments)** and/or Plaintiff's OPPOSITION to Defendants'
5  future Rule 56 Motion for Summary Judgment(

6

7  I, Jonathan Palomo , being first duly sworn, declare and state as follows:

8

9  1. I am the  Pro Se Plaintiff prosecuting these Federal civil rights claims and
California FEHA and California state tort claims (Tameny Wrongful Termination in
10  Violation of Public Policy claim , Defamation claims, Intentional Interference with
Prospective Economic Advantage, etc) in this lawsuit.

11  2. I have personal knowledge of all of the events, facts and documents described in
this Verified Declaration and the information set forth in this Verified Declaration is
12  true and correct to the best of my knowledge. Every fact and Exhibit in this
Declaration  and attached to Plaintiff's Amended Verified Complaint is based on
13  Plaintiffs personal knowledge and authenticated by Plaintiff Jonathan Palomo's
14  testimony here within this Declaration. I, Jonathan Palom,  am competent to testify
as to all matters herein if called to do so and will testify to the same at trial.
15  3. I offer this Declaration in Support of Plaintiff's Amended Verified Complaint ,
16  Plaintiff's Motion for Summary Judgment and Plaintiff's Opposition to Defendants'
Motion for Summary Judgment( To meet the requirements of Rule 56, documents
17  "are required to be authenticated by affidavits or declarations of persons with
18  personal knowledge through whom they could be introduced at trial." Zoslaw v.
MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982).
19  4. Attached hereto as Exhibit 1 are true and copies of the libel per Se publications
20  Def. Best Buy published about Plaintiff on or around 12/16/2019 and refuse to
retract. (See Cease & Desist email in Exhibit C)
21

22  **Exhibit 1** is the 12/16/2019 libelous per Se republication of Def. Pada and/or Def.
Fadi's unprivileged statements of purported facts about Plaintiff to third parties,
23  where they alleged Plaintiff was "charged" and "went to jail for sexual assault." Def.
24  Best Buy then On or around 12/16/2019 ratified Def. Pada and Fadis defamatory per
Se publications by republishing  these libelous per Se statements about Plaintiff on
25  its website, where third parties(Nayelle, Allen, Karen Hernandez) notified Plaintiff.
26  Plaintiff asked Def. Best Buy on 5 occasions beginning in January 2020 to cease
and desist and retract these Libelous per Se statements of fact that Plaintiff
27  committed a crime.

28

---

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**

**Exhibit 2-** Attached hereto as Exhibit 2 is a true and correct copy of Darrell Anderson text message to Plaintiff's phone on October 19, 2020, authenticated by way of Darrell Anderson's declaration testimony in Exhibit D. See also ("[T]ranscripts of instant messaging conversations were circumstantially authenticated based on the presence of defendant's screen name, use of defendant's first name and the content of the message")(citing In Re F.P., a Minor, 878 A.2d 91, 94)(Pa. Super. Ct. 2005)). Any statements made by an agent within the scope of their agency or employment are admissible under Fed. R. Evid. 801(d)(2)(D). The statements are admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(D).

**Exhibit A -**is a true and correct copy of a declaration that Plaintiff personally received from Albert Cruz , to whom Def. Prada , in his professional capacity as a managing agent of Def. Best Buy , republished unprivileged , defamatory per se statements of purported facts about Plaintiff in 2020 , republishing that Plaintiff committed crimes.

**Exhibit B -**is a true and correct copy of a declaration that Plaintiff personally received from Arthur Pimentel, to whom Def. Pada , in his professional capacity as a managing agent of Def. Best Buy , republished unprivileged , defamatory per se statements of purported facts about Plaintiff in August 2020 , republishing that Plaintiff committed crimes.

**Exhibit C -**is a true and correct copy of the "Cease and Desist " email that Plaintiff sent to Def. Best Buy's managing agents on 09/26/2020 , demanding Def. Best Buy to remove and/or retract its republishing of unprivileged , defamatory per se statements of purported facts about Plaintiff to third parties stating that Plaintiff committed crimes and was "charged" and "went to jail for sexual assault." Since December 2019, Def. Best Buy has refused to retract and/or remove these defamatory per se statements of purported facts about Plaintiff from its website , publishing to third parties that Plaintiff committed crimes and was "charged" and "went to jail for sexual assault." Fed. R.Evid. 801(d); In re Homestore.com, 347 F.Supp.2d at 781; MGM Studios, 454 F. Supp. 2d at 974("Documents that bear [Defendants'] trade names, logos, and trademarks are statements by [Defendants themselves] and are admissible as admissions by a party-opponent under Rule801(d)(2)"). To be admissible to support or oppose a motion for summary judgment, declarations must also set out specific facts – not mere conclusory allegations. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) (holding that the object of Rule 56 is not to replace conclusory averments in a pleading with conclusory allegations in an affidavit);

**Exhibit D-i**s a true and correct copy of a declaration that Plaintiff personally received from former Best Buy employee, loss prevention security guard who had Def. Best Buy's Los Feliz store video camera surveillance access, named Darrell

Anderson, who in his professional capacity as an employee agent of Def. Best Buy , personally witnessed Def. Pada sexually harassing and sexually assaulting Plaintiff and Istvan Valencia between the years of 2012 -2014, when Def. Pada managed Plaintiff.

**Exhibit E -**is a true and correct copy  of *Def. Best Buy's "Mental Health - Leader Toolkit"* which is a Def. Best Buy document  that Plaintiff  personally printed from Def. Best Buy's HR website  and /or received from Def. Best Buy while an agent of Def. Best Buy and/or during the course of his employment with Def. Best Buy. This document establishes that Plaintiff knew he had mental health (PTSD symptoms) and wanted a reasonable accommodation of a transfer to another store and/or light duty on 06/04/2020 because Best Buy's HR policy is that *"workplace accommodation" is to "make reasonable modifications or adjustments to the work environment wherever possible -especially when the request is related to disability, pregnancy or religious beliefs."* This document establishes the fact that Plaintiff had a perceived disability and asked Def. Fadi and/or Def. Best Buy for a Reasonable Accommodation in June 2020 based on this document.  **LEGAL STANDARD:**  Lorraine v. Markel American Ins. Co., 241 F.R.D. 534, 554 (D. Md. 2007). Here, this Exhibit contains "bestbuy.com" at the bottom and the date of "06/04/2020." Accordingly, the use of the Defendants' business names is sufficient to authenticate the emails under Fed. R. Evid. 902(7). many statements included in the emails or documents were made or authorized by Best Buy, thus constituting an admission by a party-opponent. Fed. R.Evid. 801(d); In re Homestore.com, 347 F.Supp.2d at 781; MGM Studios, 454 F. Supp. 2d at 974("Documents that bear [Defendants'] trade names, logos, and trademarks are statements by[Defendants themselves] and are admissible as admissions by a party-opponent under Rule801(d)(2)"). Similarly, this email was either produced by Defendants ,statements made by an agent within the scope of employment, and these emails contain statements made by the Defendants managing agent. Under FRE 801(d), such statements are non-hearsay as admissions of a party-opponent; see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see also MGM Studios, 454 F.Supp at 974..Circumstantial evidence may be used to properly authenticate a document. Fed. R. Evid. 901(b)(4). Emails and Instant Messages may be authenticated by circumstantial evidence. Fed. R.Evid. 901(b)(4); United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000).("A document may be authenticated by 'appearance, content, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances")

**Exhibit F** is a true and correct copy  of the email Def. Best Buy's agent , Larissa Sipprell sent to Plaintiff's email account on 10/01/2020 stating *"Thank you for speaking to me this afternoon. Here is the information on our Employee Assistance Program.",* which Plaintiff personally received. This email establishes the undisputed fact that Plaintiff and Def. Best Buy had a discussion on 10/01/2020

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**

about the defamatory per se publications in response to Plaintiffs 09/26/2020 Cease & Desist email in Exhibit C. This email  is therefore a Def. Best Buy document that Plaintiff  personally received from Def. Best Buy while an agent of Def. Best Buy and/or during the course of his employment with Def. Best Buy. Emails May Be Self-Authenticated Under Fed. R. Evid. 902(7)

Further, many of the emails may be self-authenticated. Emails that bear the business' name or contain information showing the origin of transmission and identifying the employer company may be self authenticated under Fed. R. Evid. 902(7). Lorraine v. Markel American Ins. Co., 241 F.R.D. 534, 554 (D. Md. 2007). Here, this Exhibit contains "bestbuy.com" in the sender's and/or recipient's email address. Accordingly, the use of the Defendants' business names is sufficient to authenticate the emails under Fed. R. Evid. 902(7). many statements included in the emails or documents were made or authorized by Best Buy, thus constituting an admission by a party-opponent. Fed. R.Evid. 801(d); In re Homestore.com, 347 F.Supp.2d at 781; MGM Studios, 454 F. Supp. 2d at 974("Documents that bear [Defendants'] trade names, logos, and trademarks are statements by[Defendants themselves] and are admissible as admissions by a party-opponent under Rule801(d)(2)"). Similarly, this email was either produced by Defendants ,statements made by an agent within the scope of employment, and these emails contain statements made by the Defendants managing agent. Under FRE 801(d), such statements are non-hearsay as admissions of a party-opponent; see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see also MGM Studios, 454 F.Supp at 974..Circumstantial evidence may be used to properly authenticate a document. Fed. R. Evid. 901(b)(4). Emails and Instant Messages may be authenticated by circumstantial evidence. Fed. R.Evid. 901(b)(4); United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000).("A document may be authenticated by 'appearance, content, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances")

**Exhibit G-**is a true and correct copy of Def's. **"Best Buy  Coaching and Corrective Action Guidelines October 8, 2019 (see page 1)."** which is a Def. Best Buy document, (with BEST BUY logo and trademark and disclaimer) that Plaintiff personally received from Def. Best Buy while in his professional capacity as an agent of Def. Best Buy and/or during the course of his employment with Def. Best Buy.

**Exhibit H-**is a true and correct photo copy of Def's Best Buy's **"D64 TOP PERFORMER" trophy"** that Plaintiff personally received from Def. Best around 2016 and/or 2017 when he was in the "Lifestyles" Department at Best Buy's Los Feliz store. This Exhibit establishes the fact that Plaintiff's professional reputation according to Def. Best Buy and/or the previous GM Art J. Plaintiff was always known as a**"TOP PERFORMER,"** before Def. Fadi became the GM and/or before Def. Fadi began managing Plaintiff and/or before Plaintiff complained of sexual

---

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**

1  harassment and sexual assault to Def. Best Buy and/or Def. Fadi and/or before Def.
2  Fadi discriminated and/or terminated Plaintiff because of his race, as the previous
3  GM Art J never made racial derogatory comments and statements about Plaintiff's
   Hispanic/Native American race and called Plaintiff racially based derogatory names
4  and comments. This Exhibit also establishes the fact that Def. Best Buy considered
5  Plaintiff to be performing very well, exceeding job expectations ,in his job position
   around 2017 before Def. Fadi became his Manager and before termination on
6  07/17/2020.   **LEGAL STANDARD:** MGM Studios, 454 F. Supp. 2d at
7  974("Documents that bear [Defendants'] trade names, logos, and trademarks are
   statements by[Defendants themselves] and are admissible as admissions by a
8  party-opponent under Rule801(d)(2)"). Similarly, this email was either produced by
9  Defendants ,statements made by an agent within the scope of employment, and
   these emails contain statements made by the Defendants managing agent. Under
10 FRE 801(d), such statements are non-hearsay as admissions of a party-opponent;
11 see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see also MGM Studios, 454 F.Supp at
   974..Circumstantial evidence may be used to properly authenticate a document.
12 Fed. R. Evid. 901(b)(4). Emails and Instant Messages may be authenticated by
   circumstantial evidence. Fed. R.Evid. 901(b)(4); United States v. Siddiqui, 235 F.3d
13 1318, 1322 (11th Cir. 2000).("A document may be authenticated by 'appearance,
14 content, substance, internal patterns, or other distinctive characteristics, taken in
   conjunction with circumstances")

15 **Exhibit I- i**s a true and correct copy  of Def. Best Buy's "INVOLUNTARY
16 SEPARATION NOTICE" which is a Def. Best Buy (with Best Buy log) document  that
   Plaintiff  personally received from Def. Best Buy on 07/17/2020, while an agent of
17 Def. Best Buy and/or during the course of his employment with Def. Best Buy. . This
18 documents supports Plaintiff's testimony, the fact that Def. "FADI AMMOURI" was
   Plaintiff's manager when Plaintiff was terminated on 07/17/2020 that Def. Fadi was
19 involved in Plaintiff's termination. **LEGAL STANDARD:** MGM Studios, 454 F. Supp.
20 2d at 974("Documents that bear [Defendants'] trade names, logos, and trademarks
   are statements by[Defendants themselves] and are admissible as admissions by a
21 party-opponent under Rule801(d)(2)"). Similarly, this email was either produced by
22 Defendants ,statements made by an agent within the scope of employment, and
   these emails contain statements made by the Defendants managing agent. Under
23 FRE 801(d), such statements are non-hearsay as admissions of a party-opponent;
24 see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see also MGM Studios, 454 F.Supp at
   974..Circumstantial evidence may be used to properly authenticate a document.
25 Fed. R. Evid. 901(b)(4). Emails and Instant Messages may be authenticated by
26 circumstantial evidence. Fed. R.Evid. 901(b)(4); United States v. Siddiqui, 235 F.3d
   1318, 1322 (11th Cir. 2000).("A document may be authenticated by 'appearance,
27 content, substance, internal patterns, or other distinctive characteristics, taken in
28 conjunction with circumstances")

---

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**

1

2   **Exhibit J- i**s a true and correct copy  of Def. Best Buy's "FY19 Year-End
    Performance Appraisal for Jonathan Elias Palomo" which is a Def. Best Buy
3   document  that Plaintiff  personally received from Def. Best Buy's managing agent
    Hakop Koushian on behalf of Def. Best Buy on or around "04/05/2019, as listed on
4   the pages of Exhibits, while Plaintiff was an agent of Def. Best Buy and/or during the
5   course of his employment with Def. Best Buy. The documents establishes the fact
    that Plaintiff, because he had a "total appraisal score of 4.4," he  received a "merit
6   increase" in pay of "3.0%," as Plaintiff was perform adequately and/or above Best
7   Buy's expectations in the year 2019, as evidenced by this raise and Best Buy's
    appraisal of Plaintiff's job performance in 2019.  **LEGAL STANDARD:** MGM Studios,
8   454 F. Supp. 2d at 974("Documents that bear [Defendants'] trade names, logos, and
9   trademarks are statements by[Defendants themselves] and are admissible as
    admissions by a party-opponent under Rule801(d)(2)"). Similarly, this email was
10  either produced by Defendants ,statements made by an agent within the scope of
11  employment, and these emails contain statements made by the Defendants
    managing agent. Under FRE 801(d), such statements are non-hearsay as
12  admissions of a party-opponent; see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see
13  also MGM Studios, 454 F.Supp at 974..Circumstantial evidence may be used to
    properly authenticate a document. Fed. R. Evid. 901(b)(4). Emails and Instant
14  Messages may be authenticated by circumstantial evidence. Fed. R.Evid. 901(b)(4);
    United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000).("A document may be
15  authenticated by 'appearance, content, substance, internal patterns, or other
16  distinctive characteristics, taken in conjunction with circumstances")

17  **Exhibit K-** is a true and correct copy of Def. Best Buy's Performance **"MATRIX"**
18  which is a Def. Best Buy document that Plaintiff  personally received from Def. Fadi,
    on or around 02/29/2020. Def. Fadi congratulated Plaintiff on making his Best Buy
19  Department an ***"unprecedented" "$25,982,141.00" in sales.***  Def. Fadi as Plaintiff's
20  manager and/is Best Buy's managing agent told Plaintiff when he handed Plaintiff
    this document that Plaintiff was exceeding and had exceeded all Best Buy job
21  performance goals and expectations in 2019 and 2020 thus far, as Plaintiff was
22  performing satisfactory in the year 2020, days before Plaintiff notified Def. Fadi and
23  Def. Best Buy that Plaintiff wanted to take a FMLA leave, requested a Reasonable
    Accommodation, told Defendant Fadi that he was going to engage with attorneys to
24  file a workers compensation claim, before Plaintiff told Def. Fadi about his
    disabilities, before Plaintiff went on FMLA leave, before Plaintiff reported Def. Fadi's
25  racially discriminatory comments about Plaintiff and Hispanic people  to HR
26  Manager Jeremy in July 2020, less than 17 days before Plaintiff was terminated in
    retaliation for opposing Def. Fadi's illegal discrimination. This Exhibit has "Store
27  183," which is the Los Feliz Best Buy store where Plaintiff worked in Los Angeles,
28  CA. **LEGAL STANDARD:** MGM Studios, 454 F. Supp. 2d at 974("Documents that
    bear [Defendants'] trade names, logos, and trademarks are statements

1  by[Defendants themselves] and are admissible as admissions by a party-opponent
under Rule801(d)(2)"). Similarly, this email was either produced by
2  Defendants ,statements made by an agent within the scope of employment, and
3  these emails contain statements made by the Defendants managing agent. Under
FRE 801(d), such statements are non-hearsay as admissions of a party-opponent;
4  see also Sklar, 2007 U.S. Dist. LEXIS, at *13; see also MGM Studios, 454 F.Supp at
5  974..Circumstantial evidence may be used to properly authenticate a document.
Fed. R. Evid. 901(b)(4). Emails and Instant Messages may be authenticated by
6  circumstantial evidence. Fed. R.Evid. 901(b)(4); United States v. Siddiqui, 235 F.3d
7  1318, 1322 (11th Cir. 2000).("A document may be authenticated by 'appearance,
content, substance, internal patterns, or other distinctive characteristics, taken in
8  conjunction with circumstances")See Fed. R. Evid. 803., it may be considered
9  business records under Fed. R. Evid. 803(6).Under Fed. R. Evid. 803(6), a business
record made in the course of a regularly conducted business activity is admissible if
10 it was the regular practice of the business to make such a record.

11 *See*Strong v. Valdez Fine Foods. 724 F.3d 1042. 1045 (9th Cir.
12 2013);*See* Barthelemy v. Air Lines Pilots Ass'n. 897 F2d 999. 1018 (9th Cir.
1990).L.: *See* Block v. City of L.A.. 253 F.3d 410. 419 (9th Cir 2001). *see*
13 *also* Jajeh v. Cnty. of Cook. 678 F.3d 560  568 (7th Cir. 2012) (observing that
14 Rule 56 no longer requires a formal affidavit)

15 I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and the laws of the
16 State of California  that the foregoing is true and correct.

17 DATED : Executed on this 26th day of October, 2020

18

19

20            JONATHAN PALOMO, PRO SE PLAINTIFF

21

22

23

24

25

26

27

28

---

**DECLARATION ISO AUTHENTICATION OF EXHIBITS RULE 56 & Amended Verified Complaint**



*view*

*Computers*
rt: 12/16/2019

There was confusion as for as the display was concerned. I specifically asked the sales rep if the computer that was on sale was the one that was displayed and if it was still from the current year and he said yes. We opened a Best Buy card only for them to tell us after that the computer that was actually on sale was a computer that was 2 years old already. I asked him to ask his supervisor to honor the price because the way that the display was set up was very confusing and aludes to getting a great deal on lap top that was produced this year when it wasn't. The sales person gave me false information and when the supervisor came over he pointed to some arrows showing the one that was 'actually on sale' when I had specifically asked the worker which one the arrow was pointing at. No where on the sign did it say that the computer that was display and was on sale was a two year old computer it just stated the specs and the deal that you're getting by using the Best Buy card. I felt very mislead not only by the sign and the employee but also by the supervisor that did not try to understand where I was coming from. Instead he made me feel stupid. He didn't even have correct information he went from saying the computer that was on sale was from 2015 to saying it was from 2017. Even he was confused so I don't understand why he made me feeling stupid for not understanding the way the signs were set up. When I complained to him about it he just said to 'tell corporate, we don't set up the display' and I understand that but at least validate what I'm saying don't brush me aside. I asked him for corporates number because I was very unhappy about the way he handled this situation and instead he said,' do you have a pen' im Dissatisfied with the service but I'm the one that needs to write down corporates number and write down all there names.that's unacceptable. The supervisor kept telling me how he was going to write up jus employee for giving me misleading and confusing Information but someone should really Look into writing him up for treating me the way he did . He left and did nothing to help me no apology or anything and proceeded to speak to another customer and brag about how he was charged or had gone to Jail for sexual assault. That made me feel real uncomfortable as well. Please look Into this guy. His name is joe or Joseph and he's the supervisor of the tech department at the los feliz location in los angles CA

Scanned with CamScanner



 **+1 (323) 445-9462** ›

Delivered

My years 2009-2014
I've witness and heard Damian ask
To give you sexual pleasure on
multiple occasions

Putting his mouth on your mouth and
mouth on your penis and being able
to please you more than any woman
can

Anderson

   

Scanned with CamScanner

Exhibit A

## DECLARATION OF ALBERT CRUZ

1. I Albert Cruz declare and testify that if called as a witness, I can competently testify to the following facts, upon which I have personal knowledge of each fact stated in this declaration.

1. My name is Albert Cruz, a resident of Los Angeles, CA.

2. I am employed as an X-ray technician with Kaiser Permanente in Culver City, CA. However, I also perform freelance mechanic work and have been performing mechanic work over 13 years.

3. Jonathan Palomo has been a customer of mine for many years.

4. I was aware that Jonathan Palomo and Damien Pada worked together at the Best Buy store in Los Feliz, CA.

5. I was a Best Buy customer for many years at this store. Damien Pada was a Manager and he always gave me his "special" discount, usually of 60% or more but made me pay in cash for his "special" Manager's discount.

6. When I asked Jonathan Palomo if he could give me this "special" discount of 60% or more, he said he was unable to authorize any 60% or more discount. However, Jonathan Palomo did give me a discount on "open boxed items" but the amount of these discounts always varied because Jonathan told me he was given discretion to authorize up to 50% discounts on these "open boxed items," but it depended on the condition or if they were missing accessories or scratched but he could only discount these items up to 50%, no more.

7. In 2017 and 2018, Jonathan Palomo told me that Best Buy gave him complete autonomous discretion to evaluate the condition of these "opened box items" to determine what discount he could authorize for me. I witnessed Jonathan open the items to looks for scratches, dents or missing accessories. I never saw Manager

Scanned with CamScanner



Damien Pada evaluate the products in front of me when giving 60% or more discounts on NEW ITEMS where I paid cash.

8. I never had any close friendship or personal relationship with either Jonathan Palomo or Damien Pada, but I do know both of them as members of the community and as a Best Buy customer.

9. Around December 2019, Damien Pada told me that Jonathan Palomo was a "child molester who had been caught having sex with little girls and that Jonathan was previously arrested a few years ago and went to jail because Jonathan raped these little girls. Don't allow him near any children."

10. In August 2020, I went to Best Buy in Los Feliz, CA, as a customer and Damien Pada told me that "Jonathan Palomo is a known thief and he was just recently terminated from Best Buy because he had been stealing money from Best Buy for over 10 years, and we estimated that he stole over $100,000.00. I know you do business with him, be careful because I dont want you to be his next victim. Make sure to spread the word."

11. In August 2020, I, for the first time, told Jonathan Palomo what Damien Pada told me in December 2019 about Jonathan being a "child molester who had been caught having sex with little girls and that Jonathan was previously arrested a few years ago and went to jail because Jonathan raped these little girls" and that Damien recently told me that Jonathan was fired from Best Buy for "stealing" and he is a "thief."

12. I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the State of California and the U.S. that the foregoing is true and correct.

DATE: 09/30/2020

_____

Albert Cruz

_____

Exhibit B

# DECLARATION OF ARTHUR PIMENTEL

1. I, Arthur Pimentel, declare and testify that if called as a witness, I can competently testify to the following facts, upon which I have personal knowledge of each fact stated in this declaration.

2. My name is Arthur Pimentel. I am a resident of Los Angeles, CA.

3. I have never had any personal or professional relationship with any named party in this lawsuit. Other than the fact that I, like many people in America, am a long time customer of Best Buy Stores. I have never been employed by Best Buy in any capacity. Prior to mid-August 2020, when I spoke to Best Buy Manager Damien at the Los Feliz Best Buy store, I have never shopped and/or been to and/or been a customer at this specific Los Feliz Best Buy Store in Los Angeles, CA, where Best Buy Manager Damien was employed in August 2020 and where Jonathan Palomo was also previously employed.

4. In early August 2020, I put out a job ad looking to hire a freelancer. I stated in the ad that the freelancer I was looking to hire would be someone who had experience with computers, more specifically I stated in that ad that I was looking to hire someone who "had Best Buy Geek Squad experience or similar computer tech support experience."

5. Around early-mid August 2020, Jonathan Palomo contacted me in response to my job ad, where he communicated to me that he was interested in being hired by me as a freelancer, as he told me "I have 14 years experience working at Best Buy and I used to be the Lead in the Geek Squad department so I have the experience and qualifications you were looking for in your ad and I'm good at fixing computers." I told Jonathan that he sounds like the ideal person that I'm looking to hire but that I would need to verify his employment with someone at Best Buy before hiring him as a freelancer.

Ex B

6. When I asked Jonathan Palomo how I could verify his employment with Best Buy, Jonathan told me that he worked at the Los Feliz Best Buy store in Los Angeles, CA, and that I could simply call the Los Feliz Best Buy store in Los Angeles, CA and ask to speak to a manager.

7. A few days later, around mid August 2020, I was in the Los Feliz area and personally went to the Best Buy Store in Los Feliz, CA to verify Jonathan Palomo's employment with Best Buy, before I decided to officially hire him as freelancer, where I would've been paying him for the work he performed.

8. In August 2020, while waiting in line in the parking lot at the Los Feliz Best Buy store, I asked the Best Buy employee in the parking lot if I could speak to a Manager. The manager then came out into the parking lot and told me, "Hello, my name is Damien and I'm the Manager. How can I help you?"

9. I asked Best Buy's Manager Damien, if he knew who Jonathan Palomo was. Best Buy Manager Damien told me, "Yes I know that child molester Jonathan Palomo. Why? What did he do now? Did he rape another little boy?" I was in shock because I did not expect to be hearing that Jonathan Palomo was a child molester, even though I had never met Jonathan in person. But I said, "Not that I'm aware of." Manager Damien then proceeded to go on a rant about Jonathan Palomo, where Manager Damien told me "We all used to call him Michael Jackson because he was always having sex with all these young 12 old boys. Jonathan was arrested and jailed for sexually assaulting minors. A customer even told Best Buy headquarters in writing about Jonathan Palomo being previously arrested and jailed for molesting little boys and Best Buy even posted the customers statements about Jonathan on our internal employee portal website, where all of us employees here at the store saw it. How do you know Jonathan ?" I replied, "Well I don't know Jonathan at all. Jonathan Palomo recently contacted me in response to a job ad that I posted because Jonathan wants me to hire him as a freelance employee, but I told Jonathan I would need to verify his 14 years of employment at Best Buy first, which is why I'm here talking to you now."



10. Best Buy Manager Damien then said to me, "I wouldn't hire him if I were you. Besides that fact that he was arrested and went to jail for the sexual assault of minors, Jonathan is a known thief. I was actually on vacation the week that Jonathan was fired from Best Buy, but my Manager Fadi told me that Jonathan Palomo was terminated from Best Buy because Jonathan was caught stealing from Best Buy and the investigation showed that Jonathan was stealing from Best Buy for many years and was doing some type of price discounting scam and committing fraud against Best Buy. So I can definitely verify that I know Jonathan very well, Jonathan did work here at Best Buy since 2007 and Jonathan was terminated last month for stealing and fraud. If you do hire him, be very careful with him because he is a convicted sex offender and loves stealing from his job, definitely don't allow him anywhere near children or near anything that you value that you want to keep.

11. I did not hire Jonathan Palomo as a freelance employee after Best Buy Manager Damien told me these facts about Jonathan Palomo in August 2020 in the parking lot of the Los Feliz Best Buy store, where I went to verify Jonathan Palomo's employment with the Best Buy Manager.

12. A week or so after Manager Damien verified Jonathan's employment, Jonathan Palomo contacted me to ask me if I was still considering hiring Jonathan as a freelancer. Jonathan asked me if I verified his employment with Best Buy yet. I told Jonathan that I did in fact verify his employment with the Manager Damien at the Los Feliz Best Buy store. Jonathan then asked me, "So are you not hiring me now because of what Damien told you about me?" I didn't know how to respond to Jonathan. Jonathan then asked me, "What exactly did Damien tell you about me?" I told Jonathan, "I'm not going to repeat the things Damien told me because I don't know if they are true or not." Jonathan started crying and then asked me, "Did Damien tell you I committed crimes or that I was arrested or went to jail?" I said, "Yes, Damien told me those exact things but with more details and the reasons that Best Buy fired you." I

Scanned with CamScanner

*Ex. B*

then explained every factual statements Manager Damien made about Jonathan to me in the Best Buy parking lot at the Los Feliz store in Los Angeles, CA in mid-August 2020. Jonathan began crying again and told me that the things Damien told me about Jonathan were allcuntrue. I apologized to Jonathan and told Jonathan, "I'm sorry if what Damien told me about you was perhaps untrue but you wouldn't hire someone if their previous employer told you that the ex-employee, like yourself, committed such reprehensible crimes against little children and that the employee was terminated for stealing."

13. I was planning on hiring Jonathan as a freelancer until I heard Damien's factual statements about Jonathan's reputation, character, and criminal past. But for Damien's factual statements about Jonathan,( involving Jonathan's convicted sex offender status, known child molester status, and that Jonathan was terminated from Best Buy because he was "caught stealing" and that he is a "thief,"), Plaintiff would've definitely hired Jonathan as a freelancer.

14. I have no knowledge as to any of the facts that Damien told me about Jonathan Palomo, as I do not know whether or not Jonathan Palomo is a sex offender or a child molester or a thief or whether or not Jonathan Palomo was caught stealing from Best Buy, which caused his termination. I am just testifying that Best Buy Manager Damien made these factual statements to me about Jonathan Palomo in August 2020 in the parking lot of Best Buy's Los Feliz store here in Los Angeles, CA.

I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the State of California and the U.S. that the foregoing is true and correct.

DATE: 09/27/2020

Arthur Pimentel



Close

Fwd: Attached defamatory statements, termination appea

Cease and Desist.pdf - 253.2K

---------- Forwarded message ----------
From: **Jonathan P** <jonathan1984pal@gmail.com>
Date: Saturday, September 26, 2020
Subject: Attached defamatory statements, termination appeal, and Cease and Desist
To: Amelia.hardy@bestbuy.com, April.wagner@bestbuy.com, lynn.slone@bestbuy.com, Corey.ehlers@bestbuy.com, Lslone12171@yahoo.com
Cc: John.palomo007@gmail.com

Hello Best Buy,

I attached the Published Defamatory criminal statements That Best Buy continues to republish about me to third parties to this email , which I'm cemanding be removed from Best Buy's site. This is an official Cease and Desist letter. Please call me to resolve this ASAP, as I'm not asking for an apology letter for being defamed and sexually assaulted since 2012 by Manager Damien and confirmation letter that Best Buy removed these 100% false December 16. 2019 published defamatory libelous criminal statements about me by October 4, 2020. I am also seeking back pay, . job reinstatement, and Best Buy's failure to paid earned wages and unused vacation and personal time pay upon termination.   I also never got my final wage statements. I'm requesting all my wage statements be mailed to me as well.

Thanks

Jonathan Palomo

---------- Forwarded message ----------



Scanned with CamScanner



Forwarded message

From: **Jonathan P** < ... >
Date: Saturday, September 26, 2020
Subject: termination appeal and Cease and Desist
To: ...
Cc: ...

Mrs. Slone and all other Senior Best Buy Directors,

My old GM Art advised me to write to you all, Best Buy Directors at Headquarters to appeal my termination and to ask you all to Cease and Desist from Defaming me to third parties. Here's history of sex discrimination, retaliation, and defamation. Also I was sexually and physically assaulted by Best Buy customer in 2019 and there's a police report on that as well and I still have nightmares about that.

Now Since 2012. I had been sexual harassed and sexual assaulted by my manager Damien Pada. not only with his comments and requests of asking to see my penis and asking to perform oral sex on me but also Always feeling my muscles , grabbing my breasts. Grabbing my ass. spanking me and constantly groping my penis every day I worked with him. Damien sexually harassed other males at Best Buy and openly and publicly made the same sexually harassing objectifying gender based comments to other male Best Buy employees , begging us males for anal sex, asking us to go out with him after work, telling us he "needs" our "cocks" and wants us to doubly penetrate him and do a "jerk off circle" to "cum all over him" and Always telling us he wants us to "creampie his tight boypussy hole". He occasionally even humiliated and degraded us by making these comments to us in front of customers. Edgar, Edward. Frankie Bravo Devon. After years of Manafer Damien's constant sexual assault and sexual harassment of me , he created an extremely sexually hostile work environment and affected my personal life causing me depression, anxietyand Stress and fear , loss of self worth , eatng disorder, loss of sleep and took a huge psychological toll on me which affected my mental emotional physical health and even people in my family and personal life started noticing this. So I had to make a compliant to GM to end this traumatic sexual assault and rape by Manager Damien Pada. Now I complained to My superiors, specifically General Manager Fadi Ammouri in November 2019. Fadi Ammouri told me to "man up and stop being a crybaby" "men can't be sexually harassed" and told me to "stop being such a cunt and little pussy and to get a sense of humor and stop being so emotional" as I broke down and cried to him on several occasions begging Him to please stop Damiens open sexual harassment and assault upon me and my body. I was tired of having my ass grabbed Every day and penis constantly groped , jerked and jiggled and fondled several times a day in front of customers and being treated like a piece of meat because I'm a male. I have never experienced this before in my life and this was not a joke and it was humiliating and degrading and Nobody should have to accept this because as a term and condition of employment or risk being terminated. Everytime I tried to make complaints I was threatened with termination. GM Fadi always told me to "start looking for another job because if you make written complaints then Best Buy will terminate you." As I support my family, I could not afford to be terminated but Damien

Scanned with CamScanner



never stopped sexually assaulting me and I kept complaining after the November 2019 complaint to GM Fadi. GM Fadi told me to stop comparing and if I kept complaining I would be terminated so I stopped complaining. GM Fadi told Manager Damien that I opposed his sexual assault and harassment and made formal complaints to him in November 2019. To get revenge on me for not wanting to be groped and raped everyday and making complaints to stop him from sexually harassing me. All of sudden my manager Damien nicknamed me "child molestor Michael Jackson" and would only call me "child molestor" instead of using my name and would tell Best Buy customers in front of me at work that I was "arrested and went to jail for sexually assaulting young children because he's just like Michael Jackson " and then Damien would start singing Michael Jackson's song Billy Jean and changed the words to "little children are his lovers" and would laugh . The customers would look at me with disgust. This often made me cry as I was humiliated and this is 100% false. This female customer would come in the store and Damien told her that I'm a "child molestor who was Arrested for raping little children." Then this customer wrote a complaint about me to Best Buy on the employee site on 12/16/2019 that all Best Buy employees can read That Damien "Proceeded to speak to another customer and brag about how he was charged or had gone to jail for sexual assault. That made me feel Really uncomfortable as well. Please look into this guy. His name is Joe or Joseph and he's the supervisor of the tech department at the Los Feliz location in Los Angeles California."

This customer was referring to me "Joe" as my nickname is "J" or "Joe." And all of my colleagues knew she was referring to me because of my title position and location and nickname. Many of my colleagues including Karen Hernandez, Alan, & Nayelle alerted me that the slanderous defamatory criminal "child molestor" accusations were published in writing on Best Buy's Internal Company site and all of my colleagues and managers or any Best Buy employee are reading these criminal "child molestor" false accusations about me on the website that Damien originally fabricated to retaliate against me for opposing sexual assault and sexual harassment because I'm a male and wouldn't give him "cock" that he said he "needed" because he Would always say he was "always horny and needed to be fuked and breeded by a big cock at least once a day" and would tell me and other males that his "mangina is so tight that it feels better than a pussy and you will like it better than your girlfriends pussy."

In December 2019, after my colleagues read Damien's defamatory statements about me that the customer republished to Best Buy about me , I was treated differently by everyone, I began getting death threats at work , was ostracized, Shamed, yelled at , treated like a criminal. was called a "child molestor" a "pervert" people would sing "little children are his lovers." I complained to GM Fadi about being defamed and that I wanted Damien's publisher defamatory criminal statements about me on Best Buy's website to be removed immediately. Fadi said "all of you Latinos are child molestors and rapists , even President Trump knows it and that's why he doesn't want anymore of your people in this country because you are all trash and you are all criminals. It's your culture to fuck little kids. Latina women are whores and pregnant at 12 years old by you child molestors." Then he started laughing . I told Fadi that's not funny and I'm offended by his racial Trump comments and he can't racially stereotype me because of what

**2**

Scanned with CamScanner



Trump says about Hispanic men. Fadi then told me to contact Best Buy's HR in MN headquarters if I wanted these defamatory criminal statements removed , which I did on the phone In January 2020 and was promised by this HR guy that Best Buy would do an investigation and give me a return phone call with an update . I never received any return correspondence from this HR guy. I then went back to GM Fadi and Fadi said he was told by Best Buy senior managers in MN That they approved these defamatory published criminal statements about me By Damien and customers being published to Best Buy employees Maria Verdugo, Alan , Karen Hernandez etc Because they were "freedom of speech" and said that "these criminal false accusations We have to leave it up on Best Buy site so people can know we have a child molestor in the workplace, who works here because it's the law. Best Buy does not censor anybody's speech and we have to make sure our store is safe and employees have a right to know that you were arrested for sexually assaulting small kids and we need to monitor your pedophile behavior so you don't do it at work."

Meanwhile, Manager Damien continued constantly groping my penis and sexually assaulting and harassed me and defaming me to customers from November 2019 until I was Recently terminated.

I am officially appealing my illegal discriminatory termination which was based on retaliation for opposing sexual assault and rape by Manager Damien and as a result of the defamatory criminal statements that turned management and customers and colleagues against me and ruined my career and my reputation.

I'm officially for the fifth time asking Best Buy to remove the defamatory criminal statements about me Published on their site as Alan and Nayelle told me recently that these statements (which I have copies and screenshots of ) are still posted as of September 2020. This is libel . Furthermore, I started applying for jobs recently and Fadi told a prospective employer that I was a "child molestor" who was "arrested for raping small kids" and that was the "reason" I was terminated and that I "had been stealing from Best Buy for years before finally being caught." These100% false Defamatory statements made by Best Buy managers about me since November 2019 to customers, future prospective employers, and Best Buy employees have caused me irreparable reputational, much stress and caused me to loss income. I'm officially asking Best Buy , Fadi, and You Mrs. Slone to Cease & Desist from defaming me and to remove these defamatory criminal statements about me being arrested for sexual assault from Best Buy's Internal site because there is no truth to these publications made by Best Buys managers to every other Best Buy employee and no Valid reason for these false criminal accusations about me to be posted about me to all of these strangers , except to retaliate against for not wanting to have sex with Manager Damien and making complaints of sex and race discrimination and retaliation. Enough is enough. I am tired of being called a "child molester" and I was never arrested for sexual assault In my life but Best Buy continues to ruin my personal and professional reputation by defaming me To third parties internally and externally and is continuing to intentionally defame me to prospective employees to prevent me from finding a new job. I want written confirmation that these false defamatory criminal statements about me published about me on Best Buy's site have been permanently removed. Please Cease and Desist from defaming me . Jonathan Palomo and my

3

Scanned with CamScanner

permanently removed.   Please Cease and Desist from defaming me , Jonathan Palomo and my reputation. I am not a criminal.  See attached published defamatory statements on 12/16/2019 which  I'm demanding Best Buy remove . This is not Freedom of Speech. You can't accuse me of being arrested and/or jailed for sexual assault and for stealing. Im giving Best Buy 1 week to contact me and resolve this and/or to confirm that these published  defamatory criminal statements about me are permanently removed from Best Buy Internal site. They are all false and were manufactured by Manager Damien after he found out I complained about him sexually assaulting and sexually harassing me to GM Fadi in November 2019. . I'm also appealing my termination as it was based on sex and race discrimination and retaliation for opposing sexual assault and constant rape by Manager Damien  at Best Buy. I'm not being unreasonable, nobody would want to be known as  a "child molestor" and Best But has no proof that there is any truth to these false accusations because these defamatory criminal statements published are 100% false but Best Buy continues to republish them to people to destroy my reputation.  I'm just asking for fairness and not to be defamed and for Best Buy to stop its malicious crusade Against me for opposing race and sex discrimination in the workplace.  Just because I'm Latino, doesn't make a "child molestor" because General Manager Fadi and President Trump says so.

Sincerely.
Jonathan Palomo
+1 (323) 365-1052

View Gmail in: **Mobile** | Older vers on | Desktop
© 2020 Google

4

Scanned with CamScanner

Exhibit D

## DECLARATION OF DARRELL ANDERSON

I, Darrell Anderson, declare and testify that if called as a witness, I can competently testify to the following facts, upon which I have personal knowledge of each fact stated in this declaration.

1. I was employed at Best Buy's Los Feliz store in Los Angeles, CA from 2009-2014 and I worked in Loss Prevention.

2. This Declaration is being submitted in support of Jonathan Palomo's claim for sexual harassment, sexual assault, and hostile work environment by Damien Pada, which I personally witnessed between the years of 2012 and 2014.

3. The statements made in this Declaration are based on my personal knowledge of what I personally witnessed and heard in the performance of my official job duties as a Loss Prevention Associate, while I was employed at the Los Feliz Best Buy store in Los Angeles, CA.

4. My phone number is 323-445-9462.

5. From 2012-2014, while in my professional capacity, working as Loss Prevention associate at Best Buy, I personally heard Damian Pada's making sexually harassing comments directed at both Istvan Valencia and Jonathan Palomo, where Damien always told them: "let me touch it, let me have it, let me sit on it," where Damien Pada on many occasions demanded Istvan Valencia and Jonathan Palomo to "PULL OUT YOUR COCKS RIGHT NOW SO I CAN HAVE DRINK SOME MILK" while always demanding for Istvan and Jonathan to allow him to perform fellatio on them, while making threats in a joking manner saying, "My bussy needs to get fucked tonight, if you guys aren't giving me and my bussy your dicks tonight after I get you drunk at the bar after work, then you are all getting written up or fired tomorrow." Damien Pada always used the word "BUSSY" meaning "boy pussy"

Ex. D

referring to his butt hole, which I heard him openly telling Jonathan and I in 2013, "my bussy is tighter than any of these bitches and hoes  pussies that you dudes be fuckin. You need try my bussy and I'll even let you cum inside me raw. I love pump and dumps. I need you to get my bussy pregnant."

6. On 10/19/2020, I  sent me Jonathan Palomo a text message from my cell phone and stated: "My years 2009-2014  I've witness and heard Damian ask to give you sexual pleasure on multiple occasions  Putting his mouth on your mouth  and mouth on your penis and being able to please you more than any woman can  Anderson."

7. On many occasions between 2012 and 2014, while in my professional capacity and while Damien Pada and Jonathan Palomo were working on the sales floor, I saw Damien Pada grab, grope, and squeeze Jonathan Palomo's penis, as well as grab and spank Jonathan Palomo's butt cheeks. Also, On many occasions b*etween* 2012 and 2014, while in my professional capacity and while Damien Pada and Jonathan Palomo were working on the sales floor, I saw Damien Pada bend over in front of Istvan Valencia and Jonathan Palomo and rub their penises with Damien Pada's buttocks by grinding and twerking(dancing in a gyrating manner) his buttocks directly on Istvan's and Jonathan's penis, on a weekly and/or routine basis , on the sales floor at Best Buy's Los Feliz store in Los Angeles, CA.

8. One time in the year 2013,  I personally witnessed Manager Damien Pada showing Jonathan Pada some homosexual anal sex porn video , while on the sales floor, that Manager Damien Pada had on his cellphone and then asked Jonathan, "when are you going to dig me out and breed me like this?"

9. In 2013, I personally heard  Jonathan Palomo opposing Damien's sexual harassment and groping of Jonathan's penis  when I heard Jonathan say to Manager Damien Prada "I've already told you many times already that  I'm not gay, so stop touching my butt and my penis or I'm going to report this to HR . This is unprofessional, we are at work, and I don't want you touching me again and you aren't just playing. I _don't find it funny."  I personally heard Manager Damien Pada tell Jonathan _____

Ex. D

Palomo, "well if you report me and write any complaints, then just prepared to be fired. You aren't a female. Only females can report their managers for sexual harassment and not get fired."

10. Jonathan Palomo told me in 2013 that he wasn't going to report it to HR because he didn't want to be retaliated against by his Manager Damien Pada, because he couldn't afford to be unemployed since there was recession and he had a family to support.

11. In late 2013, I personally heard Manager Damien Pada telling Jonathan , "I'm so horny, my hole is gaping, I need you to come to SDR now and fuck me quickly and cum deep inside my bussy. Please I need your cock now, I'm so horny because I haven't been fucked in a few days. We won't get caught. There aren't any cameras in the SDR. I've had a few customers and employees fuck me in the SDR and nobody ever found out."

12. Def. Pada *was always telling Jonathan that Def. Pada needs Jonathan's* "big thick uncut Latino chorizo."  When I asked Jonathan what chorizo meant, Jonathan told me that chorizo is like sausage in Spanish.

13. The SDR is a managers office in Best Buy's Los Feliz store that doesn't have any cameras, where a Loss Prevention Best Buy employee, like myself, would've been monitoring.

14. Manager Damien Pada was Jonathan Palomo's manager in the Geek Squad Department around 2012 through around 2014.

15. Manager Damien Pada was not my manager at any time during my employment with Best Buy.

16. In late 2013,  Jonathan Palomo told me that he had a lot of anxiety and stress, because on most days Damien Pada would be mad at him after Jonathan rejected Damien's sexual advances and Damien Pada would verbally attack and insult



Jonathan and would make Jonathan re-do things that didn't need to be redone, make Jonathan do unnecessary cleaning tasks, perform all the manual labor and lifting of heavy items since Jonathan was a male with muscles. Jonathan also told me in late 2013, that he, Jonathan, started to feel nauseous every day before coming to work and felt like he had constant diarrhea because of Damien's harassment and hostile work environment because Damien, on most days, would always be angry and hostile towards Jonathan when Jonathan threatened to report Damien Pada to HR if Damien didn't stop groping his penis all day long, or because Jonathan refused to follow Damien's managerial orders to anally penetrate Damien's "bussy" at work in the SDR.

17. Between 2012 and 2014, after telling Jonathan that I witnessed him being sexually harassed and sexually assaulted by Damien Pada, I told Jonathan that if he ever decided to go to HR without fear of retaliation that I would be a witness as I personally witnessed and heard his manager, Manager Damien Pada sexually harass and sexually assault both Istvan Valencia and Jonathan Palomo on multiple occasions between 2012-2014, while I was employed at Best Buy's Los Feliz Store in Los Angeles, CA.

18. I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the State of California and the U.S. that the foregoing is true and correct.

**DATE: 10/21/2020**



**DARRELL ANDERSON**



## Mental Health - Leader Toolkit

🖶 Print

**Mental health matters.** You are not alone.

With one in five adults in the U.S. experiencing a mental illness each year, every one of our employees is impacted either personally or knows someone who is. As a leader, you likely have your own personal experiences in addition to being in a position of support for employees who are struggling. The following resources can guide you and your employees to the right help at the right time.

## Leader Support

- Mental Health
  Find details about the support resources available for all employees, including up to eight no-cost counseling sessions and access to myStrength (a digital self-care platform), as well as behavioral health benefits for those covered under a Best Buy medical plan.

- Life Solutions EAP
  In addition to individual counseling support, Life Solutions can help you as a leader determine how to approach a situation with a specific individual or offer support to your broader location in response to a crisis, such as an employee death or tragic incident. Review the Life Solutions Leader Overview for more details.

- **HR Partner**
  Your HR partner can advise you on how to respond to individual employee situations as well as how to support your team in times of crisis. They can also help you leverage Life Solutions and navigate other Employee Relations or benefits processes such as workplace accommodation requests, performance issues, observed behavior of drug or alcohol influence, or leave of absence. Submit additional feedback and questions to mentalhealth@bestbuy.com.

- **Emergency Response**

  ○ 9-1-1 is the first call in any emergency situation
  ○ Best Buy Emergency Hotline 855-BBY-4911 (855-229-4911)

## National Mental Health Resources

- National Alliance on Mental Illness (NAMI)
  NAMI is the largest grassroots mental health organization that includes more than 1,000 organizations and affiliates who work in your community to raise awareness and provide support and education. Learn more about various topics and find a local affiliate.

- Makeitok.org
  Find tips for talking about mental illness and reducing the stigma.

## Related

- **Workplace Accommodation Toolkit**
  Make reasonable modifications or adjustments to the work environment whenever possible -
  especially when the request is related to disability, pregnancy or religious beliefs.

**Inbox**

**Sipprell, Larissa**
Larissa.Sipprell@bestbuy.com
Hide details

To: jonathan1984pal@gmail.com

Date: October 1, 2020, 4:12 PM



Jonathan,

Thank you for speaking to me this afternoon. Here is the information on our Employee Assistance Program:

· Employee Assistance Program Website
(www.guidanceresources.com)

o First-time users, click: Register

o Enter Organization Web ID: BBYLife

o Create your unique username and password

· Call the Best Buy dedicated phone line 24/7: **1-800-807-1530**

I will call you tomorrow afternoon.

Larissa



# COACHING AND CORRECTIVE ACTION PROCESS



## GUIDELINES

FOR ALL BEST BUY U.S. EMPLOYEES

DISCLAIMER:  Employment at Best Buy, having no specified term, is based upon mutual consent and may be terminated at will, with or without cause, by the Company or the employee without prior notice to the other, unless otherwise prohibited by law. This Coaching & Corrective Action Process is not intended as a contract or an offer of a contract. It is implemented at the sole discretion of management and may be withdrawn or changed at any time with or without notice. Any federal, state or local law in conflict with Company policies, procedures or processes will prevail.



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**    October 8, 2019

## TABLE OF CONTENTS

Purpose ................................................................................................................................ 2

Roles and Responsibilities ............................................................................................... 2

Inappropriate Conduct versus Unsatisfactory Work Performance ....................................... 4

Corrective Action Guidelines for Inappropriate Conduct ....................................................... 5

Inappropriate Conduct Corrective Action Guidelines Summary ............................................7

Corrective Action Guidelines for Unacceptable Performance: ............................................15

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**    October 8, 2019

**Audience:** All U.S. Best Buy employees

**Summary:** Outline of Best Buy's Coaching and Corrective Action guidelines for all U.S. Best Buy employees

**Purpose:** These guidelines pertain to employee conduct and performance, so that all employees are treated fairly, and to provide employees with the opportunity to correct their performance and/or behavior, as applicable. While they are intended to comply with applicable laws, they are not intended to be contractually binding. Except as required by law, Best Buy reserves the right to interpret, vary from or change these guidelines and any other Policy. All employees are employed at will, meaning they or the Company can end the employment relationship at any time, for any reason. These guidelines do not alter the at-will status of any employee.

These guidelines are not all-inclusive. Rather they are intended to provide guidance on what constitutes inappropriate conduct, and recommendations for handling employee conduct and work performance that does not meet Company expectations. Information contained within these guidelines may occasionally change as business needs dictate with or without advance notice to those affected. Best Buy also reserves the right to depart from these guidelines when it is deemed appropriate.

Best Buy's Coaching and Corrective Action guidelines are intended to:

- Aid managers in their efforts to set clear expectations and hold employees accountable consistently;
- Clearly articulate the difference between inappropriate conduct and unsatisfactory work performance;
- Provide all employees with a consistent set of rules, regardless of location; and
- Depending upon the severity of the situation, allow all employees the opportunity to succeed in their role by providing time to improve performance or modify conduct

**Roles and Responsibilities:** It is important that every leader at Best Buy understand their role in setting clear expectations and role/job clarity for each of their employees. This also includes inspecting, coaching and providing feedback on follow-through of those expectations. Leaders own coaching and corrective action from end to end, but are not alone in the process. Not only does the HR partner provide support and guidance throughout the coaching and corrective action process, but the Employee Relations Case Management (ERCM) team also provides guidance when an employee is not meeting expectations or has engaged in some type of inappropriate conduct.

Please see the various roles and responsibilities set out in more detail below.

Page 2

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY.**
**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

| Leader | • Owner of the coaching and corrective action process end-to-end<br>• Live/ Model the Leadership Expectations<br>• Set clear expectations and hold employees accountable consistently<br>• Administer corrective action and follow-up discussions<br>• Provide coaching and support to the employee engaged in the Coaching and Corrective Action process<br>• Properly complete all documentation and follow-up notes<br>• Make decisions on adverse job action in partnership with the HR partner and ERCM team |
|---|---|
| Employee | • Be open to the feedback the leader is providing. Ask questions or request additional clarity where necessary<br>• Ask for help removing any roadblocks or challenges<br>• Aim for regular and consistent communication with the manager<br>• Accept accountability for policy/SOP violations that result in corrective action |
| Human Resources Partner | • Assist the business leader in the creation of corrective action documentation, where necessary<br>• Work with the leader to properly execute all completed documentation and follow-up notes<br>• Provide coaching and support to the business leader and employee engaged in the Coaching and Corrective Action process, where necessary<br>• Take appropriate partners as needed with the ERCM team |
| Employee Relations Case Management Team | • Provide guidance to the business leader and HR partner at any step in the process<br>• Review documentation to determine if the situation warrants adverse job action and make recommendation<br>• Prepare Involuntary Separation Notice in partnership with business leader and HR partner<br>• Escalate cases as appropriate<br>• Review any concerns of fair and consistent treatment that may be raised by the employee during and after the process |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**      October 8, 2019

**Approval:** Before a manager involuntarily terminates an employee, the decision must first be approved by the applicable HR partner and then reviewed by the Employee Relations Case Management (ERCM) team.

| Employee Level | HR Partner |
|---|---|
| Non-Supervisory Employee | Human Resources Manager (HRM) |
| Supervisor, Assistant Manager, Manager, GM | HRM |
| Director/District Manager | HR Director |
| Senior Director | HR Vice President |

## Inappropriate Conduct versus Unsatisfactory Work Performance

At Best Buy, there are two distinct paths for addressing employment-related issues: Inappropriate conduct and unsatisfactory work performance.

**Inappropriate Conduct:** This is behavior that violates a rule, regulation, policy or directive, which may or may not be related to the employee's job duties. Conduct issues require no action planning or coaching. These are behaviors an employee should immediately stop to be in compliance with policies and/or job requirements. Examples include theft, falsification of company documents, safety violations, harassment, security violations, etc.

**Unsatisfactory Work Performance:** Performance issues are often addressed on a progressive basis to ensure our employees understand the expectations, have been provided the necessary training to perform at the required level and have been given the opportunity to improve. Performance coaching will be provided to ensure clarity of expectations.

In these scenarios, the employee is attempting to meet job expectations (e.g., Leadership Expectations, Employee Expectations (Big Box Retail), and Core Job Accountabilities) but is struggling in one or more areas.  These areas can include such things as failing to meet productivity standards, failing to follow through on assignments, failing to meet sales goals or other performance objectives.

There are numerous ways to address poor performance including: Performance counseling sessions, training/retraining, work plans and on-going progress reviews/feedback sessions.  Regardless, all steps taken to address identified performance issues must be clearly documented.

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY**

**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

## Corrective Action Guidelines for Inappropriate Conduct:

Corrective action for inappropriate conduct depends upon the type of misconduct involved. For "minor offense" misconduct, corrective action starting with a Written Warning is generally issued. For "serious offense" misconduct, corrective action starting with a Final Warning is generally issued. "Gross misconduct" will generally lead to immediate involuntary termination and could be grounds for a "Not Eligible for Rehire" status depending on the severity of the gross misconduct.  Rehire status will be reviewed by Employee Relations on a case-by-case basis.

While some conduct infractions (i.e., attendance and time record accuracy) begin with an informal step, the three formal corrective action steps for CONDUCT are:

| Corrective action | Expiration |
|---|---|
| Informal Documented Coaching** | N/A |
| Written Warning (WW) | Six months following the date of issuance |
| Final Warning (FW) | 12 months following the date of issuance |
| Involuntary Termination | N/A |

**Written warning:** A written document delivered to an employee for engaging in conduct defined as a "minor offense." Minor offenses include the failure to follow instructions, engaging in unsafe work practices, attendance issues, etc.

**Final warning:** A written document delivered to an employee who engages in misconduct classified as a "serious offense" or repeats the "minor offense" misconduct within six months of previously being issued a written warning. Serious offenses include working off the clock, aggressive verbal conduct, failing to report an accident, losing keys or electronic codes, improper disposal of environmentally sensitive materials, etc.

**Involuntary termination:** Employee had previously been issued a final warning and repeated the misconduct within 12 months of receiving a final warning for a "minor offense" or "serious offense" OR engaged in "gross misconduct." Gross misconduct includes theft, fraud, harassment, retaliation, discrimination, etc.

** Certain policies and SOPs, such as attendance and tender acceptance, have informal steps prior to the issuance of formal corrective action. See these specific policies/SOPs for more information.

Page 5

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**    October 8, 2019

**Effect of Prior Warnings:** Even after the expiration of a previously issued corrective action for inappropriate conduct, such corrective action may be considered in determining whether the employee knew or should have known that the conduct in question is inappropriate. Such previously issued corrective action may be considered in classifying the new conduct as either "gross misconduct" or a "serious offense." Before taking previously issued corrective action into account, managers must contact their HR business partner.

The intent of this process is to prevent employees from repeatedly engaging in serious inappropriate conduct over a length of time that extends beyond the extended period. For example, an employee who engages in disorderly conduct and previously received a Final Warning for Disorderly Conduct 13 months ago could be terminated based upon the previous corrective action even though the extended period has expired. Corrective action for Minor Offenses, such as attendance violations, should not be considered.

Regardless, expired corrective action documentation should always remain in the employee's personnel file.

**Counting Time:** If the employee misses a significant (i.e., an extended Leave of Absence) amount of time during their critical or extended periods, the time periods under this policy may be extended by the amount of time missed. Before extending the length of a critical or extended period, appropriate HR partnership is required.

**Multiple Violations:** Any employee who receives any combination of three corrective action steps (WW or FW) for either inappropriate conduct or unsatisfactory work performance in a rolling one-year period of time will receive a Final Warning for Multiple Violations (issued at the same time as the third corrective action step referenced above). After the Final Warning is issued, the next corrective action step (regardless of type) within the subsequent 12 months (excluding LOA time) will result in termination.

**Note:** While attendance and No Call/No Show issues are addressed on a separate corrective action form, they are still considered to be Inappropriate Conduct infractions and are included in the corrective action steps when used to issue a Final Warning for Multiple Violations.

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY**
**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

## Inappropriate Conduct Corrective Action Guidelines Summary:

This Guideline Summary is intended as a reference tool and not as an all-inclusive list of infractions.

| Minor Offenses | Typical Corrective Action |
|---|---|
| **Unsafe Acts**<br><br>Unsafe work practices. which does not result in property damage or injury (e.g., failure to clean up spill or pick up debris, use of unapproved box cutter, failure to use proper team lift technique).  More egregious safety violations may be treated as either Negligent Conduct or Reckless Conduct. | **WW FW T** |
| **Failure to comply with stated Environmental Compliance Requirements**<br><br>A failure to follow environmental regulations, which does not result in improper disposal of regulated materials or harm to persons, property or the environment (e.g., failure to properly label e-waste, batteries or hazardous waste). More egregious violations of environmental regulations, such as improper disposal of regulated items, may be treated as either Negligent Conduct or Reckless Conduct. | **WW FW T** |
| **Incomplete Meal Breaks**<br><br>California Locations Only: The voluntary failure to take a complete meal/rest break pursuant to company standards and applicable state law. This includes skipping a scheduled meal/rest break, taking a short meal/rest break, taking an untimely meal/rest break or combining meal/rest breaks. This also includes a leader's failure to consistently provide hourly employees with complete meal/rest breaks. Also see the California Time Records, Rest Break and Meal Period Policy | **WW FW T** |
| **Failure to comply with the Time Records, Rest Breaks and Meal Period Policy**<br><br>Failure to consistently and accurately record time using the time keeping system. (e.g., manual recording of inaccurate time of arrival/departure, failing to use the clocking buttons where possible, etc.). Also see the Time Records, Rest Breaks and Meal Period Policy. | **WW FW T\*\*** |
| **Failure to Follow Instructions**<br><br>The failure of an employee to follow the work-related instruction of a supervisor or manager. In the event of a conflict of instructions between two managers, the employee should follow the instruction of the higher ranking manager and later request clarification to prevent repetition of a conflict. Also see Insubordination. | **WW FW T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**        October 8, 2019

| | |
|---|---|
| **Failure to comply with Solicitation or Distribution Policy**<br><br>Solicitation while on work time or distributing literature while on work time or in a work area is prohibited. Also see the Solicitation and Distribution Policy. | **WW FW T** |
| **Reporting to work in an unfit condition**<br><br>Reporting to work when unable to satisfactorily perform assigned work, regardless of reason for the inability. Egregious violations may be treated as Disorderly Conduct or Detrimental Behavior.<br>**Note:** This portion of the guidelines also applies when an employee is able to perform their assigned work responsibilities but smells of alcohol and/or drugs, with no additional signs of impairment. Where additional signs of impairment exist also see Sale, Offering or Use of Alcohol and Illegal or Otherwise Controlled Substances.<br><br>**Note:** Once the inability is observed, the employee should not be permitted to start or to continue working and should be transported home without further pay. If appropriate, arrangements (e.g., company paid cab or family member) should be made to get the employee home. | **WW FW T** |
| **Violation of Company Policy/Procedure**<br><br>The violation of applicable policies and procedures of the company not otherwise referred to in these corrective action guidelines, unless the policy specifies a different or more serious level of corrective action. Refer to the relevant policy or SOP for details. | **WW FW T** |
| **Tender Acceptance Violation ($10-$99) – Single User**<br><br>The violation of tender acceptance policies and procedures as outlined in SOP. Violations and/or offenses resulting in actual or potential shortages or overages of more than $10 but less than $100 in a calendar month, where user was the only person processing transactions on the register/POS. | **WW FW T** |
| **Tender Acceptance Violation ($10+) – Multiple Users**<br><br>The violation of tender acceptance policies and procedures as outlined in SOP. Violations and/or offenses resulting in actual or potential shortages or overages of more than $10 in a calendar month, where there were multiple users on the same register/POS. | **WW FW T**\*\* |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

| Serious Offenses | Typical Corrective Action |
|---|---|
| **Disorderly Conduct**<br><br>Conduct which substantially impairs the discipline and order of the work environment. Disorderly Conduct also includes, but is not limited to such conduct as: | |
| • Harassment or discrimination of employee(s), applicants, customers, vendors or contract workers based on age, race, color, disability, national origin, gender, religion, sexual orientation, gender identity, ancestry or other characteristic protected by federal, state or local law, which consists of offensive or degrading remarks, comments or implication; unwelcome requests to "date," "meet" or "visit" another employee or other similar behavior, which to a reasonable person could be expected to create a hostile, intimidating or offensive work environment, but which is not considered serious enough to warrant immediate termination. Also see the Reckless Conduct section.<br>• Aggressive physical or verbal conduct or threat of such conduct, toward an employee, vendor employee, contingent worker or customer (including swearing or obscene language), which is not serious enough to warrant immediate termination.<br>• Inappropriate influence or persuasion by leaders during eVoice administration. | **FW T** |
| **Negligent Conduct**<br><br>The failure of an employee to use ordinary and reasonable care in the performance of his or her work-related responsibilities. Negligent Conduct also includes, but is not limited to, such conduct as found below.  More egregious conduct may be treated as Gross Misconduct. | |
| • Violating stated safety rules, for example: Climbing racks or stockroom shelves, dropping merchandise from stockroom shelves, riding pallet jacks, flats, carts or forklifts; loading, unloading or operating balers or compactors or Wave machines if under the age of 18.<br>• Violating stated safety rules related to the use of a company vehicle, for example: Using the Company vehicle for personal use, failing to properly maintain the vehicle, failing a DOT inspection, failing to report moving violations or inspections to Fleet Operations within 24 hours, failing to immediately report a vehicle accident to Store Management or operating any vehicle with a suspended or invalid driver's license.<br>• Use of power equipment (e.g., Forklift, Clamps) that results in substantial damage to product (e.g., improper clamping of TVs, dropped appliances during unloading, pick or put a way process, etc.). | **FW T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

| | |
|---|---|
| • Failing to report an accident or damage to property of the company or a customer. | **FW T** |
| • Losing or passing to an unauthorized individual assigned physical keys (including keys to the compactor, baler, Wave machine or other power equipment) or electronic lock/alarm codes; failing to properly secure company assets, including funds, buildings or electronic lock/alarm codes. This section applies to authorized keyholders. | **FW T** |
| • Engaging in conduct that results in or could result in employee injury, customer injury or damage to property or financial loss to the company or a customer. | **FW T** |
| • Failure to properly protect and secure company, customer or employee data, information, and information resources including but not limited to:<br>   • transferring customer data to the wrong hardware<br>   • providing customer or employee data to the wrong person or to an unauthorized person<br>   • accidentally providing hardware (e.g., laptop) to the wrong customer<br>   • using a personal device or device not authorized by Best Buy to download company, customer or employee data for work purposes or forwarding such data to a personal email account or cloud storage service for work purposes<br>   • falling prey to a phish, whether real or simulated, two times within a 12-month period without reporting it<br><br>Also see Misuse of the Employment Relationship or the Information Security Policy. | **FW T** |
| • Losing company assets, including computers, tablets, cell phones, printers, etc. | **FW T** |
|    Failure to follow stated environmental regulations and disposal restrictions, for example: improper disposal of regulated materials, including Best Buy merchandise, such as batteries, electronics and/or hazardous waste (aerosols, paint, cleaning chemicals).<br>More egregious violations of environmental regulations, such as improper disposal of regulated items, may be treated as Reckless Conduct. | **FW T** |
| • Engaging in conduct that results in excessive force/touch with a customer while conducting or attempting to conduct an AP apprehension.<br>• Failure to report a Non-Productive Incident according to the "Non-Productive Incident" SOP.<br>More egregious violations may be treated as Reckless Conduct. | **FW T** |
| **Unauthorized Work (includes working "off the clock")**<br><br>Failing to record time worked (including work performed off company premises). This includes but is not limited to: Responding to work-related phone calls or texts, completing required eLearnings, completing opening/closing duties or responding to alarm calls. | **FW T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**        October 8, 2019

| | |
|---|---|
| **Smoking/Tobacco Use on Company Premises**<br><br>Smoking, including the use of E-Cigarettes, or using tobacco anywhere on company premises except in those areas where smoking or the use of tobacco is specifically authorized or permitted. Such use is prohibited within company-owned vehicles. | **FW T** |
| **Violation of the Employee Discount Policy**<br><br>Misuse of the Employee Discount Policy by an employee (e.g., using the wrong form of payment). Also see Misuse of the Employee Discount Policy for Personal Gain. | **FW T** |
| **Tender Acceptance Violation ($100 or more) – Single User**<br><br>The violation of tender acceptance policies and procedures as outlined in the SOP. Violations and/or offenses resulting in actual or potential shortages or overages of $100 or more in a calendar month, where user was the only person processing transactions on the register/POS. | **FW T** |
| **Prepaid Gift Card Violation ($6,000 or more)**<br><br>The violation of prepaid gift card policies and procedures as outlined in the SOP. Violations and/or offenses that result in:<br>• Single employee sale of prepaid cards of $6,000 or more to a single customer<br>• Multiple (two or more) employee sale of prepaid cards of $6,000 or more to a single customer within a 24 hour period<br>• Manager authorized sale of prepaid cards of $6,000 or more to a single customer | **FW T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY**

**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**        October 8, 2019

| Gross Misconduct | Typical Corrective Action |
|---|---|
| **Misuse of the Employment Relationship or of the Company's Property**<br><br>Obtaining or using any property or service of the company, another employee, a customer, a visitor or a vendor in a manner other than that authorized by company policy or by federal, state or local laws.  This includes such conduct as: | T |
| • Theft, which includes, but is not limited to:<br>  o Theft or attempted theft of customer, employee or company property or services, regardless of the amount involved.<br>  o Taking money from a register, locker, another employee's belongings or desk without authorization, regardless of purpose.<br>  o Taking supplies, salvage (including products intended for recycling), tools, equipment, samples, vendor gifts (see Conflict of Interest Policy) or any other company asset regardless of the amount or method used.<br>  o Providing customers or employees with unauthorized merchandise or services.<br>**Note:** Partner with the HRM in situations where an employee consumed but failed to pay for consumable product and lacked the intent to steal. | T |
| • Fraud, which includes, but is not limited to:<br>  o Selling, buying or distributing merchandise or services at unauthorized prices, including markdowns, price changes and discounts.<br>  o Fraudulent reporting of travel or business expenses.<br>  o Unauthorized use of credit cards.<br>  o Failing to follow sales, return or credit procedures.<br>  o Use of company systems and/or assets for non-company related business or for personal gain.<br>  o Payroll fraud.<br>  o Inaccurate/fraudulent financial reporting. | T |
| • Unauthorized use or misappropriation of company property, information, or services, including but not limited to:<br>  o Storing of merchandise for purchase at a later date.<br>  o Accessing customer, employee, or other Best Buy confidential information without proper authorization, or for unauthorized purposes | T |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

| | |
|---|---|
| • Unauthorized use or misappropriation of customer information or property, including but not limited to:<br>    o   Inappropriately accessing customer data, including photos, videos, passwords/codes, credit card information, phone numbers, bank information, etc.<br>    o   Inappropriately accessing customer social media or other accounts for personal use<br>    o   Using a personal device or device not authorized by Best Buy to download company, customer or employee data for personal use | **T** |
| • Falsification of a company document or transaction relied upon by the company by knowingly omitting or falsely including information. Such documents include, but are not limited to: Employment applications, resumes, employment records, commission records, vendor records, medical reports and Leave of Absence forms, financial or Expense Reports, POS records, customer credit applications, customer surveys, merchandise reports, inventory records, safety documents, time-keeping records (see also Time Records, Rest Breaks and Meal Periods Policy), etc. | **T** |
| • The misuse of the employee discount policy for personal gain or profit (e.g., where an employee receives full retail for returned merchandise that was purchased at a discount or where the discount was used to purchase merchandise for an ineligible recipient) or where the discount violation, even though not for personal gain or profit, is particularly severe. Also see Violation of the Employee Discount Policy. | **T** |
| **Reckless Conduct**<br><br>Conduct which creates a substantial and unjustifiable risk of harm, damage or injury to another person or causes such harm, damage or injury to the property of the company, during work time or on company premises.  Reckless conduct also includes, but is not limited to, such work place violence as: | |
| • Harassment or discrimination of employee(s), applicants, customers, vendors or contract workers based on age, race, color, disability, national origin, gender, religion, sexual orientation, gender identity, ancestry or other characteristic protected by federal, state or local law, which consists of threats, intimidation, unwanted physical contact, misuse of management authority or position or the willful creation of circumstances which would make the workplace intolerable unless immediate and effective relief is provided. Also see Disorderly Conduct. | **T** |
| • Physical assault, attempted assault or extremely offensive, aggressive and/or threatening verbal or non-verbal conduct (i.e., racial slurs or taunts, threats of | **T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY**

**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**         October 8, 2019

| | |
|---|---|
| bodily harm to a person or family, etc.) of employee(s), applicants, customers, vendors or contract workers. | |
| • The reckless use and/or tampering of equipment (e.g., Big Joe, forklift, company vehicles, etc.) or creating an unsafe work environment that could lead to serious harm, damage or injury to person or property, whether or not it does (e.g., failing to wear or removing required safety fall protection devices, seat belts, etc.) Also see Vehicle Operator SOP. | T |
| • Failure to follow Best Buy's Apprehension Policy which includes, but is not limited to, personally observing all five (5) steps prior to any apprehension.  Also see Disorderly Conduct. | T |
| • The reckless mismanagement of hazardous materials that could lead to serious harm, damage or injury to persons, property or the environment (e.g., illegal disposal of hazardous materials that cause a risk of fire or damage to the environment). | T |
| **Detrimental Behavior**<br><br>Personal conduct which substantially impairs the employee's ability to function effectively as an employee by reason of its detrimental effect either on the employee's relationship with other employees or on the business or reputation of the company, whether or not it occurs on company premises.  Detrimental behavior also includes, but is not limited to, such conduct as: | |
| • Engaging in conduct that is a conflict of interest pursuant to the company's Conflict of Interest policy. | T |
| • Retaliating against an employee who either makes a good faith complaint of harassment, discrimination, safety violation, or ethics/fraud violation or who helped investigate such a complaint. This includes interfering with an on-going investigation. | T |
| • Being convicted of a job-related crime while employed by the company. This may include newly disclosed or discovered information which is determined to be job related while employed by the company.<br><br>• **Note:** The determination as to whether the conviction is job-related and any subsequent corrective action as a result must be made in partnership with Employee Relations. | T |
| • Disclosing confidential or proprietary information or assets without specific authorization. With respect to non-supervisory, non-HR employees, such information includes, but is not limited to: Financial records, sales information or events, confidential products or promotional lines, customer credit card or | T |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

| | |
|---|---|
| account information, vendor pricing agreements, marketing or forecasting information, sensitive employee information; such as social security number or medical information. In addition to these restrictions, supervisors and managers who, as part of their normal job responsibilities have access to non-public sensitive employee information (such as corrective action information, performance appraisals, phone numbers and addresses) are prohibited from disclosing such information without authorization, unless it is the supervisor's or manager's own personal information. | |
| **Condoning Unauthorized Work ("work off the clock")**<br><br>Knowingly permitting or requiring employee (s) to perform work off the clock whether on or off company premises. | **T** |
| **Insubordination**<br><br>The willful refusal to follow a reasonable work-related request from a supervisor or manager where the consequence of that refusal (termination) has been made clear to the employee. (also see #4 Failure to Follow Instructions). | **T** |
| **Sale, Offering or Use of Alcohol or Illegal or otherwise Controlled Substances**<br><br>An employee may not possess, use or consume, offer, share or attempt to sell or obtain, or be under the influence of alcohol and/or any illegal or otherwise controlled substance while at work or on company premises.  With authorization of the relevant Senior Vice President, the use or consumption of alcohol or possession of an open container at a company sponsored event on company premises may be permissible.<br><br>**Note:** The corrective action required is termination, unless mitigating circumstances exist, including a legal disability or the appropriate use of drugs properly prescribed by a licensed physician. If it is believed these or other mitigating circumstances exist, contact the appropriate HR partner or Employee Relations. | **T** |
| **Weapons and Other Dangerous Implements**<br><br>The possession, use or threat of use of any kind of weapon, explosive or other dangerous implement during working time or on company premises whether or not it is armed, loaded or properly secured and whether or not it is concealed on an employee's person or contained in an employee's personal property such as a purse, backpack or vehicle (except where allowed by state law). | **T** |

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)

**BEST BUY**

**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**        October 8, 2019

| Other | Typical Corrective Action |
|---|---|
| **Attendance**<br><br>Failure to follow the relevant attendance and punctuality expectations. | **WW FW T\*\*** |
| **No Call/No Show**<br><br>Failure to report for a scheduled shift and/or notify the leader at the location within two (2) hours following the start of the scheduled shift. | **FW T** |
| **Job Abandonment and Failure to Return from Approved Leave of Absence**<br><br>Failure to both report to work for three (3) consecutive scheduled shifts and to notify a leader at the location will be considered job abandonment (voluntary termination). Contact with a co-worker is not sufficient.<br><br>Failure to report for work within three calendar days after the expiration of an approved leave of absence. | **T** |
| **Multiple Violations of the Above Offenses**<br><br>Any employee who receives any combination of three (3) corrective action steps (WW or FW) for either inappropriate conduct or unsatisfactory work performance in a rolling one-year period of time will receive a Final Warning for Multiple Violations (issued at the same time as the third corrective action step referenced above). After the Final Warning is issued, the next corrective action step within the subsequent 12 months (excluding LOA time) will result in termination. | **FW T** |

\* Certain policies and SOPs, such as attendance, time records accuracy and transaction accountability, have informal steps prior to the issuance of formal corrective action. See these specific policies/SOPs for more information.

**Corrective Action Guidelines for Unacceptable Performance:**

As part of the ongoing performance management process, leaders coach their employees frequently. Leaders should candidly and respectfully discuss any concerns they have with their employees. A coaching session is defined as a conversation initiated by a leader to reiterate the required performance and/or results. While these coaching sessions may be informal, the leader must document these conversations. These documents are considered to be part of the formal documentation of the entire performance improvement process and should be maintained in a leader's file.

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

### Coaching and Corrective Action Guidelines          October 8, 2019

The formal corrective action process is used when coaching and feedback have not improved performance. The three possible progressive corrective action guidelines for PERFORMANCE are:

| Corrective action | Critical Period | Extended Period |
|---|---|---|
| Written warning (WW) | Two months following the date of issuance | 6 months |
| Final warning (FW) | One month following the date of issuance | 12 months |
| Involuntary termination | N/A | |

All corrective action for unsatisfactory work performance should include:

- References to past coaching and corrective action
- Description of the unacceptable performance based upon the Leadership Expectations/Core Job Accountabilities/Employee Expectations (Big Box Retail) and/or Company Values
- Specific methods/expectations for improving performance, including timelines, resources, etc. See Coaching and Corrective Action Leader's Guide for Unsatisfactory Work Performance.

**Written warning:** A written document delivered to an employee who had previously had one to two informal conversations regarding their unsatisfactory work performance.  While there is no specific timeframe required prior to issuing a written warning, there should be a documented trend and/or pattern of poor performance.

**Final warning:** A written document delivered to an employee whose performance continues to be unacceptable 60 days after the written warning was issued.

**Involuntary termination:** Employee had previously been issued a final warning and continued to fail to perform satisfactorily within 30 days.

**Critical Period:** The critical period is either a one or two month period following the issuance of corrective action for unsatisfactory work performance. During the relevant critical period, employees must improve their performance to a satisfactory level or better. Leaders will meet with their employees during the critical period to discuss and evaluate performance (i.e., weekly during 1:1s or regularly scheduled status rhythms).

If the employee fails to improve their performance by the end of the critical period, the employee will be placed on the next step of corrective action. If an employee successfully improves their performance to a satisfactory level or better by the end of the critical period, they will move into the extended period (see Extended Period below).

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



**EMPLOYEE RELATIONS**

**Coaching and Corrective Action Guidelines**          October 8, 2019

**Note:** Employees will generally receive the benefit of the full critical period to correct the identified problems. Exceptions may be made where the employee's performance deteriorates so much that it significantly impacts the workplace. Before reducing the length of the critical period, appropriate HR partnership is required.

**Extended Period:** If an employee improves their performance to a satisfactory level or better by the end of the critical period (Written Warning or Final Warning), they will not be placed on the next step of corrective action. Rather, the employee will move into the extended period in which the employee must maintain their performance at a satisfactory level or better for either six or 12 months.

If the performance of the employee falls below the minimum expectation sometime during the extended period, the leader does not need to begin this process from the start. Rather, the leader would address these performance concerns with the applicable level of corrective action. For example, an employee is in the six-month extended period following a Written Warning for unsatisfactory work performance. During that time the employee's performance deteriorates again. The leader would issue a Final Warning rather than reissuing a second Written Warning.

**Counting time:** If the employee misses a significant (e.g., an extended LOA) amount of time during their critical period, the time periods under this policy may be extended by the amount of time missed. Before extending the length of a critical period, appropriate HR partnership is required.

**Multiple Violations:**  Any employee who receives any combination of three corrective action steps (WW or FW) for either inappropriate conduct or unsatisfactory work performance in a rolling one-year period of time will receive a Final Warning for Multiple Violations (issued at the same time as the third corrective action step referenced above). After the Final Warning is issued, the next corrective action step (regardless of type) within the subsequent 12 months (excluding LOA time) will result in termination.

This material is confidential to Best Buy and for internal use only.

Do not publish or distribute. (2019)



Scanned with CamScanner





## INVOLUNTARY SEPARATION NOTICE

**(To be completed by the Employee Relations Case Management Team and presented to the employee at the separation meeting by the Manager. Signed form must be emailed to EmployeeRelations@bestbuy.com or faxed to 952-430-4259.)**

Employee Name:  Jonathan Palomo

Location # / Corp Dept: 183

Manager Name:   Fadi Ammouri

Employee #: 858443

Termination Date: 7/17/2020

Service Request #: HRC1342177

### Involuntary Termination Details:

As a leader at Best Buy, you are expected to act in accordance with the highest standards of personal and professional integrity at all times and to comply with Leadership Expectations, and all Company rules and policies. Jonathan, during an interview on 7/1/2020, you admitted to taking an additional $200 off customer transactions in exchange for them purchasing Total Tech Support (TTS). Since 9/1/2019, at least 70 transactions were discounted, which resulted in a loss to the company of approximately $13,998. This activity was a misuse of your leadership role within the company and is in violation of Best Buy's Inappropriate Conduct Policy, which is consequently, grounds for termination. Your employment with Best Buy is terminated effective immediately.

Your employment will be terminated effective 07/17/2020 and if any final pay was owed it has been paid out via your preferred payment method.

**Employee Comments:**_____

_____

**By signing I acknowledge that I have read and understand the contents of this document, which has been reviewed with me.**

**Employee Signature:** *(note if refused or no show)*_____ Date:_____

**Manager Signature:** _____ Date:_____

**Witness Name**: *(please print)* _____ Title:_____

**Witness Signature:** _____ Date:_____

*Best Buy Confidential and Proprietary*

Case 2:20-cv-08869-FMO-AGR    Document 13    Filed 11/02/20    Page 112 of 128   Page
ID #:141
FY19 Year-End Performance Appraisal for Jonathan Elias Palomo                Page 1 of 3

## PATHWAY

### FY19 Year-End Performance Appraisal for Jonathan Elias Palomo

**Year-End Conversation**

In this step, managers should have the performance appraisal conversation. Once the conversation has occurred, push the form to the employee signature step by clicking Finalize Form then Send to Next Step.

**Business Goals (80.0%)**

- Business Goals need to equal 100%. Business Goals added in the Goals form will automatically be imported into the Performance Appraisal (PA) and be weighted as 80% of your PA rating.
- Field STI and PA plan summaries and tables can be found on MY HR.

Business Goals
Department Solutions



| **Manager's Rating** | **Employee's Rating by Jonathan Elias Palomo** |
|---|---|
| 5-Outstanding | 5-Outstanding |

**Manager's Comments**

John Collaborates across business/ functions to jointly set priorities.

John Actively influences across the function/business, shaping the opinion and agenda of peers and managers

**Employee's Comments**

Solutions = 33.76% LY Solutions= 32.34%

Accessories = 28.72% LY 2.27%

Best Buy Protection = 4.86% LY 4.99%

**Goal Details**

| Goal | Department Solutions | Weight | 19.0% |
|---|---|---|---|
| Start Date | 02/01/2018 | How will performance against this goal be measured? | |
| Due Date | 01/31/2019 | | |

Business Goals
Store Turnover

| **Manager's Rating** | **Employee's Rating by Jonathan Elias Palomo** |
|---|---|
| 2-Below Expectations | 2-Below Expectations |

**Manager's Comments**

John Efficiently develops by focusing on areas that provide the greatest return on effort. Sees what could be possible in current assignment and creates value through taking on more challenging work.

**Employee's Comments**

34.7% vs LY 37.8%

**Goal Details**

| Goal | Store Turnover | Weight | 19.0% |
|---|---|---|---|
| Start Date | 02/01/2018 | How will performance against this goal be measured? | |
| Due Date | 01/31/2019 | | |

Business Goals
Department Revenue

| **Manager's Rating** | **Employee's Rating by Jonathan Elias Palomo** |
|---|---|
| 5-Outstanding | 5-Outstanding |

**Manager's Comments**

John enables the ISP culture ensuring sales proficiency and expertise of all sales consultants and vendor experts.

**Employee's Comments**

POS REV = 15,696,216    COMP (1.24)    DP = $ 2,685,752    DP VAR TGT  277,681

POS REV= 104.53

POS Rev = +680,601

Apple has never had such a high average selling price since my stint of leadership at PCHO my selling skills and top down selling as well as the motivation of my team
helped our Apple rep Nate exceed and beat almost all his goals. My teachings of "clients don't have a budget" we always have a way to help our clients get bigger and
better products based off of our clients needs

## Goal Details

| Goal | Department Revenue | Weight | 25.0% |
|---|---|---|---|
| Start Date | 02/01/2018 | How will performance against this goal be measured? | |
| Due Date | 01/31/2019 | | |

Business Goals
Core Job Accountabilities (CJAs)

**Manager's Rating**
5-Outstanding

**Employee's Rating by Jonathan Elias Palomo**
5-Outstanding

**Manager's Comments**

John motivates, coaches and recognizes employees to reach their full potential. Develops sales business strategies and departments specific plans and monitor sales
results against sales priorities.

**Employee's Comments**

I give and try my hardest everyday so that my management and leadership can do what they need to! My end goal is to make an impact at my store and have it continue
to be known as the best as it was 11 years ago.

## Goal Details

| Goal | Core Job Accountabilities (CJAs) | Weight | 37.0% |
|---|---|---|---|
| Start Date | 02/01/2018 | How will performance against this goal be measured? | |
| Due Date | 01/31/2019 | | |

## People Goals (20.0%)

- People Goals are pre-populated by job code. If needed, they can be changed. To delete, click on the trash can icon next to each goal name.  To add or edit, click +Add People Goals to the right.
- People Goals will automatically be weighted as 20% of your overall PA rating.
- Behavioral anchors for Values and Leadership Expectations can be found on MY HR.

Leadership Expectations – Drives Results

• Sets Expectations • Drives Accountability • Delivers Results

**Manager's Rating**
5-Outstanding

**Employee's Rating by Jonathan Elias Palomo**
5-Outstanding

**Manager's Comments**

Jonathan makes a point of asking for or otherwise creating opportunities for others to give performance feedback. Jonathan is consistently motivated by even difficult
challenges and shows persistence in overcoming them.

**Employee's Comments**

I am consistently motivated by even difficult challenges and show persistence in overcoming them. I consistently deliver results that exceed expectations and inspire
others to do the same. I consistently set and achieve high standards for the level at which the business and people should perform.

Leadership Expectations – Leads People

• Develops Self as a Leader • Attracts, Develops, and Retains Talent • Builds a Culture of Engagement and Inclusion

**Manager's Rating**
4-Above Expectations

**Employee's Rating by Jonathan Elias Palomo**
5-Outstanding

**Manager's Comments**

Jonathan consistently champions the strategic value of talent development with leaders outside of his or her area of responsibility. Jonathan consistently creates and maintains world-class levels of employee engagement.

**Employee's Comments**

I consistently champion the strategic value of talent development with leaders outside of my area of responsibility. I consistently protect and prioritize development opportunities for my employees. I consistently create and maintain world-class levels of employee engagement

Leadership Expectations – Lives the Values

• Show Respect, Humility, & Integrity • Learn from Challenge & Change • Has Fun While Being the Best • Unleash the Power of Our People

| Manager's Rating | Employee's Rating by Jonathan Elias Palomo |
|---|---|
| 4-Above Expectations | 5-Outstanding |

**Manager's Comments**

Jonathan champions engagement, helps others understand the value, and models the behavior. Jonathan tries to learn from every situation, either for self or others, or both.

**Employee's Comments**

I initiate and support open discussion and respectful disagreement. I consistently help others understand a variety of different perspectives. I seek new opportunities for team members to apply their unique talents and skills.

Leadership Expectations – Sets Direction

• Creates Vision • Thinks Critically • Makes Decisions

| Manager's Rating | Employee's Rating by Jonathan Elias Palomo |
|---|---|
| 5-Outstanding | 5-Outstanding |

**Manager's Comments**

Jonathan inspires others to see what is possible in the future. Jonathan shares the final outcome of a decision-making process with others, and also lets them know what impact they had.

**Employee's Comments**

I consistently demonstrate effective decision-making skills beyond the scope or level of my current role. I consistently make complex problems understandable to others, despite not having complete information myself.

## Summary

**Total Appraisal Score**

4.4/5.0

| | Rating | Weight |
|---|---|---|
| **Business Goals** | 4.4 | |
| Department Solutions | 5-Outstanding | 19.0% |
| Store Turnover | 2-Below Expectations | 19.0% |
| Department Revenue | 5-Outstanding | 25.0% |
| Core Job Accountabilities (CJAs) | 5-Outstanding | 37.0% |
| **People Goals** | 4.5 | |
| Leadership Expectations – Drives Results | 5-Outstanding | |
| Leadership Expectations – Leads People | 4-Above Expectations | |
| Leadership Expectations – Lives the Values | 4-Above Expectations | |
| Leadership Expectations – Sets Direction | 5-Outstanding | |



## Pay & Performance Statement Reflecting Performance in FY19

**▌EMPLOYEE INFORMATION**

| | |
|---|---|
| **Name:** | **Jonathan Palomo** |
| Employee Number: | 858443 |
| Manager: | Hakop Koushian |

**▌CURRENT PAY INFORMATION**

| | |
|---|---|
| Current base pay: | $ 23.50 |
| Current pay grade: | 10 |
| Base pay range: | |
| ...*Minimum* | $ 16.32 |
| ...*Maximum* | $ 26.35 |
| Position in range: | Upper |

**▌PERFORMANCE INFORMATION**

| | |
|---|---|
| Total Appraisal Score: | 4.4 |

**▌NEW PAY INFORMATION**

| | |
|---|---|
| Merit Increase %: | 3.0% |
| Merit Increase $: | $ 0.71 |
| ------------------ | ------------------ |
| Total Increase %: | 3.0% |
| Total Increase $: | $ 0.71 |
| **New Base Pay** | **$ 24.21** |

**Next Step:** Immediately following the performance conversation, the employee and manager must electronically sign the employee's performance appraisal in Pathway to complete the year-end process.

At Best Buy we strive to offer a competitive rewards package with choice and flexibility for you and those you care about. Starting April 18, you can view your Total Rewards Statement (a summary of your pay and benefits) by going to MY HR (hr.bestbuy.com) > My Pay > Total Rewards Statement under Related Information.

# Daily Packet

**Selection: Store 183, for FY 2020**

Data Available Through: 02/01/2020

(All Values in $ 1,000)

(Note: DotCom allocation to the Stores posts one day late; BBYO Channel posts one day late)

Direct Profit = Estimate of POS GM + Vendor Support. 4-wall, MDC and Dotcom businesses will contain Vendor Support estimates; however, PAC (Unidata Sales) and BBY Direct will remain just POS GM within Direct Profit. Reminder: this is an estimate and an operational metric within Retail Matrix. Similar to revenue that flows through matrix today, it is an all-channel operational number and will not tie to the financial number on your P&L at month end



## POS Revenue

| Labor Zone | POS Rev ($) | DotCom POS Rev to TGT (%) | PCS Rev Comp (%) | DP to TGT (%) | Direct Profit Dollar | DotCom Mix of All Chnl (%) | DP Mix (%) | Direct Profit Percent | DP (%) to TGT (%) | DotCom DP to POS Rev (%) | Controllable Erosion | Cntrl Ersn to POS Rev (%) | LY Cntrl Ersn to POS Rev (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Computer | 25,982,141 | 102.78 | 1.06 | 98.50 | 28.58 | 19.40 | 96.84 | 2.60 | | | 2.60 | | |
| Connected Life | 14,748,776 | 101.24 | 5.16 | 95.47 | 20.56 | 24.59 | 94.20 | 1.57 | | | 1.57 | | |
| Pro Services | 11,724,421 | 99.84 | 9.72 | 99.36 | 19.05 | 28.63 | 95.51 | 1.88 | | | 1.88 | | |
| Home Theater | 9,975,576 | 97.95 | (2.89) | 94.37 | 17.25 | 31.42 | 96.35 | 2.30 | | | 2.35 | | |
| MMi | 5,816,994 | 99.57 | 20.25 | 95.56 | 11.64 | 34.69 | 95.47 | 4.06 | | | 4.54 | | |
| PAG | 919,840 | 83.56 | 24.68 | 50.02 | 2.91 | 55.88 | 95.76 | 0.31 | | | 0.51 | | |
| **Store 183** | **65,882,751** | **100.67** | **2.65** | **96.25** | **100.00** | **25.55** | **95.61** | **2.83** | | | **2.83** | | |

## All Channel POS Revenue

| | DotCom POS Rev ($) | DotCom Mix of All Chnl (%) | BBYO External POS Rev ($) | BBYO Ext Mix of POS Rev (%) | BBYO Ext POS Rev to TGT (%) | Trans | Trans Comp (%) | MPGS Revenue ($) | MPGS DP (%) | DotCom DP (%) | DotCom Mix of All Chnl (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Store 183 | 17,334,345 | 26.04 | 171,143.36 | 0.20 | 143.80 | 297,592 | | 29,610 | | 2.89 | 2.83 |
| Store 183 Peer Grp Avg | | 26.57 | | 0.17 | | 213,095 | | 3,203,365 | | | |

## Organic Growth

| | UPT | LY UPT | ASP | LY ASP | RPT | LY RPT |
|---|---|---|---|---|---|---|
| Store 183 | 1.91 | 1.89 | 123.43 | 110.86 | 111.71 | 102.68 |
| Store 183 Peer Grp Avg | 1.88 | 1.99 | 19.35 | 13.28 | 29.053 | |

## All Channel Direct Profit

| Hardware | DP (%) | Accessories | Acsy (%) | Best Buy Protection | Best Buy Protectio n (%) | Geek Squad Services | GS Svcs to POS Rev (%) | Connections | Connectio ns Unit Ratio (%) | Solutions | Solutions (%) | Content | Content (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10.24 | | 2.55 | | 5.09 | | 0.46 | | 0.59 | | 31.81 | | 7.10 |
| | (6.37) | | (0.23) | | 3.69 | | 0.75 | | 15.92 | | 41.73 | | 0.58 |
| | 31.91 | | (0.04) | | 3.87 | | 1.00 | | 29.60 | | 6.83 | | 0.73 |
| | 23.15 | | 5.29 | | 3.22 | | 1.17 | | 0.00 | | 40.48 | | 0.00 |
| | 25.00 | | 4.82 | | 1.29 | | 0.82 | | 0.00 | | 33.97 | | 7.35 |
| | 33.39 | | 1.88 | | 4.08 | | 2.56 | | 0.00 | | 11.97 | | 7.94 |
| | 9.60 | | (2.41) | | 0.77 | | 0.00 | | 18.28 | | 0.00 | | 0.00 |
| | 38.09 | | (2.79) | | 9.68 | | 0.00 | | 79.80 | | 61.42 | | 0.00 |
| **16.69** | | **21.18** | | **0.92** | | **69.24** | | **42.42** | | **29.84** | | **30.72** | | **3.64** |

| | DP (%) | Acsy (%) | BBYO Ext Mix of All Chnl (%) | BBYO Ext to TGT (%) | LY RPT | MPGS DP ($) | LY Best Buy Protectio n (%) | LY GS Svcs (%) | LY Connecti ons Unit Ratio (%) | LY Solutions (%) | LY Content (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Store 183 | | | 0.14 | | 221.92 | 2.30 | 5.15 | 1.34 | 5.59 | | |
| Store 183 Peer Grp Avg | | | 0.08 | 244.04 | 204.92 | 1.65 | 4.84 | | | | 4.18 |

## Traffic Counter

| Traffic | Traffic Comp (%) | Close Rate (%) | LY Close Rate (%) | Close Rate (%) | Fast Rate (%) | LY Fast Rate (%) |
|---|---|---|---|---|---|---|
| 758,874 | (3.54) | 47.48 | 46.34 | | | 1.65 |
| 498,510 | (2.27) | 49.74 | (50.04) | | | 0.82 |





# Daily Packet

## Selection: Store 183, for FY 2020

Data Available Through: 02/01/2020

| Category | POS Rev ($) | TGT POS Rev ($) | POS Rev to TGT (%) | Top Quartile (%) | POS Rev Var to TGT ($) | POS Rev Comp (%) | DP ($) | TGT DP ($) | DP to TGT (%) | DP Var to TGT ($) | DP (%) | TGT DP (%) | DP (%) to TGT (%) | Top Quartile (%) | Cntrl Ersn to POS Rev (%) | Top Quartile (%) | LY Cntrl Ersn to POS Rev (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appl /PAC Sales SWAS | 156,832 | 0 | | 0.00 | 156,832 | 191.33 | 12,772 | 0 | | 12,772 | 8.04 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Computing | 16,003,897 | 15,415,690 | 103.88 | 102.01 | 588,207 | 1.71 | 2,889,567 | 2,957,862 | 97.69 | (68,295) | 18.02 | 19.16 | 94.05 | 98.16 | 3.23 | 1.68 | 3.19 |
| Connected Car | 317,451 | 279,460 | 113.60 | 101.23 | 37,991 | 17.12 | 119,072 | 108,231 | 110.02 | 10,841 | 37.51 | 38.73 | 96.85 | 101.85 | 3.92 | 1.93 | 2.69 |
| Connected Home | 1,959,745 | 2,052,644 | 95.47 | 92.45 | (92,899) | 6.56 | 828,315 | 838,944 | 98.73 | (10,629) | 42.16 | 40.38 | 104.41 | 107.07 | 1.62 | 0.98 | 1.52 |
| Consumables | 305,262 | 299,939 | 101.78 | 101.36 | 5,323 | (3.55) | 131,586 | 120,715 | 109.01 | 10,871 | 43.10 | 40.25 | 107.10 | 104.25 | 0.79 | 0.59 | 0.78 |
| Digital Imaging | 2,809,653 | 3,091,078 | 90.90 | 97.22 | (281,425) | (17.13) | 911,140 | 1,005,390 | 90.63 | (94,250) | 32.43 | 32.53 | 99.70 | 110.17 | 2.35 | 0.96 | 2.26 |
| Gaming | 3,467,062 | 3,858,861 | 89.62 | 92.79 | (391,799) | (23.30) | 639,506 | 690,201 | 92.66 | (50,695) | 18.45 | 17.84 | 103.39 | 108.11 | 1.46 | 0.89 | 0.95 |
| Headphones | 2,167,682 | 1,910,740 | 113.45 | 114.00 | 256,942 | 33.97 | 762,290 | 666,512 | 114.37 | 95,778 | 35.17 | 34.88 | 100.81 | 105.69 | 1.30 | 0.72 | 1.69 |
| Health | 202,300 | 86,168 | 234.78 | 106.13 | 116,132 | 812.94 | 48,285 | 21,364 | 226.01 | 26,921 | 23.87 | 24.79 | 96.27 | 99.17 | 2.64 | 0.78 | 1.33 |
| Home Delivery | 57,695 | 64,363 | 89.64 | 98.51 | (6,668) | 26.81 | 21,394 | 8,207 | 260.70 | 13,187 | 37.08 | 12.75 | 290.80 | | 37.93 | 2.90 | 45.21 |
| Home Theater | 14,140,106 | 14,334,510 | 98.64 | 95.42 | (194,404) | (0.87) | 4,646,913 | 4,909,069 | 94.66 | (262,156) | 32.86 | 34.46 | 95.36 | 95.45 | 2.90 | 1.61 | 3.04 |
| Magnolia Design Center | 0 | 0 | | 95.42 | 0 | (100.00) | (462) | 0 | | (462) | | | | 99.97 | 6.61 | 0.00 | 0.00 |
| Magnolia Home Theater | 743,151 | 732,776 | 101.47 | 104.16 | 10,375 | (18.36) | 327,492 | 316,546 | 103.46 | 10,946 | 44.07 | 43.20 | 102.01 | 95.34 | 5.36 | 5.17 | 5.16 |
| Major Appliances | 9,438,503 | 9,457,666 | 99.80 | 99.79 | (19,163) | 9.15 | 3,130,423 | 3,125,444 | 100.16 | 4,979 | 33.20 | 33.05 | 100.47 | 97.00 | 0.94 | 0.34 | 5.20 |
| Mobile Phones | 7,825,271 | 7,453,288 | 104.99 | 98.95 | 371,983 | 10.65 | 1,450,797 | 1,559,045 | 93.06 | (108,248) | 18.54 | 20.92 | 88.63 | 89.90 | 1.28 | 0.62 | 1.04 |
| Movies | 421,189 | 473,490 | 88.95 | 97.31 | (52,301) | (27.11) | 82,713 | 99,643 | 83.01 | (16,930) | 19.64 | 21.04 | 93.36 | 114.60 | 0.80 | 0.40 | 0.87 |
| MP3 | 29,809 | 31,441 | 94.81 | 94.72 | (1,632) | (37.10) | 5,285 | 5,407 | 97.74 | (122) | 17.73 | 17.20 | 103.11 | 108.05 | 0.10 | 0.03 | 0.50 |
| Music | 289,927 | 280,011 | 103.54 | 100.60 | 9,916 | (4.55) | 25,841 | 25,331 | 102.01 | 510 | 8.91 | 9.05 | 98.53 | 92.14 | 4.15 | 0.10 | 0.05 |
| Musical Instruments | 3,200 | 4,738 | 67.54 | 104.14 | (1,538) | (33.12) | 1,162 | 1,540 | 75.44 | (378) | 36.31 | 32.50 | 111.70 | 160.21 | 1.21 | 0.00 | 6.47 |
| Printing & Ink | 874,549 | 879,091 | 99.48 | 102.88 | (4,542) | (3.42) | 327,224 | 342,583 | 95.52 | (15,359) | 37.42 | 38.97 | 96.01 | 95.63 | 2.03 | 0.75 | 2.00 |
| Small Appliances | 2,089,391 | 2,230,794 | 93.66 | 100.67 | (141,403) | 6.77 | 735,989 | 788,610 | 93.33 | (52,621) | 35.23 | 35.35 | 99.64 | 103.30 | 1.87 | 1.21 | 2.69 |
| Tablets | 3,409,142 | 3,153,009 | 108.12 | 100.33 | 256,133 | 19.43 | 415,949 | 453,803 | 91.66 | (37,854) | 12.20 | 14.39 | 84.77 | 94.48 | 3.48 | 1.98 | 2.69 |
| Unassigned | 58,596 | 70,620 | 82.97 | 42.38 | (12,024) | (60.26) | 24,030 | 37,916 | 63.38 | (13,886) | 41.01 | 53.69 | 76.39 | 135.82 | 1.16 | 0.00 | 0.77 |
| Unassigned Service Misc | 611,299 | 756,754 | 80.78 | 98.28 | (145,455) | (11.92) | 379,824 | 490,970 | 77.36 | (111,146) | 62.13 | 64.88 | 95.77 | 100.43 | 0.08 | 0.03 | 0.23 |
| Warranties | 1,579,000 | 1,579,578 | 99.96 | 99.41 | (578) | 12.87 | 249,556 | 268,068 | 93.09 | (18,512) | 15.80 | 16.97 | 93.13 | 106.74 | 2.48 | 1.45 | 2.37 |
| Store 183 | 66,982,751 | 66,526,707 | 100.67 | 100.67 | 456,044 | 2.55 | 17,633,435 | 18,320,173 | 96.25 | (686,737) | 25.56 | 26.73 | 95.81 | 96.78 | 2.89 | 1.89 | 2.53 |

# Daily Packet

## Selection: Store 183, for FY 2020

Data Available Through: 02/01/2020



| Category | Hardware DP (%) | DP Var to TGT ($) | POS Rev ($) | POS Rev Var to TGT ($) | Accessories Accy (%) | Rev (Unit/key) Var to LY (%) | Var to TGT (%) | POS Rev ($) | Best Buy Protection POS Rev Var to TGT ($) | Best Buy Protection (%) | Rev (Unit/key) Var to LY (%) | Var to TGT (%) | Geek Squad Services POS Rev ($) | POS Rev Var to TGT ($) | GS Svcs to POS Rev (%) | Rev (Unit/key) Var to LY (%) | Var to TGT (%) | Connections Unit Var to TGT (%) | Solutions (%) | Rev (Unit/key) Var to LY (%) | Var to TGT (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appl PAC Sales SWAS | 6.98 | 10,621 | 5,350 | 5,350 | 3.37 | 1.87 | 100.98 | 360.95 | 8.81 | 0.58 | 0.73 | | 120,428 | (16,178) | 0.40 | 0.00 | 84.47 | | 3.92 | 2.58 | 99.20 |
| Computing | 11.43 | (77,435) | 3,031,044 | 140,041 | 18.72 | 1.54 | 102.81 | 359,030.81 | (12,352) | 5.01 | (0.26) | | 16,521 | | | (0.48) | 117.48 | | 23.54 | 0.73 | 105.51 |
| Connected Car | 37.97 | 5,860 | 39,595 | 5,659 | 12.47 | 0.71 | 107.06 | 6,475.23 | 388 | 3.97 | (0.05) | | 51,439 | | 5.20 | 0.94 | 100.84 | | 19.72 | 1.41 | 102.66 |
| Connected Home | 44.38 | 6,018 | 874,065 | 18,909 | 44.60 | (52.22) | 100.56 | 26,827.16 | 117 | | | | 0 | | 2.63 | 0.69 | | | 48.57 | (51.43) | 100.56 |
| Consumables | 37.06 | 3,214 | 122,156 | 2,811 | 40.01 | 2.56 | 100.56 | 0.00 | | | | | 0 | | 0.60 | 0.00 | | | 40.01 | 2.56 | 100.56 |
| Digital Imaging | 28.93 | 2,594 | 857,511 | (84,680) | 39.52 | (0.79) | 100.13 | 906,622.71 | (24,091) | 6.23 | 0.15 | | 0 | | 0.60 | 0.00 | | | 34.32 | (0.81) | 98.87 |
| Gaming | 9.53 | (6,363) | 693,403 | (81,077) | 20.00 | 2.69 | 99.91 | 91,725.38 | (38,751) | 5.72 | 1.10 | | 0 | | 0.90 | 0.00 | | | 22.63 | 2.95 | 98.10 |
| Headphones | | 0 | 2,148,413 | 248,904 | 99.11 | (0.69) | 99.70 | 18,289.18 | 8,039 | | | | 0 | | 0.90 | 0.00 | | | 100.00 | 0.00 | 100.00 |
| Health | 24.14 | 27,256 | 0 | 0 | 0.00 | 0.00 | | 65.70 | 44 | | | | 1,590 | 1,489 | 0.79 | 0.79 | 359.15 | | 1.01 | 0.17 | 144.78 |
| Home Delivery | | 0 | 0 | 0 | 0.00 | 0.00 | | 0.00 | 0 | | | | 57,695 | (6,668) | 100.00 | 0.00 | 100.00 | | 100.00 | 0.00 | 100.00 |
| Home Theater | 29.22 | (242,106) | 3,438,949 | 69,749 | 24.32 | 0.35 | 103.47 | 353,652.73 | 4,262 | 5.29 | 2.07 | | 125,035 | 27,724 | 0.88 | 0.00 | 130.26 | | 27.71 | 1.20 | 104.08 |
| Magnolia Design Center | | 0 | 0 | 0 | 0.00 | 0.00 | | 0.00 | 0 | | | | 0 | | | | | | | | |
| Magnolia Home Theater | 40.89 | 8,515 | 567,910 | (2,517) | 76.42 | 11.49 | 98.17 | 0.00 | | | | | 45,313 | (6,491) | 6.10 | (7.72) | 86.25 | | 95.30 | (3.59) | 96.99 |
| Major Appliances | 31.91 | (31,409) | 285,950 | (17,451) | 3.03 | (0.07) | 94.54 | 95,033.03 | (34,555) | 1.68 | (2.46) | | 70,672 | (5,367) | 0.15 | (0.17) | 93.23 | | 7.13 | (0.44) | 92.42 |
| Mobile Phones | (48.23) | (131,508) | 1,121,542 | 902 | 14.33 | (2.09) | 95.22 | 315,813.12 | 72,462 | 9.29 | (0.04) | | 42,240 | (2,567) | 0.54 | 0.42 | 89.74 | | 50.74 | (4.95) | 97.46 |
| Movies | 16.45 | 0 | 0 | 0 | 0.00 | 0.00 | | 349,839.84 | | | | | 0 | | 0.00 | 0.00 | | | | | |
| MP3 | | (10) | 480 | 100 | 100 | (0.72) | 133.96 | 0.00 | | | | | 0 | | 0.00 | 0.00 | | | 3.99 | (1.01) | 72.57 |
| Music | 33.12 | (375) | (30) | (110) | 0.00 | 1.61 | (55.68) | 708.00 | | | | | 0 | | 0.00 | 0.00 | | | 0.00 | 0.00 | |
| Musical Instruments | | 1 | 874,549 | (30) | 100.00 | 0.00 | 100.00 | 0.00 | 26 | 7.42 | (2.36) | | 0 | | 0.00 | 0.00 | | | 5.34 | 0.63 | 99.46 |
| Printing & Ink | 33.80 | (51,262) | 3,060 | (4,542) | 0.15 | 3.50 | 100.00 | 200.94 | | | | | 0 | | 0.00 | 0.00 | | | 100.00 | 0.00 | 100.00 |
| Small Appliances | 5.49 | (56,279) | 494,390 | (869) | 14.50 | (0.06) | 83.14 | 3.00 | (5,929) | 4.41 | (0.49) | | 0 | | 0.00 | 0.00 | | | 3.14 | 0.16 | 96.74 |
| Tablets | 41.23 | (11,768) | (51) | 61,591 | (0.00) | 1.75 | 105.65 | 62,550.38 | 5,026 | 1.99 | 1.99 | | 0 | | 0.00 | 0.00 | | | 19.42 | 1.44 | 104.81 |
| Unassigned | 17.20 | 6 | 0 | 0 | 0.00 | (0.09) | | 121,103.51 | (2,357) | 0.79 | (9.02) | | 0 | | 0.00 | 0.00 | | | 0.97 | 0.97 | 23.03 |
| Unassigned Service Misc | 9.34 | (51,425) | 80,738 | 2,252 | 2,252 | 0.00 | 102.91 | 619.98 | (21,406) | 3.01 | | | 509,313 | (124,086) | 98.68 | 99.88 | 102.15 | | 99.99 | (0.01) | 99.99 |
| Wearables | | | | | 5.11 | | | 1,949.75 | 2,574 | | | | 0 | | 0.00 | 0.00 | | | 12.90 | (2.56) | 121.39 |
| Store 183 | 18.69 | (646,345) | 14,609,023 | 384,992 | 21.16 | (0.99) | 101.88 | 2,297,522.7 | (36,961) | 4.74 | (0.10) | | 1,140,297 | (130,045) | 1.85 | 0.31 | 89.77 | | 29.84 | (0.83) | 100.62 |

Report run on 2/29/2020 7:15:32 PM



**Daily Packet**

**Selection: Store 183, for FY 2020**

Data Available Through: 02/01/2020

| Category | Returns & Exchanges | | | | Operational Margin Barometers | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Controllable R/E (%) | Controllable Top Quartile (%) | LY Controllable R/E (%) | DWO (%) | Peer Grp DWO (%) | LY DWO (%) | Shrink (%) | Peer Grp Shrink (%) | LY Shrink (%) |
| App PKC Sales SVAS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Computing | (12.04) | (9.21) | (13.78) | (0.20) | (0.15) | (0.28) | (0.45) | (0.23) | (0.42) |
| Connected Car | (19.25) | (14.52) | (24.49) | (2.19) | (1.53) | (3.59) | (2.24) | (0.97) | (3.84) |
| Connected Home | (16.10) | (13.62) | (15.00) | (1.01) | (0.69) | (0.35) | (2.22) | (0.84) | (1.12) |
| Consumables | (9.12) | (5.83) | (9.63) | (0.59) | (0.45) | (0.73) | (0.79) | (0.84) | (0.80) |
| Digital Imaging | (13.31) | (9.44) | (18.53) | (0.32) | (0.22) | (0.32) | (0.51) | (0.52) | (0.55) |
| Gaming | (6.57) | (5.25) | (5.93) | (3.91) | (0.79) | (0.99) | (1.94) | (0.95) | (0.62) |
| Headphones | (13.10) | (10.27) | (14.20) | (1.20) | (0.90) | (1.69) | (1.20) | (0.94) | (1.31) |
| Health | (12.54) | (11.96) | (14.19) | (1.16) | (0.79) | (0.14) | (1.05) | (1.25) | (0.59) |
| Home Delivery | (2.44) | (1.36) | (1.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Home Theater | (9.55) | (8.88) | (12.92) | (0.97) | (1.19) | (0.86) | (0.08) | (0.20) | (0.11) |
| Magnolia Design Center | 0.00 | (12.33) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.44) | 0.00 |
| Magnolia Home Theater | (16.44) | (8.65) | (16.34) | (1.18) | (7.85) | (1.18) | (0.29) | (0.36) | (0.14) |
| Major Appliances | (0.85) | (5.69) | (4.50) | (0.47) | (0.52) | (0.72) | (0.02) | (0.01) | (0.02) |
| Mobile Phones | (13.11) | (12.64) | (15.74) | (0.12) | (0.69) | (0.50) | (0.72) | (0.40) | (0.72) |
| Movies | (5.08) | (2.31) | (4.66) | (0.17) | (0.90) | (0.32) | (3.12) | (1.07) | (1.35) |
| MP3 | (17.04) | (7.79) | (22.56) | (0.56) | (0.36) | (0.17) | (2.50) | (0.79) | (1.93) |
| Music | (0.55) | (0.29) | (0.89) | (0.03) | (0.04) | (0.02) | 0.06 | (0.02) | (0.15) |
| Musical Instruments | (8.78) | (7.05) | (28.99) | (1.21) | (0.97) | (0.99) | (0.43) | (0.29) | (0.61) |
| Printing & Ink | (13.32) | (5.92) | (8.29) | (5.47) | (4.97) | (4.72) | (0.30) | (0.76) | (0.27) |
| Small Appliances | (8.29) | (9.01) | (11.22) | (0.34) | (0.52) | (0.53) | (0.92) | (0.40) | (0.61) |
| Tablets | (10.45) | (8.52) | (12.24) | (0.08) | (2.56) | 0.00 | (1.05) | (0.22) | (0.19) |
| Unassigned | (62.51) | (68.78) | (11.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unassigned Service Misc | (9.06) | (7.40) | (0.11) | 0.00 | (0.01) | (0.01) | (0.01) | 0.00 | 0.00 |
| Wearables | (11.04) | (9.43) | (16.07) | (0.94) | (0.81) | (0.77) | (1.35) | (0.42) | (0.89) |
| Store 183 | (10.56) | (9.69) | (12.18) | (0.78) | (0.67) | (0.76) | (0.56) | (0.32) | (0.43) |

EEOC Form 5 (11-09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 480-2020-04552 |

|  |  | and EEOC |
|---|---|---|
|  | State or local Agency, if any |  |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Jonathan Palomo** | **(323) 365-1052** |  |

| Street Address | City, State and ZIP Code |
|---|---|
| **1512 SW 9th Ave, Fort Lauderdale, FL 33315** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BEST BUY CO. INC** | **Unknown** | **(612) 291-1000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7601 Penn Avenue South, Richfield, MN 55423** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☒ COLOR   ☒ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-01-2012**   Latest **07-17-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was assaulted by customer and threatened not to file a workers compensation claim and then denied reasonable accommodation for disabilities resulted from sexual and physical assault and battery (police report and video footage too), was sexually assaulted and harassed by Manager Damien Pada since 2012 who fondled groped jiggled my penis on a daily basis and slapped and grabbed my buttocks and begged me for anal sex and to perform fellatio and demanded that I show him penis and masturbate in front of him or be demoted or terminated. I suffered severe depression anxiety and psychological effects from his constant sexual assault /battery and reported it to General Manager Fadi Ammouri around October 2019/November 2019 who threatened me with termination if I reported it in writing to Corporate Headquarters. After Manager Damien Pada was told by Fadi that I reported sexual assault rape and harassment, Damien started calling me a child molestor and defamed me to colleagues and customers telling them I was arrested and jailed for sexual assault, raping little kids and that little children were my lovers, which is 100% false. Customers compared to Best Buy about me being arrested for sexual assault . GM Fadi told me that it was true because

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 09/30/2020 _____ Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

<table>
<tr><td rowspan="2"><strong>CHARGE OF DISCRIMINATION</strong><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form.</td><td colspan="2">Charge Presented To:</td><td>Agency(ies) Charge No(s):</td></tr>
<tr><td>☐ FEPA<br>☒ EEOC</td><td colspan="2"><strong>480-2020-04552</strong></td></tr>
<tr><td></td><td colspan="2" align="center">State or local Agency, if any</td><td>and EEOC</td></tr>
</table>

Hispanic men are all rapists and child molestors because President Trump says it's true. I was then called "child molestor" every day by GM Fadi because of my Race instead of my name. GM Fadi told me that because I'm a male it wasn't sexual harassment because men can't be sexually harassed and threatened me with termination if I kept complaining and called me a "cunt" and a "pussy" when I started crying and he let Manager Damien Pada continue sexually assaulting /harassing. I finally told GM Fadi around first week of July 2020 that I'm filing a police report because I don't want to be sexually assaulted and groped and spanked everyday by my manager Damien Pada, Fadi told me that I would be suspended or I should quit and find a new job if I file police report. Suddenly, I was terminated on 07/17/2020 in retaliation for opposing sex and race discrimination and denied reasonable accommodation of CFRA leave to get for a mental health leave of absence for psychological counseling due to Damien Pada's sexual assault and harassment since 2012 and verbal abuse degradation based on race and sex, being called child molestor, receiving death threats from colleagues and being ostracized shunned and hated Bc of my opposition to sex discrimination.

I believe I was discriminated against because of my race, American Indian or Alaskan Native, color, national origin/ancestry, Hispanic/Latino, sex, male, and disability, and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Americans with Disabilities Act of 1990, as amended.

<table>
<tr><td>I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.</td><td>NOTARY – When necessary for State and Local Agency Requirements</td></tr>
<tr><td>I declare under penalty of perjury that the above is true and correct.<br><br><br><u>09/30/2020</u><br>Date          Charging Party Signature</td><td>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)</td></tr>
</table>

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

September 26, 2020

Jonathan Palomo
401 E 109 st #A
Los Angeles, California 90062

RE:    **Notice to Complainant**
        DFEH Matter Number: 202009-11370327
        Right to Sue: Palomo / Best Buy Co. Inc

Dear Jonathan Palomo:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents.  If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

September 26, 2020

RE:   **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202009-11370327
        Right to Sue: Palomo / Best Buy Co. Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

September 26, 2020

Jonathan Palomo
401 E 109 st #A
Los Angeles, California 90062

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202009-11370327
Right to Sue: Palomo / Best Buy Co. Inc

Dear Jonathan Palomo:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective September 26, 2020 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

1

2

3

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

4

**In the Matter of the Complaint of**

5    Jonathan Palomo                                    DFEH No. 202009-11370327

6                                Complainant,

7    vs.

8    Best Buy Co. Inc
     7601 Penn AveSouth
9    Richfield, Minnesota 55423

10                               Respondents

11   _____

12   1. Respondent **Best Buy Co. Inc** is an **employer Best Buy Co. Inc** subject to suit under the
     California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

13
     2.
14   3. Complainant **Jonathan Palomo**, resides in the City of **Los Angeles,** State of **California.**

15   4. Complainant alleges that on or about **September 26, 2020**, respondent took the
     following adverse actions:
16

17   **Complainant was harassed** because of complainant's race, ancestry, national origin
     (includes language restrictions), color, sex/gender, gender identity or expression, sexual
18   orientation, family care or medical leave (cfra) (employers of 50 or more people), genetic
     information or characteristic, disability (physical or mental), medical condition (cancer or
19   genetic characteristic), marital status, other, sexual harassment- hostile environment, sexual
     harassment- quid pro quo, criminal history.

20
     **Complainant was discriminated against** because of complainant's race, ancestry,
21   national origin (includes language restrictions), color, sex/gender, gender identity or
     expression, sexual orientation, family care or medical leave (cfra) (employers of 50 or more
22   people), genetic information or characteristic, disability (physical or mental), medical
     condition (cancer or genetic characteristic), marital status, other, sexual harassment- hostile
23   environment, sexual harassment- quid pro quo, criminal history and as a result of the
     discrimination was terminated, forced to quit, denied hire or promotion, reprimanded,
24   suspended, asked impermissible non-job-related questions, denied any employment benefit
     or privilege, denied reasonable accommodation for a disability, denied family care or
25   medical leave (cfra) (employers of 50 or more people), other, denied work opportunities or
     assignments.
26

27                                -1-

28   Date Filed: September 26, 2020

1

2

3

4

5

6

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint, requested or used leave under the california family rights act or fmla (employers of 50 or more people) and as a result was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), other, denied work opportunities or assignments, denied or forced to transfer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Additional Complaint Details:** Was assaulted by customer and threatened not to file a workers compensation claim and then denied reasonable accommodation for disabilities resulted from sexual and physical assault and battery (police report and video footage too), was sexually assaulted and harassed by Manager Damien Pada  since 2012 who fondled groped jiggled my penis on a daily basis and slapped and grabbed my buttocks and begged me for anal sex and to perform fellatio and demanded that I show him penis and masturbate in front of him or be demoted or terminated. I suffered severe depression anxiety and psychological effects from his constant sexual assault /battery and reported it to General Manager Fadi Ammouri around October 2019/November 2019 who threatened me with termination if I reported it in writing to Corporate Headquarters. After Manager Damien Pada was told by Fadi that I reported sexual assault rape and harassment, Damien started calling me a child molestor and defamed me to colleagues and customers telling them I was arrested and jailed for sexual assault, raping little kids and that little children were my lovers, which is 100% false.  Customers compared to Best Buy about me being arrested for sexual assault .  GM Fadi told me that it was true because Hispanic men are all rapists and child molestors because President Trump says it's true. I was then called "child molestor" every day by GM Fadi because of my Race instead of my name. GM Fadi told me that because I'm a male it wasn't sexual harassment because men can't be sexually harassed and threatened me with termination if I kept complaining and called me a "cunt" and a "pussy" when I started crying and he let Manager Damien Pada continue sexually assaulting /harassing. I finally told GM Fadi around first week of July 2020 that I'm filing a police report because I don't want to be sexually assaulted and groped and spanked everyday by my manager Damien Pada, Fadi told me that I would be suspended or I should quit and find a new job if I file police report.  Suddenly, I was terminated on 07/17/2020 in retaliation for opposing sex and race discrimination and denied reasonable accommodation of CFRA leave to get for a mental health leave of absence for psychological counseling due to Damien Pada's sexual assault and harassment since 2012 and verbal abuse degradation based on race and sex, being called child molestor, receiving death threats from colleagues and being ostracized shunned and hated Bc of my opposition to sex discrimination .

23

24

25

26

27

28

-2-
*Complaint – DFEH No. 202009-11370327*

Date Filed: September 26, 2020

1 | VERIFICATION

2 | I, **Jonathan Palomo**, am the **Complainant** in the above-entitled complaint. I have
3 | read the foregoing complaint and know the contents thereof. The same is true of my
   | own knowledge, except as to those matters which are therein alleged on information
4 | and belief, and as to those matters, I believe it to be true.

5 | On September 26, 2020, I declare under penalty of perjury under the laws of the State
   | of California that the foregoing is true and correct.
6 |

7 | **Los Angeles CA**

-3-
*Complaint – DFEH No. 202009-11370327*

Date Filed: September 26, 2020

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*  Best Buy Co INC

was received by me on *(date)*  10.24.2020 .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)*  BestBuy Ca inc , who is

designated by law to accept service of process on behalf of *(name of organization)* · CT Corporation

System 818 West Seventh St STE 930 on *(date)* 10·28·2020 ; or
L·A Ca 90017

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $  O  for travel and $  O  for services, for a total of $  0.00 .

I declare under penalty of perjury that this information is true.

Date: 10·28·2020

_____
Server's signature

Virginia Gurule
Printed name and title


619 N. Alexandria Ave. L.A. Ca
Server's address

Additional information regarding attempted service, etc: